**EDWARD M. ROBINSON (CA Bar 126244)**
Rachael A. Robinson (CA Bar 313991)
Lisa Houlé (CA Bar 207303)
21515 Hawthorne Blvd , Suite 730
Torrance, CA 90503
Office: (310) 316-9333
Facsimile: (310) 316-6442
eroblaw@gmail.com

Attorneys for Defendant
*Edward Yasushiro Arao*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-00121-SJO-2 |
| Plaintiff, | |
| v. | **MOTION FOR CURATIVE INSTRUCTION RE. GOVERNMENT'S IMPERMISSIBLE ARGUMENTS ON REBUTTAL** |
| EDWARD YASUSHIRO ARAO, et al., | |
| Defendant. | Courtroom of the Honorable S. James Otero |

# INTRODUCTION

The government never – throughout the entire case – made any effort to present the theory that the straw purchases it argued for the first time against Mr. Arao in rebuttal were "inextricably intertwined conduct" with respect to Mr. Arao. The Court gave the specific instruction – which the government agreed to – limiting evidence against Mr. Arao only to conduct regarding the unlawful dealing in firearms. The government never gave 404(b) notice of any intent to introduce evidence of alleged "straw purchases" by Mr. Arao or evidence that Mr. Arao used the "paper trail" to hide his role in the dealing in firearms that may end up in the wrong hands. FRE 404. Rule 404(b) requires notice in order for the parties to litigate the relevance and potential prejudicial effects of this type of uncharged conduct. Moreover, if the government *had* given notice, and the Court had granted its request, the Court would have provided the jury with a limiting instruction informing them that such evidence could not be used as substantive guilt against Mr. Arao.

However, in the government's rebuttal, for the very first time in the entire case and without any opportunity for defense to respond, the government (1) stated that evidence of Mr. Arao's "straw purchases" were substantive evidence of his guilt [i.e. willfulness]; and (2) after the defense objection to this argument, and the Court's sustaining of this objection, undeterred the government attempted to make the "liquor store" argument that again implicated Mr. Arao in uncharged, and evidence never presented, argument that he engaged in straw purchases and that he may have been involved in the sales to prohibited persons – again the defense objected to this impermissible argument and the Court sustained the objection. In addition to these two flagrant violations of the Court's order and the presentation of a theory of the case the government had never, until rebuttal presented, the rebuttal, taken as a whole was dripping in impermissible argument.

The government – again for the first time on rebuttal – argued that the paper trail created by Mr. Arao's efforts to legally fill out and submit every single requisite form

1

to be in compliance with the law was in fact done to avoid detection. The government claimed, in the face of absolutely no evidence of this, that Mr. Arao's purpose in filing these papers was to avoid the paper trail leading back to him should the gun end up in the wrong hands. First, this is a misstatement of the evidence – clearly, every single one of these transactions was traced back to Mr. Arao because he complied with the requisite documentation requirements. The government's own expert witness conceded that the purpose of the DROS and the 4473 forms was to ensure that guns did not get into the wrong hands. Second, and more importantly, this was another effort to constructively amend the indictment and impermissibly imply that Mr. Arao knew or had reason to know that the guns he sold ended up in the hands of prohibited persons. It is impermissible to ask this jury to buy into this pernicious theory fronted for the first time in rebuttal without absolute no opportunity for Mr. Arao to respond.[1] Compounding these errors was the fact that the government – in response to the argument that Mr. Arao did everything openly, argued that the Instagram Direct Messages, the text messages, and the Whatsapp messages were in fact private and failed to ever state that only Mr. Fernandez engaged in this private conduct. There was absolutely no evidence presented that Mr. Arao ever did.

      Prosecutors must understand the different-and special-place that they occupy in the criminal justice system (*see, e.g., United States v. Kojayan,* 8 F.3d 1315, 1323 (9th

---

[1] There was absolutely no evidence that Mr. Arao had any reason to believe that, by way of his legal transfers through PPTs, the guns he DROS'ed and completed 4473 forms on may end up in the hands of the wrong people, as implied by the government in rebuttal. Such an argument was, in addition to an effort to construct the amendment, an impermissible effort to enflame the prejudice of the jury. "Those prosecutorial urgings-especially the later ones encouraging a conviction to protect other individuals in the community-spoke not to that question, but rather to the potential social ramifications of the jury's reaching a guilty verdict." *United States v. Weatherspoon*, 410 F.3d 1142, 1149 (9th Cir. 2005)

2

Cir.1993) and cases cited there). *United States v. Weatherspoon*, 410 F.3d 1142, 1150 (9th Cir. 2005).

