**EDWARD M. ROBINSON (CA Bar 126244)**
Rachael A. Robinson (CA Bar 313991)
Lisa Houlé (CA Bar 207303)
21515 Hawthorne Blvd, Suite 730
Torrance, CA 90503
Office: (310) 316-9333
Facsimile: (310) 316-6442
eroblaw@gmail.com

Attorneys for Defendant
*Edward Yasushiro Arao*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>EDWARD YASUSHIRO ARAO, et al.,<br><br>   Defendant. | Case No. 18-CR-00121-SJO-2<br><br>**MOTION FOR JUDGMENT OF ACQUITTAL OR ALTERNATIVELY NEW TRIAL; FED. R. CRIM. PRO. RULES 29(c)(2), 33; EXHIBITS IN SUPPORT**<br><br>DATE: January 6, 2019<br>TIME: 10:00 AM<br>Courtroom of the<br>Honorable S. James Otero |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT .............................................................................................................. 4

   I.   The Evidence Against Mr. Arao was Insufficient to Warrant a Conviction ........ 4

   II.   The Government's Actions Rise to the Level of Misconduct ............................. 6

      A.   The Government's Impermissible Questioning of Agent Hart Was Misconduct Designed to Mislead the Jury ............................................... 6

      B.   The Government's Impermissible Arguments in Rebuttal Amount to Clear Misconduct ................................................................................... 7

   III.   This Misconduct Warrants Dismissal, or Alternatively, New Trial .................... 8

      A.   The Government's Improper Remarks were Extensive and Repetitive in Spite of the Court's Rulings ................................................................. 8

      B.   The Government's Improper Arguments Came After Mr. Arao had Made Closing Arguments and were the Last Things the Jury Heard ................. 9

      C.   The Court denied Mr. Arao's Motion for a Curative Instruction ................ 10

      D.   As the Court Noted, the Evidence of Mr. Arao's Willfulness was a "Close Call" ........................................................................................................ 10

CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Jordan v. Hepp*,
  831 F.3d 837 (7th Cir. 2016)...................................................................................7

*United States v. Carpenter*,
  494 F.3d 13 (1st Cir. 2007) ........................................................................ 1, 8, 9, 11

*United States v. Hernandez*,
  109 F.3d 1450 (9th Cir. 1997)...............................................................................10

*United States v. Kerr,*
  981 F.2d 1050 (9th Cir. 1992)...............................................................................10

*United States v. Leon-Reyes*,
  177 F.3d 816 (9th Cir. 1999).................................................................................10

*United States v. Nevils*,
  598 F.3d 1158 (9th Cir. 2010).................................................................................6

*United States v. Simtob*,
  901 F.2d 799 (9th Cir. 1990)..................................................................... 1, 4, 8, 11

*United States v. Thomas*,
  114 F.3d 228 (D.C. Cir. 1997) ................................................................................7

*United States v. Weatherspoon*,
  410 F.3d 1142 (9th Cir. 2005).................................................................................8

*United States v. Young*,
  470 U.S. 1 (1985)..................................................................................................2, 7

**Statutes**

18 U.S.C. § 922 ..............................................................................................................1

**Rule**

Fed. R. Crim. Pro. Rule 29...........................................................................................1, 4

Fed. R. Crim. Pro. Rule 33.............................................................................................4

**Other Authority**

Am. Bar Ass'n, Criminal Justice Standards for the Prosecution and Defense Functions
    (4th ed. 2014) .................................................................................................. 6

Michael D. Cicchini, *Combating Prosecutorial Misconduct in Closing Arguments*, 70
    Okla. L. Rev. 887 (2018) .................................................................................. 9

# INTRODUCTION

As briefed and argued *ad nauseam*, the only contested issue in this case was whether or not the government could prove beyond a reasonable doubt that Mr. Arao acted willfully in violation of 18 U.S.C. § 922(a)(1)(A). Mr. Arao never contested that he engaged in the firearm sales that the government presented to the jury and he never contested that he, in discharging his obligation under state and federal law, filled out all of the DROS and 4473 forms, documenting with California Department of Justice and federal authorities, all of the transfers and sales upon which the government relied to try to prove its case.

