NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
KATHERINE A. RYKKEN (Cal. Bar No. 267196)
Assistant United States Attorney
Major Frauds Section
VERONICA DRAGALIN (Cal. Bar No. 281370)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
      1500 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-0647
      Facsimile: (213) 894-0141
      E-mail:    katherine.rykken@usdoj.gov
                 veronica.dragalin@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-121(A)-SJO-2 |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT EDWARD ARAO MOTION FOR JUDGMENT OF ACQUITTAL OR ALTERNATIVELY NEW TRIAL; EXHIBITS |
| v. | |
| EDWARD ARAO, | Hearing Date: January 6, 2020 Hearing Time: 10:00 a.m. Location:    Courtroom of the Hon. S. James Otero |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys KATHERINE A. RYKKEN and VERONICA DRAGALIN, hereby files its Opposition to Defendant Edward Arao's Motion for Judgment of Acquittal or Alternatively New Trial (CR 281).

This Opposition is based upon the attached memorandum of points and authorities, attached exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 12, 2019

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

KATHERINE A. RYKKEN
VERONICA DRAGALIN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

I.    INTRODUCTION.................................................1

II.   STATEMENT OF FACTS...........................................1

      A.   The Government's Opening Statement......................2

      B.   Evidence Presented at Trial............................3

      C.   The Closing Arguments..................................5

III.  ARGUMENT.....................................................7

      A.   Defendant's Motion for Judgment of Acquittal Should Be
           Denied.................................................7

           1.   Legal Standard for Rule 29 Motion.................7

           2.   The Evidence Was Sufficient to Support Defendant
                ARAO's Conviction................................9

      B.   Defendant's Motion for New Trial Should Be Denied.......14

           1.   Legal Standard for Rule 33 Motion................14

           2.   The Question Posed to Agent Hart Did Not
                Constitute Misconduct............................14

           3.   The Government's Arguments in Rebuttal Did Not
                Constitute Misconduct............................18

           4.   ARAO Cannot Show Prejudice Warranting a New Trial...25

IV.   CONCLUSION..................................................25

## TABLE OF AUTHORITIES

<u>DESCRIPTION</u>                                                                 <u>PAGE</u>

**Cases**

<u>Arizona v. Johnson</u>,
      351 F.3d 988 (9th Cir. 2003)..................................18

<u>Bryan v. United States</u>,
      524 U.S. 184 (1998)...................................9, 18, 19

<u>Donnelly v. DeChristoforo</u>,
      416 U.S. 637 (1974)..........................................23

<u>Jackson v. Virginia</u>,
      443 U.S. 307 (1979)......................................7, 8, 9

<u>McDaniel v. Brown</u>,
      558 U.S. 120 (2010)...........................................8

<u>United States v. Begay</u>,
      673 F.3d 1038 (9th Cir. 2011)................................8

<u>United States v. Berry</u>,
      683 F.3d 1015 (9th Cir. 2012)............................14, 24

<u>United States v. Bracy</u>,
      67 F.3d 1421 (9th Cir. 1995).................................24

<u>United States v. Cabrera</u>,
      201 F.3d 1243 (9th Cir. 2000)................................21

<u>United States v. Freeman</u>,
      498 F.3d 893 (9th Cir. 2007).................................16

<u>United States v. Garcia-Guizar</u>,
      160 F.3d 511 (9th Cir. 1998).................................24

<u>United States v. Hui Hsiung</u>,
      778 F.3d 738 (9th Cir. 2015).................................24

<u>United States v. Lopez-Alvarez</u>,
      970 F.2d 583 (9th Cir. 1992).................................23

<u>United States v. Mack</u>,
      362 F.3d 597 (9th Cir. 2004).................................13

<u>United States v. Mende</u>,
      43 F.3d 1298 (9th Cir. 1995).................................18

ii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

United States v. Nevils,
    598 F.3d 1158 (9th Cir. 2010)..............................7, 8, 9

United States v. Pelisamen,
    641 F.3d 399 (9th Cir. 2011)...................................8

United States v. Phillips,
    704 F.3d 754 (9th Cir. 2012)..................................24

United States v. Pimentel,
    654 F.2d 538 (9th Cir. 1981)..................................14

United States v. Reed,
    575 F.3d 900 (9th Cir. 2009)...................................7

United States v. Rocha,
    598 F.3d 1144 (9th Cir. 2010).................................7

United States v. Sanchez,
    969 F.2d 1409 (2d Cir. 1992)..................................14

United States v. Senchenko,
    133 F.3d 1153 (9th Cir. 1998).................................23

United States v. Simpson,
    901 F.2d 1223 (5th Cir. 1990).................................21

United States v. Solorio,
    669 F.3d 943 (9th Cir. 2012)...................................8

United States v. Thomas,
    114 F.3d 228 (D.C. Cir. 1997)..............................19, 20

