# Exhibit A

1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3                    ---

4      HONORABLE S. JAMES OTERO, JUDGE PRESIDING

5                    ---

6

7

8   **UNITED STATES OF AMERICA,**      )
                                        )
9                                       )
                                        )
10                Plaintiff;            )
                                        )No. **CR 18-121SJO**
11          **VS**                      **)**
                                        **)**
12   **CARLOS MIGUEL FERNANDEZ,**       **)**
     **EDWARD YASUSHIRO ARAO,**         )
13                                      )
                                        )
14                Defendants.           )
     _____)

15

16

17          Reporter's Transcript of Proceedings
                **JURY TRIAL - DAY ONE**
18             Los Angeles, California
             TUESDAY, NOVEMBER 11, 2019

19

20

21

22

23          Anne Kielwasser, CRR, RPR, CSR
            Federal Official Court Reporter
24          350 WEST 1ST Street, Room 4455
            Los Angeles, California 90012
25           Telephone: (213) 894-2969
             anne.kielwasser@gmail.com

```
 1                    A P P E A R A N C E S

 2

 3     ON BEHALF OF THE PLAINTIFF:

 4     Katherine A Rykken
       Veronica Dragalin
 5     AUSA - Office of US Attorney
       General Crimes Section
 6     312 North Spring Street Suite 1200
       Los Angeles, CA 90012
 7     213-894-3659
       Fax:  213-894-0141
 8     Email:  Katherine.rykken@usdoj.gov
       Email:  Veronica.dragalin@usdoj.gov
 9
       Also Present:  Agent Hart, Agent Hamilton.
10

11     ON BEHALF OF THE DEFENDANT EDWARD Y. ARAO:

12
       Edward M Robinson
13     Rachel Robinson
       Edward M. Robinson A Professional Law Corporation
14     21515 Hawthorne Boulevard Suite 730
       Torrance, CA 90503
15     310-316-9333
       Fax:  310-316-6442
16     Email:  Eroblaw@gmail.com

17     Lisa Victoria Houle
       Houle Law APC
18     1230 Rosecrans, Suite 300
       Manhattan Beach, CA 90266
19     424-332-9079
       Lisa@houle-law.com
20

21     ON BEHALF OF THE DEFENDANT CARLOS M. FERNANDEZ:

22     Ambrosio Eduardo Rodriguez
       Michael J Hanagan
23     The Rodriguez Law Group
       626 Wilshire Boulevard Suite 460
24     Los Angeles, CA 90017
       213-995-6767
25     Email:  Aer@aerlawgroup.com
```

**INDEX**

**WITNESS:**                                                      **PAGE:**


**JURY SELECTION**                                                  22
**Opening statements by Ms. Dragalin**                             143
**Opening Statements By Mr. Robinson**                             154
WITNESS, **RAUL CERVANTEZ CORONA**, SWORN                          164
DIRECT EXAMINATION                                                 164
CROSS-EXAMINATION                                                  186
REDIRECT EXAMINATION BY MS. DRAGALIN                               197
RECROSS EXAMINATION BY MR. HANAGAN                                 200
WITNESS, **DAVID HAMILTON**, SWORN                                 202
DIRECT EXAMINATION BY **MS. DRAGALIN**                             202

* * * * *

**EXHIBITS**

Exhibit No. Exhibits 1 through 33, 35 through       163
41, 53A, 53B, 54 through 59, 91, 92, 94 through
100, 103 through 108, 108A, 109, 113 through
116, 118 through 123, 125 through 134A, 134B,
135, 136A, 136B, 137, 138, 138A, 139 through
143, 145A, 145B, 146, 148A, 148B, 149, 149B,
150, 151, 151A, 152, 153, 154, 156, 157, 157A,
158, 160 through 163, 165, 167, 168, 169A,
169B, 171A, 171B, 172A, 172B, 173A, 173B, 174A,
174B, 175A, 175B, 176A, 176B, 177, 178, 179.
180A, 180B, 181, 182A, 182B, 183A, 183B, 185,
190, 195 and 196 admitted into evidence

