**EDWARD M. ROBINSON (CA Bar 126244)**
Rachael A. Robinson (CA Bar 313991)
Lisa Houlé (CA Bar 207303)
    21515 Hawthorne Blvd, Suite 730
    Torrance, CA 90503
    Office: (310) 316-9333
    Facsimile: (310) 316-6442
    eroblaw@gmail.com

Attorneys for Defendant
*Edward Yasushiro Arao*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>EDWARD YASUSHIRO ARAO, et al.,<br><br>        Defendant. | Case No. 18-CR-00121-SJO-2<br><br>**REPLY TO GOVERNMENT'S OPPOSITION TO MOTION FOR A JUDGMENT OF ACQUITTAL OR ALTERNATIVELY NEW TRIAL**<br><br>Hearing Date: January 13, 2020<br>Hearing Time: 10:00 a.m.<br><br>Courtroom of the<br>Honorable S. James Otero |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

   I.   The Evidence Against Mr. Arao was Insufficient to Warrant a Conviction ........ 2

   II.   The Government's Actions Rise to the Level of Misconduct ............................. 5

      A.   The Government's Questioning of Agent Hart Demonstrates its Pattern of Misconduct ................................................................................................ 5

      B.   The Government's Rebuttal Argument was Misconduct ............................... 7

   III.   This Misconduct Warrants Dismissal, or Alternatively, New Trial .................... 9

CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Bryan v. United States*,
    524 U.S. 184 (1998) ................................................................................. 2, 7

*Cheek v. United States*,
    498 U.S. 192 (1991) ........................................................................................ 4

*Donnelly v. DeChristoforo*,
    416 U.S. 637 (1974) ........................................................................................ 8

*United States v. Carpenter*,
    494 F.3d 13 (1st Cir. 2007) ....................................................................... 9, 10

*United States v. Hernandez*,
    109 F.3d 1450 (9th Cir. 1997) ....................................................................... 10

*United States v. Weatherspoon*,
    410 F.3d 1142 (9th Cir. 2005) ......................................................................... 9

**Statutes**

18 U.S.C. § 922 ....................................................................................................... 4

18 U.S.C. § 924 ....................................................................................................... 2

# INTRODUCTION

In its opposition to Mr. Arao's motion for new trial, the government continues its pattern of over-aggression and misrepresentation. In response to Mr. Arao's sufficiency argument, the government impermissibly conflates the use of the term "straw purchases" with dealing, claims that Mr. Arao is "disingenuous" for highlighting the fact that the government did not prove that he understood the scope of his FFL seemingly because his counsel post-indictment and post-conviction understands the legal scope, and provides no meaningful argument or clarification for ATF's understanding of the law.

In response to Mr. Arao's arguments that the government committed misconduct, the government seeks to relitigate the merits of its impermissible arguments to which each and every defense objection was sustained by the Court; disingenuously claims that its rebuttal argument was "fair comment" unbelievably based on unexpected argument by defense counsel in closing, when throughout this entire case through pretrial litigation, opening statement, cross-examination, and closing argument, the government was on notice that the only issue was Mr. Arao's willfulness; and rewrites the meaning and purpose of its clearly impermissible "liquor store" analogy. After the Court's sustaining defense counsel's objections to the government's impermissible rebuttal argument the government asked the Court to revisit its rulings, it did not. In fact, the Court noted that, while denying Mr. Arao's motion for mistrial, "there has been aggressive prosecution on the part of the government here during the course this trial, which I'm concerned about." (Govt. Exhibit C at 204.) Every argument the government now makes is after the fact and in the face of this Court's rulings, and corroborates the sandbagging which has denied Mr. Arao his constitutional right to fair trial.

Thus, for the following reasons, Mr. Arao respectfully requests that this court dismiss the case against him and enter a judgment of acquittal or alternatively grant Mr. Arao a new trial.