Thus, for the foregoing reasons, Mr. Arao maintains his position that this impermissible sandbagging on rebuttal should result in a mistrial. However, in light of the Court's ruling denying that motion, Mr. Arao respectfully requests that this Court strike the entirety of the government's rebuttal argument as to Mr. Arao and instruct the jury to disregard.

## ARGUMENT

### I. The Government's Statements in Rebuttal Constituted Misconduct as to Mr. Arao

The Court correctly noted that the government's statements in rebuttal were improper and sustained Mr. Arao's objections to these arguments. "The jury may not decide the case based on evidence that never made it into the record, either real or imagined. The right to a trial by jury includes the right to the jury's own decision, not a decision dictated or unduly influenced by the prosecutor." *Jordan v. Hepp*, 831 F.3d 837, 847 (7th Cir. 2016); *citing Young*, 470 U.S. at 18–19 (citing *Berger*, 295 U.S. at 88–89).

"Because jurors enter deliberations with closing arguments— especially the prosecutor's rebuttal—still ringing in their ears, those words could have more impact than the actual evidence presented much earlier in the case." Michael D. Cicchini, *Combating Prosecutorial Misconduct in Closing Arguments*, 70 Okla. L. Rev. 887, 892 (2018); *citing* Welsh White, Curbing Prosecutorial Misconduct in Capital Cases: Imposing Prohibitions on Improper Penalty Trial Arguments, 39 AM. CRIM. L. REV. 1147, 1149 (2002).

Given the Court's continued sustaining of Mr. Arao's objection throughout rebuttal – including with respect to the purely speculative *Bruton* error – her "entire line of argument, made even more indefensible by its repetition in the face of directions to

3

desist, was improper." *United States v. Weatherspoon*, 410 F.3d 1142, 1149 (9th Cir. 2005).

Here, it was only after confronted with Mr. Arao's closing argument and reference to the notice, demonstrating that even the ATF had misunderstood *and misstated* the law in its Notice to Law Enforcement (Exhibit 185), did the government change course to make a brand new argument that certainly had "more impact than the actual evidence presented must earlier in the case." *Id*.

II. **<u>Without Waiving the Argument that this Conduct Warranted a Mistrial, the Only Appropriate Remedy at this Point is for this Court to Strike the Entire Rebuttal Argument as to Mr. Arao and Instruct the Jury to Disregard</u>**

"To determine whether the prosecutor's misconduct affected the jury's verdict, [the court] look[s] first to the substance of a curative instruction[.]" *United States v. Kerr,* 981 F.2d 1050, 1053 (9th Cir. 1992). In that respect, a "trial judge should be alert to deviations from proper argument and take prompt corrective action as appropriate." *Id.* at 1054. *See also United States v. Weatherspoon*, 410 F.3d 1142, 1151 (9th Cir. 2005).

A generic curative instruction, including a mere sustaining of the objection, does not neutralize the harm of improper government statements because "[t]hey did not mention the specific statements of the prosecutor and were are given immediately after the damage was done." (*Kerr,* 981 F.2d at 1054).

"Another important factor contributing to the prejudicial effect of improper statements is the strength of the case against a defendant. When the case is particularly strong, the likelihood that prosecutorial misconduct will affect the defendant's substantial rights is lessened because the jury's deliberations are less apt to be influenced. But as the case becomes progressively weaker, the possibility of prejudicial effect grows correspondingly." *Weatherspoon*, 410 F.3d at 1151. Given that the Court has acknowledged in the Rule 29 hearing that the evidence against Mr. Arao was a

4

"close call," a clear and unequivocal instruction to the jury that the government's rebuttal was improper and must be stricken is critical to any effort to sustain Mr. Arao's fair trial rights.

## CONCLUSION

For the foregoing reasons, if the Court is not inclined to revisit its ruling on Mr. Arao's motion for mistrial, Mr. Arao respectfully requests that the Court instruct the jury that the government's rebuttal was improper as to Mr. Arao and must therefore be struck.

Respectfully submitted,

DATED: November 19, 2019       By  */s/ Edward M. Robinson*
                                   Edward M. Robinson
                                   Rachael A. Robinson
                                   Lisa Houlé

                                   Attorneys for Defendant

5