On sufficiency grounds alone, this Court should set aside the jury's verdict and enter an acquittal. Fed. R. Crim. Pro. Rule 29(c)(2). There was insufficient evidence of Mr. Arao's willfulness to sustain a conviction. Even ATF, in its attempt to inform law enforcement of the *possible* and *potential* violations of federal law through the repetitive practice of private party transfers misstated the law. (*See* below; Got. Exhibit 185(Attached here as Exhibit A)). If Mr. Arao could not even rely on ATF to properly understand and explain the law, the government clearly could not prove beyond a reasonable doubt that Mr. Arao himself understood it well enough to have acted willfully in violation of 18 U.S.C. § 922(a)(1)(A).

Moreover, Mr. Arao was seriously and unconstitutionally prejudiced by the government's misconduct in light of its weak case against him. When considering whether to grant a motion for acquittal or, alternatively, a motion for new trial based on prosecutorial misconduct, courts consider (1) the extent of the improper remarks, (2) the context, (3) the likely effect of any curative instructions given by the judge, and (4) the weight of the evidence against the defendant." *Carpenter*, 494 F.3d at 23; *see also United States v. Simtob*, 901 F.2d 799, 806 (9th Cir. 1990) ("in assessing the prejudicial impact of improper comments, the court looks to the effect of any curative instructions and the strength of the government's case."). Here, the timing of the government's intentional and premeditated misconduct on rebuttal in violation of the Court's orders

1  and in violation of the government's own agreement and representations to Mr. Arao
2  clearly warrant an acquittal or at minimum a new trial.
3       As briefed in the motion to dismiss pretrial, given the significant differences in
4  the charges against Mr. Fernandez, which involved engaging in straw purchases and
5  selling to prohibited persons, there was a serious threat to Mr. Arao's ability to receive
6  a fair trial. The charged conspiracy against both Mr. Fernandez and Mr. Arao alleged
7  overt acts in furtherance of the object of the conspiracy by alleged co-conspirator
8  Fernandez that involve entirely separate criminal conduct distinct from the crime of
9  dealing in firearms without a license. Mr. Arao also moved to sever on this basis.
10 (Docs. 171, 175). Recognizing the serious problem this created, the government agreed
11 to bifurcate its case against each defendant. In its trial memo, the government stated
12 that it "intends to bifurcate SA Hart's testimony in two phases to avoid any jury
13 confusion with respect to evidence admissible against Fernandez, but not Arao." (Trial
14 Memo at 3.) The government further agreed to a limiting instruction directing the jury
15 that it shall not consider evidence of Mr. Fernandez's conduct with respect to the straw
16 purchases or sales to prohibited persons against Mr. Arao. (Exhibit B).[1] Based on this
17 understanding and agreement, the government made no effort to prove willfulness
18 through straw purchases or sales to prohibited persons and there was no evidence – let
19 alone proof beyond a reasonable doubt – in the record to support a conviction against
20 Mr. Arao on these grounds.
21      However, despite this understanding and this agreement between the parties, the
22 government engaged in a series of misconduct and sandbagging that "appears likely to
23 have affected the jury's discharge of its duty to judge the evidence fairly." *United*
24 *States v. Young*, 470 U.S. 1, 11 (1985). The first critical error by the government
25 occurred during the second portion of Agent Hart's testimony, which by representation

---

[1] The attached jury instruction is, in substance, identical to the one given by the Court throughout the trial. This version, attached as Exhibit B, was given in the final instructions.