**Statutes**

18 U.S.C. § 922(a)(1)(A)......................................passim

18 U.S.C. § 924(a)(1)(A)..........................................20

18 U.S.C. § 371.................................................1, 4

**Rules**

Fed. R. Crim. P. 33(a)............................................13

Fed. R. Evid. 104(a)..............................................15

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.   INTRODUCTION**

3      Between 2015 and 2017, defendant EDWARD ARAO ("ARAO" or

4   "defendant"), together with co-defendant CARLOS FERNANDEZ

5   ("FERNANDEZ"), repeatedly purchased and then resold firearms for a

6   profit without a license.  In a two-year period, ARAO personally

7   resold 41 firearms, sometimes the same day he certified that he was

8   purchasing the firearms for himself.  On November 20, 2019, a jury

9   found ARAO guilty of conspiring to engage in and engaging in the

10  business of dealing in firearms without a license in violation of 18

11  U.S.C. §§ 371 and 922(a)(1)(A).  Defendant filed a Motion for

12  Judgment of Acquittal or Alternatively New Trial ("Motion") on two

13  grounds (CR 281).  First, defendant contends that there was

14  insufficient evidence that he acted willfully.  Second, defendant

15  argues that the government committed misconduct by asking ATF Special

16  Agent Tolliver Hart a question, an objection to which based on

17  speculation was sustained and the answer struck, and making a legally

18  permissible argument in rebuttal.  The Court has already denied

19  defendant's motion for mistrial on these same grounds.  As Ninth

20  Circuit precedent makes clear, a jury's verdict is entitled to

21  substantial deference.  Defendant cannot establish that this is the

22  sort of exceptional case in which the interest of justice compels a

23  new trial, as is required under Rule 33.  Defendant's motion is

24  meritless, and the jury's guilty verdicts should stand.

25  **II.   STATEMENT OF FACTS**

26      Because ARAO's Motion is based largely on the government's

27  arguments in rebuttal and a purported change in the government's

28  theory of the case, the statement below summarizes the government's

theory of the case in its opening, the relevant evidence introduced at trial, and the parties' respective closing arguments and rebuttal.

### A.  The Government's Opening Statement

In its opening statement, the government told the jury that defendants "used their badge to buy special types of guns that only law enforcement officers can buy in a store" and that they did this "so that they could then resell those guns at a profit." (Ex. A, 11/12/19 Tr. at 143:18-21.)  When discussing the Form 4473, the government pointed out the straw purchase warning in Question 11A, and specifically referred to defendant ARAO, noting "[h]e too was asked Question 11A." (Id. at 148:2-25.)  Counsel for defendant ARAO objected: "If I may object to that reference in the opening statement and ask the Court to instruct this jury that Mr. Arao is not charged with false statements in this case."  In response, the Court stated: "And again, just to emphasize what has already been said, arguments and statements of counsel is not evidence." (Id. at 149:1-8.)  The government then went on to explain: "On this form defendant Arao represented every single time that he was buying that off-Roster gun for himself.  The evidence will show that he did not buy these guns for himself, he bought them so he could resell them to other people for a profit, to people who could not walk into a store to buy the guns because they did not have the law enforcement badge or privilege." (Id. at 149:12-18.)  The government then told the jury that they will hear evidence "that on this very date that defendant signed this form, May 14, 2016, he resold this gun, this very same gun to another person." (Id. at 150:3-6.)

**B.   Evidence Presented at Trial**

The government presented four witnesses at the trial:  co-defendants Raul Cervantes Corona and Adalberto Pelayo, and ATF Special Agents David Hamilton and Tolliver Hart.  Based on their testimony and the evidence admitted, the jury found ARAO and FERNANDEZ guilty of conspiracy to engage in and engaging in the business of dealing firearms without a license (Counts One through Three, or the "illegal dealing counts").  The jury also found FERNANDEZ guilty of a separate conspiracy (Count Four) and the additional crimes of disposing of a firearm to a felon (Count Seven) and engaging in straw purchases (Counts Ten and Eleven) (collectively, the "additional counts").  Although ARAO was not charged in the additional counts, some of the evidence of these crimes also proved the illegal dealing counts against ARAO because he was involved in the sale and paperwork of those firearms.  Indeed, the particular firearms at the heart of the additional counts were also charged in the illegal dealing counts.

Because of the evidentiary overlap and the potential for jury confusion, the parties agreed to a limiting instruction (which the Court read repeatedly) and to bifurcate Special Agent Hart's testimony (which was prophylactic in nature and not legally required).  As the limiting instruction made clear, however, the evidence for the additional counts also included evidence against ARAO that the jury <u>could</u> consider for the limited purpose of deciding the illegal dealing counts.  In pertinent part, the limiting instruction stated:

> Defendant ARAO is not charged with these two crimes.
> He is only charged with conspiracy to deal in and the
> unlawful dealing in firearms without a license in

3

violation of 18 U.S.C. § 371 and 922(a)(1)(A).  To the extent you heard any evidence regarding defendant ARAO during these witnesses' testimony, **you are only to consider it for the limited purpose <u>of the two crimes charged</u> against defendant ARAO, and not for any other purpose**.

<u>See</u> Court's Instruction No. 9 (emphasis added).

During the second segment of Agent Hart's testimony, the government asked Agent Hart a "yes" or "no" question about the meaning of a word in a text message (Trial Ex. 169A): "During the course of your investigation, did you learn what 'the Chinese' or in Spanish 'El Chino' refers to?"  Agent Hart responded: "It appears to be a reference to defendant Arao."  In order to clarify for the jury that Agent Hart was simply offering an opinion, the government asked: "But you don't know that for certain?"  Agent Hart responded: "No." Defense counsel for ARAO objected based on speculation.  Because the government had yet not laid the proper foundation, the Court correctly sustained the objection, struck Agent Hart's answer, and ordered the jury to disregard the response.  (Ex. B, 11/18/19 Tr. 118:2-25.)

With respect to proof of ARAO's willfulness, and as discussed in additional detail below, the government admitted evidence of at least the following: relevant California laws admitted through a stipulated Judicial Notice, expert testimony about federal firearms licenses and the process for obtaining such a license, testimony and exhibits showing that ARAO had applied for and obtained a license, certified his knowledge of various state and federal laws in so doing, operated Ronin Tactical, purchased off-Roster firearms and intentionally resold them for profit, purchased at least 41 firearms from Ronin Tactical for himself individually, signed the ATF Form 4473 each of

4

those 41 times, quickly resold those same 41 firearms to the general

public, exploited his position as police officer to facilitate the

scheme, and that ARAO did so without a federal license to sell

firearms.   The government also introduced evidence to show that on

May 14, 2016, defendant signed a Form 4473 certifying that he was

purchasing a firearm for himself, but that the very same day he sold

that same firearm to another individual. (Trial Ex. 16, 30.)   In

fact, the evidence showed ARAO did this multiple times, waiting as

little as 0, 1, 2, 7, 8 days between certification and resale.   (Id.)