* * * * * *

| | | |
|---|---|---|
| 14:10:05 | 1 | then present closing arguments.  After that you will go into |
| 14:10:08 | 2 | the jury room to deliberate on your verdict. |
| 14:10:11 | 3 | And with that, I'm going to turn it over to |
| 14:10:19 | 4 | the government to make opening statements. |
| 14:10:22 | 5 | Which counsel will make the opening |
| 14:10:25 | 6 | statement? |
| 14:10:25 | 7 | **MS. DRAGALIN:**  I will, Your Honor. |
| 14:10:27 | 8 | **THE COURT:**  Okay.  Again, this is not evidence in |
| 14:10:34 | 9 | the case.  This is just statements of counsel. |
| 14:10:45 | 10 | **MS. DRAGALIN:**  May I proceed? |
| 14:10:46 | 11 | **THE COURT:**  Yes, please. |
| 14:10:49 | 12 | (Opening statements by Ms. Dragalin) |
| 14:10:51 | 13 | **MS. DRAGALIN:**  Ladies and gentlemen.  This is a |
| 14:10:52 | 14 | case about police officers using their status to break the |
| 14:10:55 | 15 | law.  The two defendants, Carlos Fernandez and Edward Arao |
| 14:11:03 | 16 | were police officers with the Gardena Police Department. |
| 14:11:08 | 17 | They took advantage of their status as police |
| 14:11:10 | 18 | officers.  They used their badge to buy special types of guns |
| 14:11:15 | 19 | that only law enforcement officers can buy in a store.  They |
| 14:11:21 | 20 | did that so that they could then resell those guns at a |
| 14:11:25 | 21 | profit.  They did that together and repeatedly over the |
| 14:11:32 | 22 | course of two years.  For that, the defendants are charged |
| 14:11:37 | 23 | with two crimes:  Conspiracy to commit a crime, meaning an |
| 14:11:47 | 24 | agreement to commit a crime; and dealing in firearms without |
| 14:11:50 | 25 | a license. |

14:11:54  1          Now, during this trial, you will hear from a

14:11:57  2  number of witnesses.  You will hear from buyers who bought

14:12:00  3  guns from these two defendants.  You will hear from a

14:12:03  4  firearms expert and from a case agent who investigated this

14:12:06  5  case.

14:12:08  6          During the course of this trial, the

14:12:10  7  government will prove to you the illegal sale through

14:12:15  8  firearms records, phone records, bank records.  The

14:12:19  9  government will prove the defendants' crime through their own

14:12:23  10  words in e-mail, Instagram posts, Instagram messages, text

14:12:31  11  messaging.

14:12:31  12          I'm going to walk you through what the

14:12:34  13  government expects the evidence will show at trial.

14:12:38  14          During the course of this trial, you will

14:12:40  15  learn that the ATF is the federal agency that enforces

14:12:47  16  federal gun laws.

14:12:48  17          Guns are inherently dangerous.  For that

14:12:51  18  reason, they are heavily regulated, and that's because of one

14:12:56  19  basic and fundamental concept making sure that guns don't get

14:13:03  20  into the hands of the wrong people.  But you'll hear there

14:13:06  21  are restrictions on who can buy guns, and there are

14:13:11  22  restrictions on who can sell guns.

14:13:14  23          In order to legally sell guns as a business,

14:13:17  24  the ATF requires a federal firearms license, a business that

14:13:25  25  can legally sell guns to the public is referred to as a

14:13:30  1   Federal Firearms Licensee or FFL.  You'll hear about the

14:13:35  2   process of applying to become an FFL and about the rules and

14:13:39  3   regulations that FFL had to follow such as meticulously

14:13:43  4   keeping record of every single gun transaction that takes

14:13:46  5   place.

14:13:46  6              You'll learn during the course of this trial

14:13:56  7   that defendant Fernandez did not have a license to sell

14:13:59  8   firearms, yet, in a two-year period he, sold 45 guns.

14:14:06  9              You'll hear defendant Arao also does not have

14:14:09  10  a license to engage in the business of dealing in firearms as

14:14:13  11  an individual, yet in that same two-year period, defendant

14:14:18  12  Arao sold 41 guns.

14:14:27  13             At the end of this trial you'll be asked a

14:14:34  14  straightforward question:  Did the defendant engage in the

14:14:38  15  business of dealing without a license, that they agreed to

14:14:40  16  commit that crime together, and that they know what they were

14:14:43  17  doing was against the law.

14:14:48  18             During the course of the trial, you'll hear

14:14:51  19  certain terms.  Off-roster firearms is one of those terms.