# ARGUMENT

## I. The Evidence Against Mr. Arao was Insufficient to Warrant a Conviction

The government's argument and reliance on *Bryan v. United States*, 524 U.S. 184 (1998) does not change the analysis in the present case. First, the question at issue in *Bryan* was whether the term "willfully" in 18 U.S.C. § 924(a)(1)(D) requires proof that a defendant knew of the federal licensing requirement. *Id*. at 186. While Mr. Arao maintains his position that the facts at issue here required the heightened "willfulness standard" (*see* proposed jury instruction), for purposes of this motion and sufficiency of the evidence, this is not at issue. Second, despite the government's claim that Mr. Arao does not and cannot distinguish his case from *Bryan*, (Opp. at 19,) the facts here regarding Mr. Arao's knowledge and willfulness are critically different than the facts at issue in *Bryan*. As the government itself points out in its opposition, in *Bryan*, the evidence proving guilt was as follows: (1) petitioner did not have a federal license to deal in firearms; (2) he used "straw purchasers" to acquire firearms he could not have purchased himself; and (3) he resold the guns on Brooklyn street corners known for drug dealing. (Opp. at 9; citing *Bryan*, 524 U.S. at 184.) The evidence here is nothing close to that: (1) Mr. Arao had Ronin Tactical, an FFL ("Arao was successful in obtaining a federal firearms license and in fact operated a federal firearms licensee ('FFL') business[.]" (Opp. at 10)), (2) Mr. Arao could and did personally and legally purchase the off-roster firearms, and (3) Mr. Arao legally resold the firearms from his FFL, Ronin Tactical, not at a street corner, and only did so after potential customers passed the legally requisite background checks.

This continued claim in the government's opposition that "straw purchases" proved willfulness because Mr. Arao answered "yes" to the question regarding whether or not he was "the actual buyer" is purely speculative and was precluded by this Court's rulings. This Court's rulings were based upon the government's recognition that the "straw purchase" evidence and the prohibited person evidence was limited to

Mr. Fernandez. That is why this case was bifurcated and why the government agreed to the Court's limiting instruction concerning the use of this evidence. It is unfair at this point to argue otherwise. Unlike the *charged* false statement/straw purchases for which Mr. Fernandez was convicted, where an individual purchased a firearm and then gave it to another individual who was not the registered owner of that firearm, with respect to Mr. Arao, he did purchase the firearms and he *was* the registered owner *until* he resold it to a new registered owner. In making the transfers, Mr. Arao held the firearm for the requisite time before transferring it to an individual who had cleared background checks and was the new registered owner. The use of the word "straw purchases" refers to the separate crime for which Mr. Arao was not charged.[1] To the extent that the government now argues that the quick turnaround in purchases and sales represents "straw purchases," that is incorrect. That is merely evidence of dealing to which Mr. Arao never contested and to which the government agreed to bifurcate its case. Again, to argue otherwise in light of this is fundamentally unfair.

Moreover, the ATF notice, introduced by the government, contradicts the government's claim that "Arao blatantly violated California law by abusing the law enforcement exemption to make money." (Opp. at 11.) Even ATF did not know whether or not this conduct was unlawful. (See Defense Exhibit A; Govt. Trial Exhibit 185; "In some instances, ATF has discovered officers who purchased more than 100 'off roster' firearms [Mr. Arao transferred 46 over a 2-year period] that were subsequently transferred to non-law enforcement individuals. Such transactions *potentially* constitute violations of federal firearms laws." (*Emphasis* supplied.)) If the

---

[1] Despite the government's claim, Mr. Arao has not "abandoned" his Rule 404(b) claim. (Opp. at 19, fn. 5.) This claim is another mischaracterization of Mr. Arao's position and an effort to retroactively fix that which cannot be fixed. The only argument that counsel for Mr. Arao made is that the government never complied with 404(b) notice with respect to "straw purchases," and why would it, when the government agreed to bifurcate this case and present the evidence in the way that it did. Had the issue been properly litigated, which it was not because the government never gave proper notice per 404(b), the instruction for this type of evidence would have informed this jury that they *could not* consider this substantive evidence of guilt but merely for its limited purpose.