2

1  of the government and agreement of the parties and, most importantly, as limited by the
2  Court's instruction given at the time, was to be limited to Mr. Fernandez. The jury was
3  instructed accordingly. Despite the clear rulings of this Court, and the agreements of
4  the parties in recognition of this Court's rulings, during that portion of the examination,
5  the government asked Agent Hart to whom co-defendant Fernandez was referring in the
6  excerpt where Fernandez refers to "the Chinese." Agent Hart, out of pure speculation,
7  responded Mr. Arao. Mr. Arao's counsel objected to the testimony and it was stricken.
8  Such a question was in violation of the parties' agreement and was intended only to
9  inflame the prejudices of the jury and unfairly prejudice Mr. Arao. This testimony was
10 rightly stricken.  Mr. Arao moved for a mistrial based on this misconduct noting that,
11 given the nature of the error, the limiting instruction was insufficient to cure
12 constitutional prejudice. (Doc. 253.)
13      Worse, in rebuttal to Mr. Arao's closing argument which highlighted the
14 weakness of the government's case with respect to its ability to prove willfulness
15 beyond a reasonable doubt, for the very first time and with no evidence in the record to
16 support it, the government argued that (1) Mr. Arao's engaging in "straw purchases"
17 was substantive evidence of willfulness, (2) his conduct was analogous to an individual
18 going into a liquor store to knowingly purchase liquor for a minor, and (3) he lawfully
19 and properly filled out all of the requisite paperwork in order to avoid detection should
20 the firearms he sold end up in the wrong hands. The Court properly sustained Mr.
21 Arao's objections first to the "straw purchases" argument and then to the liquor store
22 analogy which the government addressed in direct violation of the Court's ruling
23 through a premeditated PowerPoint slide presented to the jury in support of this
24 improper argument. Mr. Arao again objected, moved for a mistrial, and asked the Court
25 to strike the government's argument. (Doc. 285.) The Court sustained the objection but
26 did not strike.
27      Given the government's clear understanding of the problems that this case
28 presented through a joint trial with Mr. Fernandez, the government's conduct in its

questioning of Agent Hart and more importantly its arguments in rebuttal was clearly in bad faith, calculated to incite the passion and prejudices of the jurors, and was in direct violation of the Court's order, the instruction to the jury, and the parties' understanding and agreement. This impermissible presentation, to which the Court sustained both objections from Mr. Arao's counsel, which was done in the government's rebuttal argument, impermissibly undermined Mr. Arao's constitutional right to defend himself as there was no opportunity, given the fact that this intentional misconduct occurred in rebuttal argument, for Mr. Arao exercise his Fifth and Sixth Amendment rights to testify, present evidence, or even address the issues in his closing argument. The reality is that Mr. Arao should not have been placed in a position to counter the government's clearly erroneous arguments, its blatant disregard of the Court's orders, and its own representations.

As this Court noted in the arguments concerning the Rule 29 motion prior to closing argument, this was a very close case as to whether the government had proven the willfulness of Mr. Arao beyond a reasonable doubt. Given the very close nature of this case, this misconduct most certainly impacted the jury's ability to fairly and properly review the evidence against Mr. Arao and this Court should set aside the guilty verdict and enter an acquittal. Alternatively, in the interest of justice, this Court should grant Mr. Arao a new trial. Fed. R. Crim. Pro. Rules 29(d)(1) and 33.

## ARGUMENT

### I. The Evidence Against Mr. Arao was Insufficient to Warrant a Conviction

In ruling on Mr. Arao's Rule 29 motion for dismissal at the close of the government's case, this Court recognized that evidence of willfulness was a "close call" and that the government's case was "hardly crystal clear." As such, the government's impermissible rebuttal arguments regarding Mr. Arao's willfulness – which was the sole focus of the rebuttal –had "critical influence" on the jury's determination. *United States v. Simtob*, 901 F.2d 799, 806 (9th Cir. 1990).

The Court was correct in noting that evidence of Mr. Arao's willfulness was a "close call." The insufficiency of evidence as to willfulness was highlighted by the government's own argument in the Rule 29 hearing. The government, in arguing that there was sufficient evidence of willfulness, was forced to cite law outside of the record and outside of the evidence presented, never before mentioned, that limited the number of private party transfers. The government acknowledged that this law was irrelevant. While the government acknowledged that this law, for which both parties agreed did not apply to the private party transfers at issue here, could not be used against Mr. Arao to prove willfulness in this case, it still attempted to use it to support its position to the Court.