**C.   The Closing Arguments**

To prove the illegal dealing counts, the government was required

to prove willfulness.   Per the Court's instruction, willfulness

"requires proof that the defendant knew that his conduct was

unlawful, but does not require proof that the defendant knew of the

federal licensing requirement."   See Court's Instruction No. 19.

In closing, the government argued that ARAO understood that his

conduct was unlawful because he applied for and received a federal

dealing license to operate Ronin Tactical.   Even though the law does

not require that ARAO knew of the licensing requirement, ARAO in fact

knew about the licensing requirement and nevertheless sold 41 guns

without a license, conspiring to sell a total of 86 guns with

FERNANDEZ.   The government also argued that ARAO acted willfully

because he signed the ATF Form 4473 41 times, certifying each time

that he understood that dealing firearms required a federal license.

(Ex. C, 11/19/19 Tr. 127:7-129:4.)

During his closing argument, defense counsel for ARAO argued

that ARAO did not know that his conduct was unlawful.   Defense

counsel's argument was premised, in part, on the notion that ARAO

1   complied with all state and federal laws and requirements and

2   therefore must have believed that what he was doing was legal.

3   Defense counsel also argued that the ATF misstated the law in a memo

4   to local law enforcement.  His theory was that if the ATF was so

5   confused about the law (which it was not), then of course ARAO must

6   have been as well.  (Id. at 152:11-171:12.)

7       In rebuttal, government counsel stated that although ARAO was

8   not charged with straw purchases, the warning against straw purchases

9   on the ATF Form 4473 showed that ARAO knew his conduct was unlawful.

10  (Id. at 189:17-190:4.)  Defense counsel objected on 404(b) notice

11  grounds, which the Court overruled because it was argument of

12  counsel, not evidence.  (Id. at 189:9-16.)  After a second almost

13  immediate objection on the same ground and moving for mistrial at

14  sidebar, the Court sustained the objection.  (Id. at 190:5-191:12.)

15  The government then argued that filling out paperwork for each

16  firearm sale did not prove that ARAO believed that he had acted

17  lawfully, as argued by defense counsel in closing, but was instead a

18  means of avoiding detection.  (Id. at 191:14-193:3.)  Lastly,

19  consistent with its opening statement that defendants repeatedly

20  bought and then resold guns for a profit "to people who could not

21  walk into a store to buy the guns," the government analogized

22  defendants' gun dealing scheme to a liquor store and the purchase and

23  resale of alcohol to minors.  ARAO's counsel again objected on the

24  same 404(b) notice grounds, which the Court sustained and instructed

25  government counsel to move on.  (Id. at 195:7-24.)

26      After the jury retired, ARAO again moved for mistrial based on

27  the same arguments he now raises in his Motion, and the Court denied

28  the request.  (Id. at 200:2-204:15.)  Later the same day, ARAO filed

1    a motion requesting a curative instruction and again requesting a

2    mistrial.  (CR 258.)  The government filed a response the following

3    morning.  (CR 259.)  On November 20, 2019, the Court denied

4    defendant's motion.  (Ex. D, 11/20/19 Tr. at 9:4-5.)

5        On November 20, 2019, the jury returned guilty verdicts on all

6    counts against both defendants.

7    **III. ARGUMENT**

8        **A.   Defendant's Motion for Judgment of Acquittal Should Be
              Denied**

9

10            1.   Legal Standard for Rule 29 Motion

11       "The hurdle to overturn a jury's conviction based on a

     sufficiency of the evidence challenge is high."  United States v.

12   Rocha, 598 F.3d 1144, 1153 (9th Cir. 2010).  The jury's verdict must

13   stand if, "viewing the evidence in the light most favorable to the

14   prosecution, any rational trier of fact could have found the

15   essential elements of the crime beyond a reasonable doubt."  United

16   States v. Reed, 575 F.3d 900, 923 (9th Cir. 2009) (quotations

17   omitted).  The sufficiency analysis is two-fold.

18       "First, a reviewing court must consider the evidence presented

19   at trial in the light most favorable to the prosecution."  United

20   States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc)

21   (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  In so doing,

22   this Court "may not usurp the role of the finder of fact by

23   considering how it would have resolved the conflicts, made the

24   inferences, or considered the evidence at trial."  Id. (citing

25   Jackson, 443 U.S. at 318-19).  Thus, when "'faced with a record of

26   historical facts that supports conflicting inferences,' a reviewing

27   court 'must presume -- even if it does not affirmatively appear in

28

                                    7

the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  Id. (quoting Jackson, 443 U.S. at 326, and citing McDaniel v. Brown, 558 U.S. 120 (2010)).  "[T]he government does not need to rebut all reasonable interpretations of the evidence that would establish the defendant's innocence, or 'rule out every hypothesis except that of guilt beyond a reasonable doubt.'"  Nevils, 598 F.3d at 1163-64 (quoting Jackson, 443 U.S. at 326).  Only where "mere speculation, rather than reasonable inference, supports the government's case, or where there is a total failure of proof of a requisite element" is the evidence legally insufficient.  Id. at 1167 (citations, quotations, and alterations omitted).