14:14:58  20  To understand why defendants were able to illegally sell guns

14:15:01  21  the way they did, and why they were able to make money by

14:15:05  22  doing that, you have to understand some basic concepts about

14:15:09  23  these terms, and I'll walk you through.

14:15:12  24             Now, when it comes to the general public,

14:15:14  25  there are special types of guns called off-roster firearms

UNITED STATES DISTRICT COURT

| | |
|---|---|
| 14:15:19 | 1 |
| 14:15:27 | 2 |
| 14:15:34 | 3 |

14:15:19  1  that FFL cannot sell to the general public.  We'll learn that

14:15:27  2  the Colt .38 Super pistol is one such off-roster firearm, a

14:15:34  3  handgun.

14:15:34  4        Now, an FFL can sell these types of guns to

14:15:40  5  law enforcement officers, like defendant Fernandez and

14:15:45  6  defendant Arao, to be used in the discharge of their official

14:15:49  7  duty.

14:15:50  8        Second, you'll learn about a term called

14:15:53  9  private party transfer.  Now, as a police officer, buying an

14:15:59  10  off-roster gun from a licensed dealer, and three years later

14:16:04  11  wants to get rid of it and get a new model, that police

14:16:09  12  officer can do that through private party transfer, and sell

14:16:12  13  that gun to a member of the general public.

14:16:16  14        This case is about illegally dealing in

14:16:20  15  firearms repeatedly.  This is not a case about an occasional

14:16:25  16  sale, about the sale of a -- through a private party transfer

14:16:31  17  on just a handful of occasions.

14:16:35  18        This case is about these defendants selling

14:16:39  19  86 guns together over the course of just two years.  They are

14:16:43  20  charged because they behaved like a business, like an FFL,

14:16:48  21  without having a license to engage in that conduct.

14:16:55  22        This case is also about law enforcement

14:16:58  23  officers exploiting their special privileges to circumvent

14:17:04  24  the law.  Their law enforcement status gave them an edge in

14:17:11  25  this business.  You will hear that the defendants controlled

14:17:14    1    two pieces of this supply chain.  Defendant Arao was the CEO

14:17:18    2    of a business entity called Ronin Tactical Group, a

14:17:23    3    corporation.  Ronin Tactical had a license to deal in

14:17:28    4    firearms.  It was an FFL.

14:17:32    5            The FFL could buy off-roster firearms.  It

14:17:37    6    could buy firearms in bulk from distributors and wholesalers,

14:17:42    7    and they could get them in good prices.  What these

14:17:47    8    defendants did is, buy off-roster firearms using their

14:17:51    9    special privilege as law enforcement from businesses like

14:17:54    10   Ronin Tactical and other FFLs.  They then resold those

14:17:59    11   firearms to other people.

14:18:08    12           You'll hear from one witness during the

14:18:11    13   course of this trial who bought a Colt .38 Super firearm from

14:18:14    14   the two defendants.  This buyer paid $1600 for one gun.

14:18:22    15   You'll see a receipt showing that the defendant Arao through

14:18:26    16   Ronin Tactical bought that very same gun just a month earlier

14:18:28    17   for $800.  A 100 percent markup.  You'll hear this was a very

14:18:35    18   profitable business, an illegal business.

14:18:40    19           Now, during the course of the trial, you'll

14:18:42    20   also hear about something called the ATF Form 4473.

14:18:48    21   Witnesses will explain to you that a buyer must complete this

14:18:51    22   form every single time when you buy a gun.  You'll hear that

14:18:57    23   the Form 4473 is a record that the FFLs have to maintain.

14:19:04    24           Again, the fundamental concept is that FFLs

14:19:07    25   and these regulations are there to make sure guns don't get

14:19:11   1    into the hands of the wrong people.

14:19:15   2                   The top section of this form, Section A,

14:19:19   3    lists the information of the buyer.  It then asks the buyer a

14:19:26   4    series of very clear and very explicit questions that we will

14:19:31   5    go during the trial meant to ensure the legitimacy of the

14:19:36   6    sale, including what's highlighted here Question 11A:  Are

14:19:44   7    you the actual transferee/buyer of the firearm listed on this

14:19:50   8    form?  Warning:  You are not the actual buyer if you are

14:19:54   9    acquiring the firearm on behalf of another person."