3

government's own exhibits express doubt, it cannot be that the government proved beyond a reasonable doubt that Mr. Arao knew that he was violating the law.[2] More importantly, however, is ATF's statement that the government cannot dispute now that "a law enforcement official who regularly acquires 'off-roster' firearms and sells or disposes of them for a profit is engaging in the business as a dealer of firearms and must be licensed." (Defense Exhibit A; Govt. Trial Exhibit 185). The government's new claim that "if Arao had complied with the federal requirement of obtaining a personal federal firearms license, his conduct would have complied with 18 U.S.C. § 922(a)(1)(A)" is confusing and inaccurate. (Opp. at 13.) The government has the burden of proof on willfulness. "A good-faith misunderstanding of the law or a good-faith belief that one is not violating the law negates willfulness, whether or not the claimed belief or misunderstanding is objectively reasonable." *Cheek v. United States*, 498 U.S. 192 (1991). Yet here, the government, like the ATF, misunderstands the law. Why did the government ask the Court to take judicial notice of the California law if all Mr. Arao needed to do comply with 18 U.S.C. § 922(a)(1)(A) was obtain a personal FFL? If this were the case, the California laws would have no bearing on the analysis.

If this is truly what the government believes the state of the law is, it is unclear why Mr. Arao was ever prosecuted, as the government never presented any evidence to show that Mr. Arao had *any* reason to know that his Ronin Tactical FFL did not cover him personally. The government's claim that this argument is disingenuous is nonsensical. There is an obvious and clear difference between the government's ability, or lack thereof, to prove that Mr. Arao knew *at the time he was engaging in this conduct* that his FFL did not personally cover him and defense counsel's legal understanding *post-indictment and post-trial* that this may not be the case. (Opp. at 22,

---

[2] The government's recent claim that it did not rely on the memorandum is patently untrue. (Opp. at 12.) The memorandum was introduced as to both defendants and was presented to the jury on multiple occasions.

4

fn. 8.) Thus, when viewed in the light most favorable to the government, it seems that the government itself cannot even figure out what its narrative and argument is.

## II. The Government's Actions Rise to the Level of Misconduct

The government's opposition continues to misrepresent the facts and the evidence presented at trial. The government ignores three critical facts that drove this trial: (1) the government itself represented that it would bifurcate the trial to avoid confusion as Mr. Arao *was not charged* with straw purchases or sales to prohibited persons, (2) the parties agreed to this bifurcation based on the understanding that Mr. Arao *was not charged* with straw purchases or sales to prohibited persons, and (3) the court's limiting instructions – based on the government's representations and the parties' agreement – drove Mr. Arao's decision to hold the government to its burden of proof, not present a defense, and not testify. The government's justification for its conduct, that it was not legally required to bifurcate, further demonstrates the bad faith in its decision to make the arguments regarding straw purchases[3] and sales to prohibited persons in rebuttal after seemingly representing that it would not do so. (Opp. at 3.)

### A. The Government's Questioning of Agent Hart Demonstrates its Pattern of Misconduct

The government's selective use of transcripts in its opposition underscores both its improper method of proof as well as the intentional "sandbagging" used by the government in this case. At the start of Agent Hart's second round of testimony, which was part of the government's agreed upon bifurcated presentation and given under this Court's limiting instruction, the government announced to this Court, counsel, and most importantly to the jury, that Agent Hart's testimony was being offered for a limited purpose as against Mr. Fernandez. The fact that the government asked such an obviously objectionable question of Agent Hart, during this bifurcated portion of his

---

[3] The rebuttal reference to straw purchasers was so critically misleading because, as discussed above, there is a clear and significant difference between being the "actual purchaser" and then reselling the gun, as Mr. Arao did, and specifically purchasing the firearm for another individual but having the firearm remain in your name.

5

testimony, to which this Court immediately sustained the objection speaks volumes as to the government's aggression in this case.

The government's questioning of Agent Hart demonstrates its pattern of bad faith and disregard for its agreements with the parties and its representations to the Court. Mr. Arao *was not charged* with selling to prohibited persons or engaging in straw purchases. The court, based on the government's representations, instructed the jury that this portion Agent Hart's testimony was to be considered against Mr. Arao only "for the limited purpose of the two crimes charged" against him – conspiracy to deal and dealing in firearms. Despite this, the government impermissibly asked Agent Hart during his second portion of testimony to whom "el Chino" referred in a conversation between Mr. Fernandez and Mr. Camacho Jr., a prohibited person. Mr. Arao *was not charged* with this conduct. There was no legally relevant reason to even bring Mr. Arao up in the context of Mr. Fernandez's conversations with Camacho Jr.