The only evidence in the record to support the government's arguments that Mr. Arao acted willfully was the fact that he signed the 4473 forms acknowledging that it was a crime to deal in firearms without a license, and the ATF notice sent out to law enforcement. (Government Exhibit 185). This evidence must be considered in light of the fact that the government's own evidence showed that (1) Mr. Arao was the responsible party for Ronin Tactical, a federal firearm licensee (2) the judicially noticed California law allowed for private party transfers, (3) and ATF's *own* misunderstanding of the law informed police officers that the purchase and sale of "more than 100 'off roster' firearms" [Mr. Arao transferred 46 over a 2-year period] *potentially* constitute violations of federal firearms laws, and more importantly that "a law enforcement official who regularly acquires 'off-roster' firearms and sells or disposes of them for a profit is engaging in the business as a dealer of firearms and must be licensed." (Govt. Exhibit 185). The government relied heavily on this notice to prove willfulness, yet its own evidence disproved its theory that Mr. Arao acted willfully. Mr. Arao, through Ronin Tactical, had an FFL. The government never presented any evidence that Mr. Arao knew or had reason to believe that this FFL did not cover the purchase and sale of off-roster firearms through the peace officer exception. Therefore, given the ATF's understanding of the law and its advisement to law enforcement, that an individual

could purchase and sell "off-roster" firearms if that person had a license, it is not even clear that Mr. Arao committed any crime in using Ronin Tactical to transfer these firearms.[2]

But for the government's misconduct, discussed below, the government's evidence that Mr. Arao acted willfully was so speculative that no rational trier of fact could find evidence of Mr. Arao's willfulness – an essential element of the crime – beyond a reasonable doubt. *See United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010).

## II. The Government's Actions Rise to the Level of Misconduct

### A. The Government's Impermissible Questioning of Agent Hart Was Misconduct Designed to Mislead the Jury

The Court correctly sustained Mr. Arao's objection to the government's questioning of Agent Hart during his second portion of testimony which, by the government's own representation and this Court's limiting instruction, was to be considered only against Mr. Fernandez. The government's question about who "the Chinese" referred to, and Agent Hart's answer that it was Mr. Arao was purely speculative, violated the agreement and the Court's limiting instruction and violated Mr. Arao's right to confront and cross-examine Mr. Fernandez. (*See* Doc. 253.)

"A prosecutor should not ask a question that implies the existence of a factual predicate for which a good faith belief is lacking." *See* Am. Bar Ass'n, Criminal Justice Standards for the Prosecution and Defense Functions, Standard 3-6.7(d) (4th ed. 2014). Yet this is precisely what the government did here. As Mr. Arao noted in his motion for mistrial, Mr. Arao is not Chinese. The government knows this. Moreover, the only

---

[2] ATF's understanding and representation of the law to local police officers is incorrect. As the government argued, even an FFL cannot purchase and sell off-roster firearms. The exception is limited to police officers. However, if ATF, in its notice to law enforcement, does not even understand the law, and that is the evidence upon which the government relies to prove Mr. Arao's willfulness, it is impossible for the government to have proven beyond a reasonable doubt that Mr. Arao acted willfully. Its own evidence proves otherwise.

possible reason for this speculative and impermissible line of questioning was to mislead and to cause this jury to speculate that Mr. Fernandez was in fact referring to Mr. Arao and saying that Mr. Arao stopped transferring the off-roster guns in the indictment for some nefarious reason connected with the audit.[3] When confronted by the Court with why the government thought it was appropriate to ask this question, the government could not answer the Court's question, because there was no legitimate answer. This is particularly true in light of the fact that on cross-examination, Agent Hart testified, with respect to Mr. Arao, that the auditor only had questions concerning certain buyers for which Mr. Arao was never charged and with respect to concerns regarding Mr. Fernandez.