Second, because "[a] jury's verdict is not to be disturbed lightly," United States v. Begay, 673 F.3d 1038, 1043 (9th Cir. 2011), and is afforded "great deference," United States v. Pelisamen, 641 F.3d 399, 409 n.6 (9th Cir. 2011), "the reviewing court must [next] determine whether this evidence . . . is adequate to allow 'any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'"  Nevils, 598 F.3d at 1164 (quoting Jackson, 443 U.S. at 319 (emphasis and alteration in original)); see also United States v. Solorio, 669 F.3d 943, 954-56 (9th Cir. 2012) (even where there was a "major gap" in evidence relating to one required element and "facts could certainly support an inference" that the element was unsatisfied, "the record as a whole" and the "'great deference'" accorded jury verdicts precluded court from setting guilty verdict aside (quoting Pelisamen, supra)).  "At this second step, ... a reviewing court may not 'ask itself whether it believes that the evidence at the trial established guilt beyond a

8

reasonable doubt,' only whether 'any' rational trier of fact could have made that finding." <u>Nevils</u>, 598 F.3d at 1164 (quoting <u>Jackson</u>, 443 U.S. at 318-19) (emphasis in original).

> 2.   <u>The Evidence Was Sufficient to Support Defendant ARAO's Conviction</u>

Defendant argues that there was insufficient evidence of his "willfulness to sustain a conviction." (CR 281 at 1.)  As the Court instructed the jury at trial: "Willfully, as used in this statute, requires proof that the defendant knew that his conduct was unlawful, but does not require proof that the defendant knew of the federal licensing requirement."  Ninth Circuit Model Jury Instruction No. 8.53; <u>see</u> <u>Bryan</u>, 524 U.S. 184 (finding that the following evidence "was unquestionably adequate to prove that petitioner was dealing in firearms, and that he knew that his conduct was unlawful": "that petitioner did not have a federal license to deal in firearms; that he used so-called 'straw purchasers' in Ohio to acquire pistols that he could not have purchased himself; that the straw purchasers made false statements when purchasing the guns; that petitioner assured the straw purchasers that he would file the serial numbers off the guns; and that he resold the guns on Brooklyn street corners known for drug dealing.").  When viewing the evidence presented at trial in the light most favorable to the prosecution, a rational trier of fact could have made the finding that defendant ARAO knew that his conduct was unlawful.

First, ARAO applied for a federal firearms license and certified that he understood the rules and regulations governing firearms sales.  (Trial Ex. 25 at p. 4, 8, 9.)  This included specifically, acknowledging laws, rules, and regulations pertaining to the ATF Form

4473, sales to law enforcement officers, "straw" purchases, dealing licenses, and state laws and local ordinances. (Id. at p. 8.) ARAO signed and certified that an ATF investigator explained these various laws, rules, and regulations to him, and that he "will be responsible for familiarizing [himself] with all of the laws and regulations governing [his] licensed firearms business." (Id.)

Second, ARAO was successful in obtaining a federal firearms license and in fact operated a federal firearms licensee ("FFL") business, Ronin Tactical, for several years before the charged conduct. The jury could reasonably infer that as the CEO of an FFL who operated a business selling firearms, ARAO was aware that his conduct in repeatedly buying and then reselling for a profit off-Roster firearms to non-law enforcement officers was unlawful.

Third, ARAO personally signed and executed the ATF Form 4473 dozens of times. At trial, the government introduced the ATF Forms 4473 executed by ARAO for the 41 charged gun transactions. (Trial Ex. 30.) Each time, ARAO was warned that "the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of law *(See Instructions for Question 16)*." (Id. at p. 3.) Question 16 then included an explicit reference to 18 U.S.C. § 922(a)(1), the very statute ARAO was charged with violating. (Id. at p. 6.)

Fourth, the ATF Form 4473 additionally warned ARAO each time that answering "yes" to question 11A if ARAO was "not the actual buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law." (Id. at p. 3.) The evidence introduced at trial showed that ARAO signed the ATF Form 4473 certification for a firearm on May 14, 2016, and then resold it the

same day to another individual.  (Trial Ex. 30, 16.)  Exhibit 16 in fact showed that ARAO resold a firearm on the same day on two separate occasions.  In addition, ARAO resold multiple firearms within days of certifying that he was purchasing them for himself. (Id.)  ARAO repeatedly engaged in this conduct despite being warned that falsely representing he was the actual buyer of the firearm is a crime.

Fifth, as the parties stipulated in Judicial Notice 1, "California law permitted the selling of 'off-Roster' firearms to exempted parties, including sworn members of police departments and other law enforcement agencies **for use in the discharge of their official duties**."  (Trial Ex. 202) (emphasis added).  Testimony at trial established that law enforcement officers receive specialized training on weapons safety and handling.  Because law enforcement officers have a difficult and dangerous job, and because they are highly trained on firearms handling, California law provides a limited exemption for the sale of off-Roster firearms to law enforcement officers "for use in the discharge of their official duties."  ARAO purchased 41 off-Roster Colt .38 Super firearms under the California exemption.  None of the 41 off-Roster firearms were purchased "for use in the discharge of [ARAO]'s official duties." ARAO blatantly violated California law by abusing the law enforcement exemption to make money.  He repeatedly purchased off-Roster firearms from dealers not for use in the discharge of his duties, but to resell the firearms at a profit to non-law enforcement members of the general public who were not trained and who could not buy such firearms directly in a gun store.  A jury could and did reasonably conclude that ARAO was aware that his conduct was unlawful.

Lastly, the jury heard evidence that ARAO was not only a gun business owner, but a police officer.  A rational trier of fact could reasonably conclude that ARAO was aware that his conduct was unlawful given that he took an oath to uphold the law, received training on state criminal laws, and spent 17 years enforcing state criminal laws.