14:19:58   10                  On the next page of the form, the buyer has

14:20:01   11   to certify.  "I certify that my answers to Section A are

14:20:06   12   true, correct and complete.  I understand that answering

14:20:10   13   'yes' to Question 11A, if I am not the actual buyer, is a

14:20:16   14   crime punishable as a felony under federal law."

14:20:24   15                  Before signing the certification, the buyer

14:20:25   16   is also warned:  "I further understand that the repetitive

14:20:30   17   purchase of firearms for the purpose of resale for livelihood

14:20:35   18   and profit without a federal firearms license is a violation

14:20:40   19   of law."

14:20:43   20                  Defendant Fernandez had to sign this form

14:20:46   21   every time he bought a gun.  During the course of this trial

14:20:51   22   you'll hear about 45 guns that he bought and then resold to

14:20:56   23   other people.

14:21:00   24                  Defendant Arao also filled out this form

14:21:03   25   every time he bought a gun.  He too was asked Question 11A.

| | | |
|---|---|---|
| 14:21:12 | 1 | **MR. ROBINSON:**  Your Honor, may I ask the Court -- |
| 14:21:15 | 2 | If I may object to that reference in the |
| 14:21:20 | 3 | opening statement and ask the Court to instruct this jury |
| 14:21:20 | 4 | that Mr. Arao is not charged with false statements in this |
| 14:21:25 | 5 | case. |
| 14:21:26 | 6 | **THE COURT:**  Yeah.  And again, just to emphasize |
| 14:21:29 | 7 | what has already been said, arguments and statements of |
| 14:21:32 | 8 | counsel is not evidence. |
| 14:21:34 | 9 | **MS. DRAGALIN:**  Ladies and gentlemen, the evidence |
| 14:21:37 | 10 | will show that defendant Arao bought 41 guns, all of them |
| 14:21:43 | 11 | were Colt .38 Super handgun, an off-roster firearm. |
| 14:21:49 | 12 | On this form defendant Arao represented every |
| 14:21:52 | 13 | single time that he was buying that off-roster gun for |
| 14:21:56 | 14 | himself.  The evidence will show that he did not buy these |
| 14:22:00 | 15 | guns for himself, he bought them so he could resell them to |
| 14:22:04 | 16 | other people for a profit, to people who could not walk into |
| 14:22:07 | 17 | a store to buy the guns because they did not have the law |
| 14:22:12 | 18 | enforcement badge or privilege. |
| 14:22:15 | 19 | Now, on the next page of this form, in |
| 14:22:20 | 20 | Section C, you'll learn during the course of this trial that |
| 14:22:24 | 21 | in California there is a ten-day waiting period between when |
| 14:22:29 | 22 | you first fill out the form to buy a gun and when you come |
| 14:22:33 | 23 | back to pick up the gun from the licensed dealer. |
| 14:22:35 | 24 | When you come back to pick up the guns, you |
| 14:22:38 | 25 | again have to certify:  "I certify that my answers to the |

14:22:42  1   questions in Section A of this form are still true, correct

14:22:45  2   and complete."

14:22:47  3              You'll see evidence during this trial that on

14:22:51  4   this very date that defendant Arao signed this form, May 14,

14:22:55  5   2016, he resold this gun, this very same gun to another

14:22:59  6   person.

14:23:04  7              Now, the evidence will show that the

14:23:06  8   defendants ran an illegal business together.  They got

14:23:11  9   customers by advertising and marketing on Instagram.

14:23:17  10             Defendant Fernandez had an Instagram account

14:23:20  11  called the.38Superman, the .38 Super referred to the caliber

14:23:25  12  of the handgun that he often sold, the Colt .38 Super

14:23:32  13  off-roster firearm.

14:23:33  14             Defendant Fernandez had a brand, the.38Super.

14:23:38  15  He had a logo.  You will learn during this trial that this

14:23:42  16  phrase means:  "Hide your gun.  There is a check point."

14:23:46  17  Defendant Fernandez used it repeatedly to advertise guns.

14:23:51  18             Defendant Arao had an Instagram account

14:23:54  19  called RoninTacticalGroup.  He used that account to advertise

14:24:00  20  the guns on sale like you see on the example on the screen.

14:24:03  21  And like an example on the screen, the two defendants often

14:24:08  22  promoted each other on Instagram.