In its opposition, the government ignores the fact that the Court admonished the government for presenting this evidence, instead implying that once the government had laid the foundation, the question would have been proper. (Opp. at 16.) This was not the Court's ruling. The government notably excludes this portion of trial transcript from its exhibit. Further, the government's claim now that "Arao's disdain should be directed toward his own business partner and co-conspirator for the use of this offensive term, not toward the government" merely perpetuates its assumption based on pure speculation that "el Chino" referred to Mr. Arao. (Opp. at 16.) Furthermore, the constitutional problem, as raised in Mr. Arao's motion for mistrial, is that Mr. Arao could not call Mr. Fernandez to the stand and cross-examine him as to who "el Chino" actually was or what was meant by Fernandez's statement. The government's use of the word "disdain" is completely misplaced. This intentional effort to introduce this obviously inadmissible evidence at any time, but particularly when and how it attempted to do so was, again, grossly unfair to Mr. Arao.

### B. The Government's Rebuttal Argument was Misconduct

The government glosses over the fact that the Court sustained Mr. Arao's repeated objections to the government's arguments on rebuttal. Instead, the government now claims that its arguments, despite the Court's rulings, were proper. (Opp. at 18-23.) The government first claims it presented evidence of "straw purchases" against Mr. Arao through the evidence that Mr. Arao bought and sold the firearms with a quick turnaround.[4] (Opp. at 20.) As discussed above, while evidence of dealing, this conduct is *not* the same as the straw purchases and prohibited persons sales to which government analogized with the "liquor store" analogy nor is this the same as the reference to "straw purchases" which dominated the trial – Mr. Fernandez's sales to individuals who he knew were not the true buyer.

With respect to the "liquor store" analogy, the government now claims that the analogy "involved a less prejudicial scenario" and more accessible example of merely purchasing and reselling, not necessarily to prohibited persons, and was therefore fine. (Op. at 23.) The government cannot now explain new meaning into this analogy. In the analogy provided to the jury, the government used the example of selling alcohol to underage teenagers – people who are legally prohibited from possessing alcohol. This argument was harmful, not based in fact, and *clearly* and impermissibly implied that Mr. Arao was purchasing firearms for people who were legally prohibited from possessing those firearms, yet each firearm that Mr. Arao sold was to an individual who was legally permitted to possess that firearm, had passed all requisite background checks, and had been reported to the requisite state and federal agencies *by Mr. Arao* as the new owner. Had the government truly intended to provide a "more accessible"

---

[4] The government also claims that Mr. Arao ignores *Bryan v. United States*, 524 U.S. 184, 189 (1998) in his motion. As discussed above, the facts of *Bryan* are critically different from the facts here. most importantly, with respect to straw purchases, in *Bryan*, the defendant "used so-called 'straw purchasers' … to acquire pistols that he could not have purchased himself." Mr. Arao did not engage in this conduct. Moreover, the petition in *Bryan* did not make a 404(b) argument and did not challenge the introduction of the straw purchases against him. Therefore, the Supreme Court did not even address the issue.

analogy, there is a clear one: an adult over the age of 21 legally purchases alcohol and subsequently gives or sells that alcohol to another adult over the age of 21 who does not have their identification with them but is legally permitted to possess alcohol. In this analogy, which still oversimplifies the facts, both parties are legally permitted to possess alcohol just as all purchasers to whom Mr. Arao sold firearms were legally permitted to purchase and possess those firearms. The government's new explanation for its analogy does not change its import and is misleading.