### B. The Government's Impermissible Arguments in Rebuttal Amount to Clear Misconduct

"The jury may not decide the case based on evidence that never made it into the record, either real or imagined. The right to a trial by jury includes the right to the jury's own decision, not a decision dictated or unduly influenced by the prosecutor." *Jordan v. Hepp*, 831 F.3d 837, 847 (7th Cir. 2016); *citing Young*, 470 U.S. at 18–19 (citing *Berger*, 295 U.S. at 88–89). An attempt by a prosecutor to suggest that a defendant had committed other crimes or bad acts amounts to misconduct. *See, e.g. United States v. Thomas*, 114 F.3d 228, 247-48 (D.C. Cir. 1997). Here, by impermissibly arguing *on rebuttal*, with no evidence in the record to support it, that Mr. Arao acted willfully by engaging in straw purchases and by selling to prohibited persons (the "liquor store" analogy), the government's suggestion that Mr. Arao had committed some other crime or bad act amounts to misconduct. Such conduct was clearly intentional and in bad faith, as the government never made any effort to present

---

[3] The audit report was not admitted, nor did the government call anyone to testify regarding its contents. Despite this, the government attached the audit to its opposition to Mr. Arao's motion for mistrial as evidence of Mr. Arao's guilt. This attempt to introduce this evidence to the Court after the close of all evidence is further misconduct and evidence that the government engaged in bad faith.

evidence in support of this argument or make this argument in its initial closing. Instead, the government waited until after Mr. Arao decided to hold the government to its burden and made his closing argument, noting that he filed all of the requisite paperwork to ensure that his sales were lawful, and more importantly, that the law was so unclear that ATF did not even understand it and the government could not have proven willfulness beyond a reasonable doubt. These arguments by the government tended "to lead the jury away from the charges in the indictment" by inviting the jury to blame Mr. Arao for dangerous firearm sales to prohibited persons. *United States v. Carpenter*, 494 F.3d 13, 23 (1st Cir. 2007).

### III. This Misconduct Warrants Dismissal, or Alternatively, New Trial

In determining whether a prosecutor's misconduct requires new trial, the Court considers such factors as (1) the extent of the improper remarks, (2) the context, (3) the likely effect of any curative instructions given by the judge, and (4) the weight of the evidence against the defendant." *Carpenter*, 494 F.3d at 23; *see also United States v. Simtob*, 901 F.2d 799, 806 (9th Cir. 1990) ("in assessing the prejudicial impact of improper comments, the court looks to the effect of any curative instructions and the strength of the government's case."). Here, each of these factors weighs in favor of dismissal or new trial.

#### A. The Government's Improper Remarks were Extensive and Repetitive in Spite of the Court's Rulings

Given the Court's continued sustaining of Mr. Arao's objection throughout rebuttal – including with respect to the purely speculative *Bruton* error – the government's "entire line of argument, made even more indefensible by its repetition in the face of directions to desist, was improper." *United States v. Weatherspoon*, 410 F.3d 1142, 1149 (9th Cir. 2005). Courts have found that the government's use of improper argument or "provocative language [in closing argument] in the face of the court's repeated caution" provides important context for the Court in evaluating the choices the government makes in crafting closing argument. *Carpenter*, 494 F.3d at 22-

8

23. Such repetition demonstrates an intent to inflame and a disregard of the Court's rulings.

### B. The Government's Improper Arguments Came After Mr. Arao had Made Closing Arguments and were the Last Things the Jury Heard

The timing and context of the government's improper arguments is critical. "Because jurors enter deliberations with closing arguments— especially the prosecutor's rebuttal—still ringing in their ears, those words could have more impact than the actual evidence presented much earlier in the case." Michael D. Cicchini, *Combating Prosecutorial Misconduct in Closing Arguments*, 70 Okla. L. Rev. 887, 892 (2018); *citing* Welsh White, Curbing Prosecutorial Misconduct in Capital Cases: Imposing Prohibitions on Improper Penalty Trial Arguments, 39 AM. CRIM. L. REV. 1147, 1149 (2002); *see also Carpenter*, 494 F.3d at 24 (noting that the impermissible arguments likely "remained vivid in the jurors' memories" given the late stage at which they came). The government's arguments that Mr. Arao engaged in straw purchases, implication that he sold to prohibited persons through the "liquor store" analogy, and purely speculative claim that he properly and legally kept records of his transactions in order to avoid detection should one the firearms sold end up at the scene of a crime had only one purpose – to inflame the passions of the jury and imply that Mr. Arao was engaged in other bad conduct for which he was not charged. Each of these actions by the government was done in violation of this Court's orders. The government's arguments here were lethal to Mr. Arao's fair trial rights. The government's blatant and impermissible argument in rebuttal, in violation of this Court's instruction, that Mr. Arao was selling firearms – which already itself creates concerns about juror's abilities to be fair – to prohibited persons inherently implied that his seemingly legal conduct – filling out all of the proper paperwork – was dangerous and somehow nefarious, and that a conviction would protect the community from the societal problems the sale of firearms create. *See, e.g. United States v. Leon-Reyes*, 177 F.3d 816, 822 (9th Cir. 1999).