ARAO's focus on the ATF memo (Trial Ex. 185) is misplaced.  First, contrary to ARAO's argument, the government did _not_ rely "heavily on this notice to prove willfulness" for defendant ARAO.  (CR 281 at 5.)  In fact, at no point in its closing or rebuttal did the government argue that ARAO acted willfully because of the ATF memo.  The evidence at trial showed that defendant FERNANDEZ discussed the ATF memo with agents during his interview.  No such evidence was introduced as to ARAO.  Although the jury could have inferred that ARAO similarly had notice of the ATF memo, the government made no such argument.  Second, the memo does not show "ATF's _own_ misunderstanding of the law."  (CR 281 at 5.)  The law enforcement advisory warned: "a law enforcement official who regularly acquires 'off roster' firearms and sells or disposes of them for a profit is engaging in the business as a dealer of firearms and must be licensed."  (Trial Ex. 185 at p. 2.)  This is a correct statement of the law, since 18 U.S.C. § 922(a)(1)(A) requires a federal license for someone engaged in the business of dealing in firearms.  The ATF memo also warned that this conduct may implicate federal laws against straw purchases (consistent with the government's theory of the case and argument in rebuttal): "it is unlawful to knowingly misrepresent that you are the transferee-buyer

of a firearm when you acquire a firearm with the intent to sell or otherwise dispose of that firearm to someone else." (Id.)

Contrary to ARAO's argument, the ATF memo did not incorrectly imply that FFLs could sell off-Roster firearms to the public. ARAO is correct in that "even an FFL cannot purchase and sell off-roster firearms [to the general public]." (CR 281 at 6 fn.2.) This is because, under California law, FFLs cannot engage in the business of selling off-Roster firearms to the general public. If ARAO had complied with the federal requirement of obtaining a personal federal firearms license, his conduct would have complied with 18 U.S.C. § 922(a)(1)(A). If he then sold off-Roster firearms to the general public as a properly licensed FFL, he would nonetheless violate California prohibitions on such sales. The ATF memo did not further warn local police officers about specific State law violations implicated by this conduct, since the ATF is not tasked with State law enforcement and the federal government has no jurisdiction to enforce State laws.

In sum, the issues of California state laws as charged in the indictment, as presented at trial, and as argued in the government's closing and rebuttal were relevant to understanding defendants' money making scheme and willfulness. California restrictions on off-Roster firearms explained why defendants were able to make money by abusing their law enforcement status. The California laws set forth in Judicial Notice 1 were also relevant to demonstrate defendants' willfulness, in that their conduct violated more than the federal licensing requirement law. When viewed in the light most favorable to the government, a rational trier of fact could and did reasonably conclude that ARAO was aware that his conduct was unlawful.

**B.    Defendant's Motion for New Trial Should Be Denied**

    1.    Legal Standard for Rule 33 Motion

The standard to grant a Rule 33 motion for a new trial is also stringent.  Rule 33 provides that "upon the defendant's motion, a court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  Defendant carries the burden.  United States v. Mack, 362 F.3d 597, 600 (9th Cir. 2004).  Because a verdict is presumptively valid, a new trial "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict."  United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981) (internal quotations marks and citations omitted).  "It is only when it appears that an injustice has been done that there is a need for a new trial 'in the interest of justice.'"  United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992).  "[I]mproprieties in counsel's arguments to the jury do not constitute reversible error unless they are so gross as probably to prejudice the defendant, and the prejudice has not been neutralized by the trial judge."  United States v. Berry, 683 F.3d 1015, 1024 (9th Cir. 2012).

    2.    The Question Posed to Agent Hart Did Not Constitute Misconduct

ARAO first argues that the government's impermissible questioning of Agent Hart was misconduct designed to mislead the jury, entitling him to a new trial.  (CR 281 at 6.)  During its direct examination of Agent Hart, the government asked if based on his knowledge of this investigation, Agent Hart had learned who the term "the Chinese" or the Spanish "el Chino" referred to in a text message.  (Ex. B, 11/18/19 Tr. at 118:2-20.)  Agent Hart had

14

testified earlier in the trial that ATF did an audit of Ronin
Tactical in February 2017.  On March 24, 2017, defendant FERNANDEZ
told a gun customer (Camacho Jr.) in a text message that law
enforcement came, that "the Chinese" is not doing paperwork, and that
he needs to "update some shit to be able to do paperwork."[1]  In
response to the government's "yes" or "no" question, Agent Hart gave
his opinion that "[i]t appears to be a reference to defendant ARAO."
The government followed up to clarify for the jury that this was just
an opinion by asking: "But you don't know that for certain?"  Agent
Hart responded: "No." (Id. at 118:19-20.)  ARAO then objected to this
testimony based on speculation and the Court sustained the objection,
struck the response, and ordered the jury to disregard it.  (Id. at
118:21-25.)  ARAO argues this was misconduct.

   ARAO notes that "[a] prosecutor should not ask a question that
implies the existence of a factual predicate for which a good faith
belief is lacking."  (CR 281 at 6.)  Here, two exhibits introduced at
trial,[2] and additional discovery in this case,[3] established a good

---

[1] Trial Exhibit 169A included the following text message from
defendant FERNANDEZ to Camacho Jr: "*The Chinese now is not doing*
paperwork *law enforcement came* and he needs to up date some shit to
be able to do paperwork."

[2] In addition to Trial Exhibit 169A, defendant FERNANDEZ again
used the Spanish word for "Chinese" in discussing gun transactions
with a gun customer, writing: "I can try and have *the Chinese* do the
paper."  (Trial Ex. 182A.)