14:24:11  23             There is another example, defendant Arao

14:24:13  24  posted:  "Just a few of the .38 Supers in our collection, all

14:24:18  25  available in California via party private transfer."

14:24:22  1            You'll hear evidence that the defendants

14:24:24  2   marketed their product together at gun shows, like the

14:24:28  3   photograph on the screen, the .38 Superman and Ronin

14:24:32  4   Tactical.  "Follow us on Instagram.  That same logo."

14:24:38  5            The defendant had special marketing

14:24:42  6   merchandise available at gun shows:  T-shirts, hats, all with

14:24:49  7   the .38Superman logo.

14:24:52  8            Ladies and gentlemen, the defendants's

14:24:57  9   actions in their own words will show that they were engaged

14:25:00  10  in the business of dealing in firearms without a license, and

14:25:03  11  that they knew that their conduct was against the law.

14:25:08  12            Now, as the Court mentioned, defendant

14:25:11  13  Fernandez is charged with additional crimes.

14:25:16  14            During this trial you'll hear from a witness

14:25:19  15  named Pelayo.  He will tell you that he met defendant

14:25:24  16  Fernandez through family friends.  In February 2016, Pelayo

14:25:29  17  attempted to buy a gun from a store but was denied because he

14:25:34  18  was prohibited from buying guns.  Over the course of the next

14:25:37  19  several months, he began talking to defendant Fernandez about

14:25:41  20  buying guns.

14:25:42  21            You'll hear testimony that Pelayo told

14:25:46  22  defendant Fernandez he was prohibited from guns; yet, on July

14:25:52  23  24, 2016, defendant Fernandez sold guns to Pelayo.

14:25:58  24            You will hear that Form 4473 was completed by

14:26:03  25  Pelayo's girlfriend and not Pelayo to conceal his

```
14:26:09  1    involvement.  You will hear that Pelayo was present for the
14:26:12  2    gun sale, and that Pelayo gave cash and a bank transfer to
14:26:17  3    defendant Fernandez as payment for the guns.
14:26:22  4                 For this conduct the defendant Fernandez is
14:26:25  5    charged with aiding and abetting, in other words helping,
14:26:28  6    Pelayo and his girlfriend make false statements on the Form
14:26:32  7    4473.
14:26:33  8                 Lastly, you'll hear that one of the customers
14:26:38  9    that defendant Fernandez dealt with was Oscar Camacho Jr.
14:26:44  10   The evidence will show that Camacho Jr. was a convicted felon
14:26:49  11   prohibited from possessing guns, prohibited from buying guns.
14:26:55  12                 Over the course of about 14 months, defendant
14:26:58  13   Fernandez negotiated and arranged the sale of ten guns with
14:27:05  14   Camacho Jr.  They talked on the phone, they talked on
14:27:10  15   Instagram, they talked in text messages.  You'll see that
14:27:15  16   evidence during the course of this trial.
14:27:17  17                 Camacho Jr. lived in northern California, but
14:27:21  18   he came down to Los Angeles on multiple separate occasions
14:27:25  19   just to buy off-roster firearms from defendant Fernandez.
14:27:29  20                 And every single time Camacho Jr. had to
14:27:32  21   bring a family member with him to falsify the Form 4473.  Ten
14:27:38  22   guns, and every single time Camacho, Jr.'s brother or father
14:27:44  23   had to falsify and sign the Form 4473 because Camacho Jr. was
14:27:50  24   a convicted felon who could not buy guns.
14:27:53  25                 The evidence will show that defendant knew
```

14:27:56  1    that these guns were actually for Camacho Jr.

14:28:02  2              For this conduct, defendant Fernandez is

14:28:04  3    charged with conspiracy to sell firearms to a felon and to

14:28:08  4    make false statements on the Form 4473.

14:28:15  5              Lastly, on July 29, 2019, defendant Fernandez

14:28:21  6    arranged the sale of this 10th gun to Camacho, Jr.  The

14:28:27  7    evidence will show that both defendant Fernandez and Camacho,

14:28:31  8    Jr. were there for the gun transactions.  Like before,

14:28:36  9    Camacho, Jr.'s father had to falsify the Form 4473 to buy the

14:28:41  10   gun for Camacho Jr.