It is extraordinary that the government here asks this Court to "not lightly infer that [the] prosecutor intends an ambiguous remark to have its most damaging meaning." (Opp. at 23, citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974).) The government's arguments on rebuttal were not ambiguous. The government specifically mentioned prohibited persons in its liquor store analogy (*See* Govt. Exhibit C at 195) and argued that Mr. Arao's lawful conduct was done to "cover [his] tracks." (Govt. Exhibit C at 192-93.) The government seems to think that while a Court should not lightly infer malignant intent into its conduct, the government can do so when it comes to a criminal defendant, as this is exactly what the government did here. The government's argument that Mr. Arao's compliance with the law – filling out *all* legally required paperwork, including paperwork reflecting his purchases, sales, and transfers on the precise dates that they occurred and only transferring a firearm to a purchaser after the purchaser had cleared all background checks and waited the legally required 10-days – was "a means of avoiding detection." (Opp. at 6.) Absolutely nothing about this conduct by Mr. Arao was unlawful and the government presented no evidence that it was done to avoid detection. The government has not and cannot point to anything to prove otherwise. In fact, nearly the entirety of the government's case against Mr. Arao came from the paperwork which Mr. Arao filed himself with both state and federal authorities. Worse, the government saved this argument until rebuttal, having never made it in opening statement, asked any witness about it, or argued it in

8

closing. It is chilling that the government would take purely legal activity and import some evil motive behind it with absolutely no opportunity for a defendant to respond.

The government further claims in its opposition that its arguments in rebuttal were "fair comment." (Opp. at 24.) The notion that the government's rebuttal arguments were in response to Mr. Arao "opening the door" through his focus on willfulness in closing is disingenuous at best. (*Id*.) The issue of willfulness, as the government well knew, was the only issue Mr. Arao was ever contesting. Mr. Arao's counsel explained this in opening statement (*See* Govt. Exhibit A at p.155, 157), it was the only issue counsel asked any witness about, and Mr. Arao's counsel repeatedly informed both the court and the government that he was *only* contesting willfulness. For the government to claim that it made these impermissible arguments only in rebuttal based on some unanticipated argument of willfulness in Mr. Arao's closing is clearly untrue and demonstrates a premeditated bad faith.

Moreover, the right to fair comment does not give the government the right to misrepresent the evidence and intentionally make arguments precluded by the Court. The Court repeatedly sustained Mr. Arao's objections to these arguments.

### III.  This Misconduct Warrants Dismissal, or Alternatively, New Trial

The government, after having spent nearly the entirety of its opposition arguing that its conduct was appropriate, claims that Mr. Arao cannot show prejudice because the Court sustained his objections and issued limiting instructions. The government ignores the factors expressed in *United States v. Carpenter*, 494 F.3d 13, 23 (1st Cir. 2007), which clearly state that that a Court must look beyond the limiting instructions to determine prejudice. The government ignores the fact that it repeatedly made improper arguments despite the Court's rulings. Even now it seeks to justify its arguments. *United States v. Weatherspoon*, 410 F.3d 1142, 1149 (9th Cir. 2005). The government ignores the timing of its argument, giving Mr. Arao no time to respond. *Carpenter*, 494 F.3d at 24 (noting that the impermissible arguments likely "remained vivid in the jurors' memories" given the late stage at which they came). The

government's bifurcation and Court's jury instruction seemingly allowed Mr. Arao to act in reliance on the government's position and Court ruling and not present a defense in response to claims of "straw purchases" or sales to prohibited persons. The government ignores the fact that the Court declined to give a curative instruction. *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997). And finally, the government ignores the fact that this Court recognized that this case was a "close call." *Carpenter*, 494 F.3d at 24 ("[b]ecause it cannot be said with confidence that the government's improper closing argument did not taint the verdict, the verdict cannot be allowed to stand.")

All of these ignored factors weigh in Mr. Arao's favor and warrant a dismissal or new trial.

## CONCLUSION

For the foregoing reasons, Mr. Arao respectfully requests that this Court dismiss the case against him. Alternatively, Mr. Arao respectfully requests that this Court grant is request for new trial.

Respectfully submitted,

DATED: December 19, 2019      By  */s/ Edward M. Robinson*
                                  Edward M. Robinson
                                  Rachael A. Robinson
                                  Lisa Houlé

                                  Attorneys for Defendant