9

1     The improper arguments in rebuttal are all the more prejudicial given the fact
2 that Mr. Arao's decision to invoke his Fifth Amendment right not to testify and his
3 Sixth and Fifth Amendment right to present a defense was made in light of the parties'
4 understanding and this Court's ruling that the government would not use evidence of
5 straw purchases or prohibited person sales against Mr. Arao. The government was
6 unable to prove willfulness beyond a reasonable doubt with the evidence it had
7 presented. It was only after Mr. Arao's closing argument, holding the government to its
8 burden and highlighting just how unclear the law is – ATF even misunderstood it in its
9 advisory to law enforcement – that the government changed course entirely and made
10 these impermissible arguments for which it never presented evidence.

        C. <u>The Court denied Mr. Arao's Motion for a Curative Instruction</u>

12     In light of the government's highly prejudicial and impermissible arguments on
13 rebuttal, Mr. Arao moved for a mistrial, or alternatively for the Court to strike the
14 government's rebuttal argument against Mr. Arao and instruct the jury to disregard. A
15 generic curative instruction, including a mere sustaining of the objection, does not
16 neutralize the harm of improper government statements because "[t]hey did not
17 mention the specific statements of the prosecutor and were are given immediately after
18 the damage was done." *United States v. Kerr,* 981 F.2d 1050, 1054 (9th Cir. 1992); *see
19 also United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997) (expressing
20 "skepticism of the efficacy of [limiting] instructions no matter when they are given.").
21     Here, however, the Court denied the motion to strike and did not give, as
22 requested, a curative instruction. Therefore, the damage done by the government's
23 impermissible argument was left unaddressed.

        D. <u>As the Court Noted, the Evidence of Mr. Arao's Willfulness was a "Close Call"</u>

26     As discussed above, this Court recognized that evidence of willfulness against
27 Mr. Arao was a "close call" and that the government's case was "hardly crystal clear."
28 The 4473 forms alone, given the complexity of the law, Mr. Arao's position as an

1  exempt person for purposes of PPTs, and the ATF's own misunderstanding of the law,
2  were insufficient to adequately put Mr. Arao on notice that his conduct was unlawful.
3  The forms were certainly insufficient to prove Mr. Arao's willfulness beyond a
4  reasonable doubt. As such, the government's impermissible rebuttal arguments
5  regarding Mr. Arao's willfulness – which was the sole focus of the rebuttal –had
6  "critical influence" on the jury's determination. *United States v. Simtob*, 901 F.2d 799,
7  806 (9th Cir. 1990).
8        The Court was correct in noting that evidence of Mr. Arao's willfulness was a
9  "close call." Therefore, "[b]ecause it cannot be said with confidence that the
10 government's improper closing argument did not taint the verdict, the verdict cannot be
11 allowed to stand." *Carpenter*, 494 F.3d at 24.

## CONCLUSION

For the foregoing reasons, Mr. Arao respectfully requests that this Court dismiss the case against him. Alternatively, Mr. Arao respectfully requests that this Court grant is request for new trial.

Respectfully submitted,

DATED: December 2, 2019     By  */s/ Edward M. Robinson*
                                                       Edward M. Robinson
                                                       Rachael A. Robinson
                                                       Lisa Houlé

                                                       Attorneys for Defendant