[3] Communications produced in discovery showed that defendant
FERNANDEZ used the Spanish word "el Chino" to describe a person who
gave him guns, who owned guns, and who bought guns for him.  See,
e.g., USAO_0007045 ("Oh I know u would bro the last lady colt on gb
sold for 3g's ... *The* 3 *that* **el chino** *gave me* was only for the blk
one"); USAO_0007067 ("*no this one is* d**el chino**!!! Lol he won't
sell..."); USAO_025648 ("So I jumped on these and owe **the chino** cuz
he bought them for me lol so I need to cash his ass out lol").  In
deciding preliminary questions about whether evidence is admissible,
"the court is not bound by evidence rules, except those on

faith belief that defendant FERNANDEZ used the term "the Chinese" to refer to defendant ARAO.  As a person familiar with defendant FERNANDEZ's private communications, including thousands of text messages, e-mails, Instagram direct messages and posts, Agent Hart was in a position to offer the opinion that defendant FERNANDEZ used the term "el Chino" to refer to defendant ARAO.  See United States v. Freeman, 498 F.3d 893, 904-05 (9th Cir. 2007) (an officer's interpretation of code words is admissible lay opinion when based on the officer's "direct knowledge of the investigation").  Because the government had not yet laid the proper foundation for the lay opinion testimony, the Court was correct in sustaining the objection and striking the response, but the government did not commit misconduct in posing the "yes" or "no" question to Agent Hart.  ARAO's disdain should be directed toward his own business partner and co-conspirator for the use of this offensive term, not toward the government.

Defendant is wrong about the Court's limiting instruction as to the second portion of Agent Hart's testimony.  The Court did not instruct the jury, as ARAO now claims, that the second portion of testimony "was to be considered only against Mr. Fernandez."  (CR 281 at 6.)  Nor did the Court make a "ruling that the government would not use evidence of straw purchases or prohibited person sales against Mr. Arao."  (Id. at 10.)  ARAO repeatedly argues in his Motion that the government violated the Court's orders, but does not actually identify a specific Court order that the government

privilege." Fed. R. Evid. 104(a).  The Court can therefore consider this and other evidence in evaluating whether the government had a good faith belief in eliciting this testimony.  Contrary to defendant's baseless accusation, referring the Court to facts outside the trial record for purposes of establishing its good faith belief regarding a question or argument does not constitute "misconduct" or "bad faith." (CR 281 at 7 fn.3.)

16

violated.  Instead, ARAO misconstrues that parties' agreement and the Court's jury instruction that certain evidence shall be used for a specific limited purpose as an agreement and instruction not to use that evidence against ARAO at all.

As the parties agreed, the Court repeatedly instructed the jury during trial: "To the extent you hear any evidence regarding defendant ARAO during this witness's testimony, you are only to consider it for the limited purpose of <u>the two crimes charged</u> against defendant ARAO, and not for any other purpose." (emphasis added). The Court did <u>not</u> instruct the jury that they could not consider the evidence against ARAO at all.  During the second portion of Agent Hart's testimony, the jury did hear evidence regarding defendant ARAO, specifically evidence related to the two crimes charged against ARAO, conspiracy and illegal dealing.  For example, defendant ARAO completed three firearms sales to co-defendant Rafael Camacho Maravilla on December 16, 2016, which are Overt Acts 95, 96, and 97 committed by defendant ARAO charged in Count One of the conspiracy, and substantively charged against defendant ARAO in Count Three.  In addition, statements defendant FERNANDEZ made during the course of the conspiracy charged in Count One to gun buyers are co-conspirator statements admissible against ARAO for all the reasons set forth in the government's pretrial filings and arguments during trial.[4]

---

[4] To the extent ARAO continues to argue that Agent Hart's response prejudiced him on <u>Bruton</u> and <u>Crawford</u> grounds, he is wrong. Co-conspirator statements do not create a <u>Crawford</u> or <u>Bruton</u> issue because they are not testimonial.  Thus, defendant FERNANDEZ's statements in text messages in furtherance of the conspiracy during the second portion of Agent Hart's testimony was substantive evidence admissible against ARAO for the charged crime against ARAO, conspiracy to illegally deal in firearms.  ARAO did not have a Constitutional right to cross examine FERNANDEZ regarding text

In sum, it was not misconduct for the government to attempt to elicit testimony from Agent Hart as to his understanding of a term repeatedly used by defendant FERNANDEZ to refer to his business partner and co-conspirator when discussing illegal gun sales with customers.  The government had a good faith belief to ask the question, and the testimony was relevant to establishing the charged conspiracy and agreement between defendants FERNANDEZ and ARAO.  Furthermore, because the Court sustained defendant's objection, struck the testimony, and instructed the jury to disregard it, defendant cannot demonstrate prejudice, let alone a miscarriage of justice warranting a new trial.  Any prejudice resulting from the purported error was ameliorated because the Court instructed the jury to disregard the response.  The jury is presumed to follow a judge's instructions.  See United States v. Mende, 43 F.3d 1298, 1302 (9th Cir. 1995).  Indeed, "the influence of the trial judge on the jury is necessarily and properly of great weight, and jurors are ever watchful of the words that fall from [the judge]."  Arizona v. Johnson, 351 F.3d 988, 995 (9th Cir. 2003).

    3.   The Government's Arguments in Rebuttal Did Not Constitute Misconduct

ARAO next contends that the government "impermissibly argu[ed] on rebuttal, with no evidence in the record to support it, that Mr. Arao acted willfully by engaging in straw purchases and by selling to prohibited persons (the 'liquor store' analogy)." (CR 281 at 11) (emphasis in original).  ARAO ignores controlling Supreme Court authority, misconstrues the government's arguments and the evidence

---

messages to Camacho Jr. any more than he did regarding text messages with other gun customers.

in the record, and fails to meet the high standard for overturning a presumptively valid verdict.