14:28:44  11             For that conduct, defendant Fernandez is

14:28:48  12   charged with one count of selling or otherwise disposing of

14:28:52  13   firearm to a felon and one county of aiding and abetting, the

14:28:56  14   making of false statements, in the Form 4473 during the

14:29:00  15   purchase of a firearm.

14:29:03  16             Ladies and gentlemen, as you listen to the

14:29:07  17   evidence, the witnesses, the exhibits during the course of

14:29:10  18   this trial, pay attention to the defendants' own words, their

14:29:16  19   acknowledgement and representation on forms that they were

14:29:19  20   required to signed by law, their statements on Instagram, in

14:29:24  21   e-mails, in text messages.

14:29:27  22             The defendants' own words and their actions

14:29:31  23   will give you insight into their knowledge and their intent.

14:29:36  24             And as you consider the evidence during the

14:29:38  25   course of this trial, keep in mind that these defendants were

14:29:42  1    police officers.  Their job was to uphold the law.  Their job

14:29:51  2    was to keep communities safe.

14:29:53  3             At the conclusion of this trial the

14:29:56  4    government will ask you to return the only verdict consistent

14:30:00  5    with the evidence, guilty on all counts.

14:30:06  6             **THE COURT:**  Thank you Ms. Dragalin.

14:30:08  7             **MR. ROBINSON:**  May I have one moment?

14:30:10  8             **THE COURT:**  Yes.

14:30:11  9             **MR. ROBINSON:**  Your Honor, if I might, if I may

14:30:14 10    open first for Mr. Arao.

14:30:16 11             **THE COURT:**  Yes, please.

14:30:22 12             (Opening statements by Mr. Robinson)

14:30:26 13             **MR. ROBINSON:**  Good afternoon, ladies and

14:30:28 14    gentlemen.  As I told you when I introduced myself, my name

14:30:30 15    is Ed Robinson.  I'm here with Lisa Houle and Rachel

14:30:37 16    Robinson.  It is our honor to represent Officer Eddie Arao.

14:30:42 17             You heard the charges in this case summarized

14:30:44 18    by the Court that Officer Arao is charged in this indictment

14:30:48 19    only with dealing without a license.  That's the object of

14:30:51 20    the conspiracy charge that he's facing and as the, we call

14:30:56 21    them the substantive charges that he's facing.

14:31:01 22             Now, Mr. Fernandez, he's facing a different

14:31:03 23    set of charges.  You'll be instructed and told you cannot

14:31:06 24    consider those charges and the evidence against Mr. Fernandez

14:31:10 25    against Mr. Arao.  It is important, as you promised that you

14:31:14   1   would, to abide by your obligation to be able to separate

14:31:18   2   what you will hear.

14:31:20   3            So, what is an opening statement?  It's not

14:31:24   4   evidence.  Judge Otero told you that.  But it's a road map so

14:31:28   5   that you can see what we expect the evidence to show.  And

14:31:32   6   what we expect the evidence to show in this case has to be

14:31:36   7   looked at against the government's burden of proof.  You have

14:31:40   8   to prove every element beyond a reasonable doubt.

14:31:43   9            In this case with respect to the charges that

14:31:47   10  Officer Arao is facing, the government must prove beyond a

14:31:50   11  reasonable doubt that he acted willfully.

14:31:54   12           And what "willfully" means, and you'll be

14:31:56   13  instructed on the law, it means at a minimum that he knew he

14:31:59   14  was violating the law, and that has to be proven beyond a

14:32:03   15  reasonable doubt.

14:32:04   16           So, who is Officer Arao?  Well, Officer Arao

14:32:08   17  has been an officer with the Gardena police department for 17

14:32:12   18  years.  The evidence will establish that he's a good man.

14:32:15   19  He's a father of two young children, and he has dedicated his

14:32:19   20  life to protecting and serving you and me.

14:32:22   21           And so how did we end up in a criminal court?

14:32:26   22  Well, the government in an opening statement told you, and

14:32:30   23  they will show you that Officer Arao sold these .38 Super

14:32:38   24  handguns, and he did it through a corporation called Ronin

14:32:45   25  Tactical that he's set up in complete compliance with state,

14:32:49   1   federal and local laws.  There is nothing about -- that you

14:32:52   2   will hear, that even exists -- that there is anything wrong

14:32:56   3   with the manner in which Ronin Tactical, this firearms

14:33:00   4   business, was set up.