As the government set forth in response to ARAO's request for a curative instruction (CR 259), the Supreme Court has held that evidence of straw purchases is relevant to establishing willfulness in 18 U.S.C. § 922(a)(1)(A) cases. Bryan v. United States, 524 U.S. 184 (1998). In Bryan, like ARAO, the defendant was charged with conspiracy to engage in and engaging in the business of dealing in firearms without a license. The conduct and the evidence introduced at trial in Bryan violated multiple laws, not just 18 U.S.C. § 922(a)(1)(A), including the very issue defendant ARAO raises in this case – **straw purchases**. The Supreme Court concluded that the evidence, including evidence of straw purchases, "was unquestionably adequate to prove that petitioner was dealing in firearms, and that he knew that his conduct was unlawful." Id. at 184. ARAO fails to even mention this controlling authority in his Motion, let alone attempt to distinguish this case from Bryan (which he cannot do). In light of this Supreme Court authority on the issue of establishing willfulness in illegal gun dealing cases through straw purchases, ARAO has no basis to contend that the government's rebuttal argument was "blatant and impermissible"[5] and "highly prejudicial." (CR 281 at 9, 10.)

Defendant cites United States v. Thomas, 114 F.3d 228, 247-248 (D.C. Cir. 1997), for the proposition that "[a]n attempt by a

_____

[5] While ARAO's basis for objecting at trial was Rule 404(b) notice, he has abandoned this argument in this Motion, and instead just vaguely argues that the rebuttal argument was impermissible and misconduct without pointing to any Rule of Evidence, case, or Court order in support.

19

prosecutor to suggest that a defendant had committed other crimes or bad acts amounts to misconduct." (CR 281 at 7.) In Thomas, the prosecutorial misconduct allegations stemmed from "the prosecutor's opening statement to the jury [which] stated that the government would present evidence that would implicate the defendant in certain criminal activities, no evidence of which was ultimately produced at trial." Id. at 246. Specifically, as to one defendant "the prosecutor told the jury that the government would show that he was involved in [a] murder." Id. Even in that scenario, the D.C. Circuit held that "appellants have failed to show prejudice warranting reversal of their convictions." Id. at 249. Thomas does not support ARAO's contention regarding the government's permissible arguments in rebuttal in this case.

ARAO also confusingly argues that "no evidence in the record" supported that "ARAO acted willfully by engaging in straw purchases." (CR 281 at 7.) Contrary to ARAO's claim that "the government made no effort to prove willfulness through straw purchases" (id. at 2), evidence introduced at trial established that ARAO engaged in straw purchases and that he was repeatedly warned on the ATF Form 4473 that engaging in straw purchases was unlawful. Trial Exhibit 16 set forth all of the charged gun transactions against ARAO, organized by days from delivery to resale, showing that ARAO waited as little as 0, 1, 2, 7, 8 days between purchasing an off-Roster firearm and then reselling it to another person. Trial Exhibit 17 summarized the same information in graph form. The reason the government introduced this evidence at trial was to emphasize the short duration between purchase and resale, an indicator of straw purchases. Trial Exhibit 30 was a compilation of ATF Forms 4473 for the charged gun

transactions in the indictment, all signed and executed by ARAO. During trial, the government repeatedly emphasized the warnings on the ATF Form 4473, including the straw purchase warning in Question 11A.  The reason the government emphasized these warnings was to establish willfulness as to the illegal dealing counts.  A violation of 18 U.S.C. § 924(a)(1)(A) for straw purchases does not contain a willfulness element.  The emphasis on the straw purchase warning, therefore, was relevant only to the issue of willfulness as to a violation of 18 U.S.C § 922(a)(1)(A) charged against both FERNANDEZ and ARAO.  The rebuttal argument was based on evidence that was admitted at trial without objection from either defendant.  "It is not misconduct for the prosecutor to argue reasonable inferences based on the record." United States v. Cabrera, 201 F.3d 1243, 1250 (9th Cir. 2000) (internal quotations and citation omitted); United States v. Simpson, 901 F.2d 1223, 1228 (5th Cir. 1990) (finding no plain error because the argument "was a permissible summary of the evidence").

ARAO also misconstrues the government's rebuttal argument and evidence presented at trial in arguing that the government's intent was to "inflame the passions of the jury and imply that Mr. Arao was engaged in other bad conduct for which he was not charged" and "lead the jury away from the charges in the indictment." (CR 281 at 8, 9.) As set forth in detail in prior filings (CR 259), the government's rebuttal argument was consistent with its theory of the case as articulated in the indictment,[6] discovery, pretrial motions, opening

---

[6] See CR 90, First Superseding Indictment ¶ 21(b) ("Defendant ARAO would transfer off-Roster firearms from Ronin Tactical Group to himself."); Overt Acts 61-101 (alleging the dates that defendant ARAO

1    statement,[7] presentation of evidence at trial, and closing argument.

2    At no point did the government argue "other" bad conduct for which

3    ARAO was not charged or attempt to lead the jury away from the

4    charges in the indictment.  To the contrary, the argument stemmed

5    from evidence introduced at trial by stipulation.

6        Contrary to ARAO's arguments, the government did not invite "the

7    jury to blame Mr. Arao for dangerous firearm sales to prohibited

8    persons."  (CR 281 at 8.)  In its opening statement, the government

9    explained that the evidence would show that given California laws on

10   off-Roster firearms, defendants' scheme essentially amounted to

11   buying off-Roster firearms directly from FFLs using their law

12   enforcement status and then turning around and reselling those guns

13   "to people who could not walk into a store to buy the guns."  (Ex. A,

14   11/12/19 Tr. at 149:12-18.)  At trial, the government introduced

15   evidence that defendants' scheme operated in this manner.  In its

16   closing argument, the government again emphasized the nature of

17   defendants' illegal gun business scheme in the context of

18   California's off-Roster laws.[8]

19   ───────────────────

20   transferred firearms to himself and the subsequent dates that
     defendant ARAO resold the same firearms).