14:33:01   5              Officer Arao did what he had to do to follow

14:33:05   6   the law, you will hear.  He went out and he got a federal

14:33:10   7   firearm license for Ronin Tactical.  Now, he doesn't have an

14:33:16   8   individual FFL, that's shorthand for Federal Firearms

14:33:21   9   License, but Ronin Tactical did.

14:33:25   10             And so, in California, there are rules that

14:33:28   11   govern the manner in which firearms are sold, and Judge Otero

14:33:32   12   spoke very eloquently about how our system is one of many

14:33:38   13   different laws with different sovereignties.  Different

14:33:41   14   governments, we've got the federal government, the state

14:33:43   15   government and the local government.

14:33:44   16             The State of California regulates, rightfully

14:33:47   17   so, the manner in which firearms are sold as does the federal

14:33:54   18   government.  In California a .38 Super is deemed to be

14:33:58   19   off-roster, and you'll hear why it's off-roster, didn't pass

14:34:02   20   in functionality tests, didn't pass what's called the drop

14:34:08   21   test, and didn't pass -- the manufacturer didn't pay the

14:34:12   22   required fees which are hefty in order to sell, allow federal

14:34:17   23   firearm license holder to sell these off-roster handguns.

14:34:21   24   You'll see pictures of the guns, and the guns, in many

14:34:23   25   respects, they will speak for themselves.

| | | |
|---|---|---|
| 14:34:25 | 1 | But California has laws with respect to who |
| 14:34:37 | 2 | can purchase an off-roster firearms, and in this case, it's |
| 14:34:40 | 3 | certainly not a privilege, it's a law, a police officer can |
| 14:34:44 | 4 | possess and purchase an off-roster handgun for use in his |
| 14:34:49 | 5 | official duties. |
| 14:34:51 | 6 | Now, when the evidence is presented to you, |
| 14:34:53 | 7 | you will hear that there is tension between the fact that an |
| 14:34:58 | 8 | officer in the State of California can lawfully purchase an |
| 14:35:03 | 9 | off-roster handgun.  If you're not an officer, if you don't |
| 14:35:14 | 10 | fit in one of the exceptions, then you can't -- an FFL can't |
| 14:35:16 | 11 | sell you that handgun. |
| 14:35:17 | 12 | And so, where this case becomes tricky and |
| 14:35:19 | 13 | where the evidence will cause you to have to deliberate on |
| 14:35:20 | 14 | whether or not the prosecution has proven wilfulness is how |
| 14:35:24 | 15 | Mr. Arao sold these .38 Supers, these handguns to the public. |
| 14:35:29 | 16 | And what Officer Arao did, and you will see |
| 14:35:33 | 17 | this and you will hear about the way in which he sold these |
| 14:35:37 | 18 | .38 Supers to the public is through what is called a private |
| 14:35:41 | 19 | party transfer law.  It's not a suggestion.  It certainly is |
| 14:35:46 | 20 | not a privilege.  It's the law in the State of California on |
| 14:35:50 | 21 | how this type of handgun can be transferred. |
| 14:35:56 | 22 | And so we'll call it PPT again for |
| 14:36:00 | 23 | expediency's sake, but under this private party transfer law, |
| 14:36:07 | 24 | an officer, you, me, anyone who's qualified to do so, can |
| 14:36:11 | 25 | transfer the handgun to another person, and we do not need an |

14:36:16   1    FFL.

14:36:20   2          And so when Officer Arao was working for the

14:36:25   3    Gardena Police Department, he received permission from his

14:36:30   4    chief to also -- excuse me, I've got a bit of a cold -- to

14:36:36   5    also work an Ronin Tactical, his FFL, handgun -- firearms

14:36:44   6    business, for one reason because Officer Arao was servicing

14:36:49   7    primarily law enforcement officers.

14:36:51   8          And so Officer Arao was getting these

14:36:58   9    handguns from Ronin Tactical, the FFL, under the police

14:37:04   10   officer law, the exception; and then, as he believed, he was

14:37:09   11   then lawfully selling these guns under the private party

14:37:13   12   transfer law in California.

14:37:15   13          Now, Ms. Dragalin said that the reason we

14:37:20   14   have so much regulation in firearms, both state and federal

14:37:23   15   is because -- it's obvious, I think it's right -- we want to

14:37:28   16   make sure that guns don't get into the hands of the wrong

14:37:30   17   people.