21       [7] In fact, during the opening statement, the government
     highlighted the straw purchase warning as to ARAO and summarized a
22   gun transaction that it proved at trial, wherein ARAO signed the Form
     4473 certification on May 14, 2016, and then resold the firearm to
23   another individual the same day, clearly constituting a straw
     purchase.  ARAO objected to this portion of the opening statement,
24   but the Court allowed counsel to proceed and reminded the jury that
     argument and statements by counsel are not evidence.  (Ex. A,
25   11/12/19 Tr. at 148:2-150:6.)

26       [8] ARAO's argument that "[t]he government never presented any
     evidence that Mr. Arao knew or had reason to believe that this FFL
27   did not cover the purchase and sale of off-roster firearms through
     the peace officer exception" is disingenuous.  (CR 281 at 5.)  In the
28   same motion, ARAO recognizes that "[a]s the government argued, even
     an FFL cannot purchase and sell off-roster firearms."  (Id. at 6.)

1      In rebuttal, the government provided a liquor store analogy to

2 illustrate defendants' illegal gun business scheme and their

3 knowledge that their conduct was unlawful.  Liquor stores, like FFLs,

4 must have a license to operate.  Certain persons, like underage

5 teenagers, are prohibited from walking into a liquor store and buying

6 alcohol.  In California, the general public is similarly prohibited

7 from walking into a gun store and buying off-Roster firearms.

8 Defendants' illegal gun business scheme involved using their law

9 enforcement status to buy off-Roster firearms directly from FFLs and

10 then turning around and reselling those guns to people who could not

11 walk into a store to buy them.  Defendants did this without a

12 license, in violation of federal law.  The liquor store analogy

13 illustrated this point with a more accessible example of reselling

14 alcohol instead of reselling guns.  As the jury selection process

15 made clear, very few prospective jurors had any experience in

16 purchasing and owning firearms.  The use of this analogy did not

17 constitute misconduct, especially when the analogy involved a less

18 prejudicial scenario (reselling liquor for profit) than the charged

19 conduct (reselling deadly weapons for profit).  <u>Cf.</u> <u>United States v.</u>

20 <u>Senchenko</u>, 133 F.3d 1153, 1156 (9th Cir. 1998) (finding no misconduct

21 in non-drug case when prosecutor drew analogy during closing "to

22 possession of large quantities of narcotics").  Moreover, as the

23 Supreme Court has held, a "court should not lightly infer that a

24 prosecutor intends an ambiguous remark to have its most damaging

25 meaning or that the jury, sitting through a lengthy exhortation, will

26 draw that meaning from the plethora of less damaging

27 _____

28 fn.2)  ARAO knew that Ronin Tactical could not sell off-Roster
firearms to the general public, which is why he completed 41 straw
purchases to himself from Ronin Tactical.

interpretations." Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974). The government's use of the analogy was intended to illustrate the government's theory of the case with a less prejudicial and more accessible example, and did not constitute misconduct.

Lastly, ARAO takes issue with the fact that these arguments were made in rebuttal and not in the government's closing argument. (CR 281 at 9.) However, the government can fairly comment on and respond to defense argument. See United States v. Lopez-Alvarez, 970 F.2d 583, 597 (9th Cir. 1992) ("the propriety of the prosecutor's remarks must be judged in relation to what would constitute a fair response to the remarks of defense counsel"); United States v. Hui Hsiung, 778 F.3d 738, 746 (9th Cir. 2015) ("A prosecutor may respond in rebuttal to an attack made in the defendant's closing argument."). It is equally well established that where the defense "opens the door to an argument," it is "fair advocacy for the prosecution to enter." United States v. Garcia-Guizar, 160 F.3d 511, 522 (9th Cir. 1998) (citation omitted). Because ARAO's closing argument focused solely on the issue of willfulness, the government could fairly respond to those arguments with additional evidence and theories to rebut and negate defendant's position. Given the context in which rebuttal arguments must be evaluated, it was not misconduct for the government to respond and argue that ARAO knew his conduct was unlawful because he was repeatedly warned that straw purchases are against the law and because the liquor store analogy illustrated the common sense conclusion that repeatedly buying a heavily regulated item and then reselling it for profit is unlawful.

1          4.   <u>ARAO Cannot Show Prejudice Warranting a New Trial</u>

2      ARAO cannot show prejudice resulting from the government's

3  rebuttal arguments given the Court's sustaining his objections during

4  the rebuttal and the Court's jury instructions.  See, e.g., Berry,

5  683 F.3d 1015, 1024 (no error where prejudice has "been neutralized

6  by the trial judge").  The Ninth Circuit has consistently held that a

7  district court's instruction (mirroring the instructions given in

8  this case) that "[q]uestions, objections, statements, and arguments

9  of counsel are not evidence" can neutralize any purported prejudicial

10  effect of a prosecutor's improper comments in closing.  United States

11  v. Bracy, 67 F.3d 1421, 1431 (9th Cir. 1995); United States v.

12  Phillips, 704 F.3d 754, 766 n. 12 (9th Cir. 2012) ("[T]he judge had

13  specifically instructed the jury that the statements by either

14  attorney in closing argument were not to be considered as evidence,

15  and that the only evidence properly considered was the testimony of

16  the witnesses, the exhibits, and any stipulations.  This instruction

17  also helped to ensure that any error did not affect the outcome of

18  Phillips's trial.").  ARAO has failed to demonstrate that the

19  government's rebuttal argument warrants overturning a presumptively

20  valid verdict.

**IV.  CONCLUSION**

22      For the foregoing reasons, the government respectfully requests

23  that this Court deny ARAO's motion for judgment of acquittal or

24  alternatively new trial.