14:37:32   18          Well, remember, Officer Arao isn't charged

14:37:36   19   with selling to a prohibited person.  He's not charged with

14:37:42   20   lying on any form, particularly the federal Form 4473.  And

14:37:48   21   so, what Officer Arao did, and you will see this for

14:37:53   22   yourself, Officer Arao filled out every single proper federal

14:38:01   23   and California form to make sure that the handgun that he was

14:38:09   24   lawfully transferring in this private party transfer did not

14:38:13   25   get into the hands of the wrong person.

14:38:17  1          And it was only after the California

14:38:19  2   Department of Justice during this waiting period came back

14:38:24  3   and said:  The person that you're transferring this handgun

14:38:28  4   to is safe, not prohibited, not a drug addict, not living in

14:38:36  5   California, not -- doesn't have proper citizenship status.

14:38:40  6   Only after -- and you will hear this -- after the California

14:38:43  7   Department of Justice blessed this transfer to make sure that

14:38:48  8   the gun did not end up in the hands of the wrong person did

14:38:53  9   that transfer take place.

14:38:57  10          So, again, the evidence will show that

14:39:02  11   Officer Arao believed that he was following the law, because

14:39:05  12   under California law he was.

14:39:11  13          You will see from the way in which Officer

14:39:14  14   Arao speaks out of his own mouth that he did not know or

14:39:20  15   believe that he was violating the federal law or any law for

14:39:27  16   that matter.

14:39:29  17          So, and so when I stand up here at the end of

14:39:32  18   this case and make my closing statement to you, I will ask

14:39:35  19   you to please look at who Mr. -- Officer Arao is.

14:39:39  20          Please listen to what he said and the way

14:39:42  21   that he said it, and look at the way in which this

14:39:45  22   investigation took place, and my firm belief is that after

14:39:50  23   you hear and after you see this evidence, you'll realize the

14:39:54  24   government cannot prove beyond a reasonable doubt that

14:39:57  25   Officer Arao acted wilfully.  And for that reason, we'll ask

| | | |
|---|---|---|
| 14:40:01 | 1 | you to return the only verdict, and that's one of not guilty. |
| 14:40:04 | 2 | Thank you. |
| 14:40:05 | 3 | Thank you, Your Honor. |
| 14:40:06 | 4 | THE COURT:  Thank you, Mr. Robinson. |
| 14:40:08 | 5 | Mr. Rodriguez? |
| 14:40:10 | 6 | MR. RODRIGUEZ:  Your Honor, I'd like to reserve my |
| 14:40:15 | 7 | opening statements. |
| 14:40:15 | 8 | THE COURT:  Please.  So, Mr. Rodriguez has elected |
| 14:40:17 | 9 | to reserve his opening statement, and now my I have |
| 14:40:22 | 10 | government back at the counsel table, please. |
| 14:40:43 | 11 | Now, we go to the evidence portion of the |
| 14:40:45 | 12 | case. |
| 14:40:45 | 13 | The government may call their first witness, |
| 14:40:47 | 14 | please. |
| 14:40:48 | 15 | MS. DRAGALIN:  Yes, Your Honor, the government |
| 14:40:50 | 16 | calls Raul Cervantes Corona. |
| 14:41:40 | 17 | COURT CLERK:  Raise your right hand to be sworn. |
| 14:41:43 | 18 | Sir. |
| 14:41:43 | 19 | Do you swear or affirm that the testimony |
| 14:41:43 | 20 | you're about to give in the case now before this Court will |
| 14:41:43 | 21 | be the truth, the whole truth and nothing but the truth, so |
| 14:41:50 | 22 | help you God. |
| 14:41:50 | 23 | THE WITNESS:  Yes is it. |
| 14:41:51 | 24 | COURT CLERK:  Thank you, would you please be |
| 14:41:53 | 25 | seated. |

```
1                      C E R T I F I C A T E

2      I hereby certify that the foregoing is a true and correct

3      transcript of the stenographically recorded proceedings in

4      the above matter.

5      Fees charged for this transcript, less any circuit fee

6      reduction and/or deposit, are in conformance with the

7      regulations of the judicial conference of the united states.

8

9

10     /S/Anne Kielwasser
       _____        _11/22/2019_
11     Anne Kielwasser, CSR, RPR              Date
       Official Court Reporter
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```