**EDWARD M. ROBINSON (CA Bar 126244)**
Rachael A. Robinson (CA Bar 313991)
Lisa Houlé (CA Bar 207303)
    21515 Hawthorne Blvd, Suite 730
    Torrance, CA 90503
    Office:  (310) 316-9333
    Facsimile: (310) 316-6442
    eroblaw@gmail.com

Attorneys for Defendant
*Edward Yasushiro Arao*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-00121-SJO-2 |
|     Plaintiff, | |
| v. | **DEFENDANT'S SUPPLEMENTAL MOTION FOR JUDGMENT OF ACQUITTAL OR ALTERNATIVELY NEW TRIAL; FED. R. CRIM. PRO. RULES 29(c)(2), 33; EXHIBITS IN SUPPORT** |
| EDWARD YASUSHIRO ARAO, et al., | |
|     Defendant. | |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................... 2

I.   The Evidence Against Officer Fernandez, as Noted by the Court, Involved Conduct Much More Serious than that for which Officer Arao was Charged ...... 2

II. The Evidence Against Officer Fernandez was Manifestly Prejudicial to Officer Arao Given the Fact that Officer Arao was not charged with Making False Statements, "Straw Purchases," or Selling to Prohibited Persons .......................... 3

   A.   Legal Standard .................................................................................. 3

   B.   Given the Markedly Different Degrees of Culpability and the Distinct Difference between the Nature of the Charges Against Officer Fernandez and Officer Arao, and the Fact that Much of the Evidence Introduced Against Officer Fernandez Was Inadmissible Against Officer Arao, Officer Arao was Unconstitutionally Prejudiced and Joinder Deprived Him of his Right to Fair Trial ............................................................................................................ 4

CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

## Cases

*Davis v. United States*,
    369 A.2d 1254 (D.C. Cir. 1976).........................................................................4, 6, 8

*Schaffer v. United States*,
    362 U.S. 511 (1960) .....................................................................................................3

*United States v. Donaway*,
    447 F.2d 940 (9th Cir. 1971)...............................................................................5, 12

*United States v. Lewis*,
    787 F.2d 1318 (9th Cir 1986)......................................................................................3

*United States v. Satterfield*,
    548 F.2d 1341 (9th Cir. 1977).............................................................................4, 6, 9

*Zafiro v. United States*,
    506 U.S. 534 (1993) .......................................................................................... passim

## Statutes

18 U.S.C. 922 .................................................................................................................2, 5, 8

18 U.S.C. 924 ............................................................................................................................2

## Rule

Federal Rules of Criminal Procedure, Rule 14 .........................................................................3

Federal Rules of Criminal Procedure, Rule 8 ...........................................................................3

## Other Authority

Bordens & Horowitz, *Joinder of Criminal Offenses: A Review of the Legal and
    Psychological Literature*, 9 Law and Human Behavior 339 (1985)............................3

Tanford, Penrod & Collins, *Decision Making in Joined Criminal Trials: The Influence
    of Charge Similarity, Evidence Similarity, and Limiting Instructions*, 9 Law and
    Human Behavior 319 (1985)........................................................................................3

**INTRODUCTION**

On January 13, 2020, this Court heard argument on Officer Arao's motion for judgment of acquittal or, alternatively, motion for new trial. At that hearing the Court advised counsel that it had concerns regarding the "spillover effect" and the prejudice to Officer Arao in trying Officer Arao and Officer Fernandez together. The Court noted that the conduct for which Officer Fernandez was charged was much more serious than the conduct for which Officer Arao was charged. The Court acknowledged that Officer Arao had filed pretrial motions to dismiss and to sever based on the prejudice that would, and did, result from trying the two defendants together; and the Court noted that, in retrospect, perhaps that motion to sever should have been granted because the spillover of evidence presented against Officer Fernandez prejudiced Officer Arao. As such, the Court ordered supplemental briefing on this matter.

Officer Arao maintains his positions articulated in the initial motion for judgment of acquittal or motion for new trial. In addition to those arguments, Officer Arao now provides the Court with arguments in support of the position that the failure to sever Officer Arao's case from the case against Officer Fernandez, given the significant difference in conduct and culpability, deprived Officer Arao of his Fifth and Sixth Amendment rights to fair trial, his right that the government must prove guilt against him, based on evidence against only him, beyond a reasonable doubt, and his right to be convicted only for conduct with which he was charged and was supported by the evidence. Moreover, without severing Officer Arao's case from his more culpable co-defendant, his constitutional trial rights were further undermined by the devastating effect of improper and prejudicial evidence introduced against Officer Fernandez, for which Officer Arao was left with no recourse when counsel for Officer Fernandez failed to object.

**ARGUMENT**

## I.   The Evidence Against Officer Fernandez, as Noted by the Court, Involved Conduct Much More Serious than that for which Officer Arao was Charged

Officer Fernandez and Officer Arao were charged together in count one with conspiracy, the sole alleged object of which was to engage in the business of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A). Officer Fernandez was separately charged with transferring firearms to prohibited persons in violation of 18 U.S.C. § 922(d)(1) and selling firearms to straw purchasers in violation of 18 U.S.C. § 924(a)(1)(A). While not charged, evidence at trial also indicated that Officer Fernandez knowingly assisted in the unlawful transfer of firearms from the United States to Mexico. There was no such evidence introduced against Officer Arao. Officer Fernandez's charged conduct, and the proof at trial, demonstrated his flagrant disregard for the law, indifference to the very real safety concerns surrounding selling firearms, and affirmative actions to hide his conduct. Moreover, as the Court noted at the January 13, 2020 hearing, Officer Fernandez's conduct at trial in front of the jury underscored this indifference and lack of respect. In stark contrast, Officer Arao's conduct did not involve deceit or any effort to hide his sales; in fact, Officer Arao always followed the law, documented his sales, and waited the requisite 10-day DOJ waiting period before transferring a firearm. Moreover, as the Court recognized, Officer Arao, who was seated in a position less visible to the jury, demonstrated significant respect and understanding of the gravity of the situation he faced.

## II. The Evidence Against Officer Fernandez was Manifestly Prejudicial to Officer Arao Given the Fact that Officer Arao was not charged with Making False Statements, "Straw Purchases," or Selling to Prohibited Persons

### A. Legal Standard

Both Rule 8 and Rule 14 require severance if a defendant can show prejudice by joinder. *Schaffer v. United States*, 362 U.S. 511, 516 (1960). Specifically, Rule 14 states that "[i]f the joinder of offenses or defendants in an indictment … appears to prejudice a defendant … the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. Rules Crim. Pro. Rule 14(a). Where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," the Court should grant severance. *Zafiro v. United States*, 506 U.S. 534, 539 (1993). A joint trial poses a serious risk of prejudice "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Id*. "When … defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened." *Id*.

"Studies have shown that joinder of counts tends to prejudice jurors' perceptions of [a] defendant and of the strength of the evidence on both sides of the case." *United States v. Lewis*, 787 F.2d 1318, 1322 (9th Cir. 1986), *opinion amended on denial of reh'g*, 798 F.2d 1250 (9th Cir. 1986) *citing* Tanford, Penrod & Collins, *Decision Making in Joined Criminal Trials: The Influence of Charge Similarity, Evidence Similarity, and Limiting Instructions*, 9 Law and Human Behavior 319, 331–35 (1985); Bordens & Horowitz, *Joinder of Criminal Offenses: A Review of the Legal and Psychological Literature*, 9 Law and Human Behavior 339, 343, 347–51 (1985). More importantly, "[a] joint trial where one defendant is charged with offenses in which the other defendant did not participate, the detailed evidence introduced to establish guilt of

3

the separate offenses may shift the focus of the trial to the crimes of the single defendant. In such cases, codefendants run a high risk of being found guilty merely by association." *United States v. Satterfield*, 548 F.2d 1341, 1346 (9th Cir. 1977).

When a defendant is subjected to a likelihood of prejudice, misjoinder has occurred and trial as to each defendant should have been severed. *Davis v. United States*, 369 A.2d 1254, 1263 (D.C. Cir. 1976) ("prejudice to appellant was greatly increased since evidence of crimes neither charged against him nor related to him was introduced at his trial under circumstances that inevitably would lead the jury to consider him in fact a participant").

> B. <u>Given the Markedly Different Degrees of Culpability and the Distinct Difference between the Nature of the Charges Against Officer Fernandez and Officer Arao, and the Fact that Much of the Evidence Introduced Against Officer Fernandez Was Inadmissible Against Officer Arao, Officer Arao was Unconstitutionally Prejudiced and Joinder Deprived Him of his Right to Fair Trial</u>

There was a significant amount of evidence presented in this trial that was only admissible against Officer Fernandez and would not have been admitted had Officer Arao been tried separately. *See Zafiro*, 506 U.S. at 539. Moreover, this was clearly a complex case, specifically with respect to the state of the law and the government's ability, or lack thereof, to prove Officer Arao's willfulness beyond a reasonable doubt. *Id*. For these reasons, Officer Arao moved for severance pretrial and this Court recognized his standing objection to the unconstitutionally prejudicial effect that the introduction of evidence against Officer Fernandez had on Officer Arao. (*See, e.g.* Exhibit A at 14-16, 231.)

The spillover effect and prejudice to Officer Arao began with the government's opening statement and continued throughout the trial. From the start, the government told the jury that it would prove *both* "defendants' crimes through their own words in emails, Instagram posts, Instagram messages, text messaging." (Exhibit A at 144.) The

4

government again reminded the jury at the close of its opening statement "pay attention to [the defendants'] statements on Instagram, in emails, in text messages." (Exhibit A at 153.) The government's evidence of private Instagram posts and text messages involved *only* Officer Fernandez. The evidence showed that Officer Arao was not privy to these private messages. The spillover continued through closing, as addressed in Officer Arao's prior Motion for New Trial, where the government's analogies and argument that Officer Arao made some kind effort – not shown through evidence at trial – to hide his conduct clearly implied that the government has some reason – outside of the evidence presented at trial – to believe that Officer Arao knew that his sales facilitated placing firearms "in the hands of someone who shouldn't have it." (Exhibit E at 193.) The government also encouraged the jury, when considering how both defendants engaged in dealing, to look at "what *they're* saying in the public posts, and compare that to what Defendant Fernandez is saying behind the scenes in private messages with other individuals … that shows the consciousness of guilt."[1] (Exhibit E at 196.) These arguments by the government must be considered against the backdrop of the trial evidence, which focused extensively on Officer Fernandez's straw purchase activity and sales to prohibited persons.

As briefed and litigated throughout, the evidence of Officer Arao's understanding of the law and his willfulness in violating 18 U.S.C. § 922(a)(1)(A) was sparse at best. It was also the only issue that Officer Arao contested. Here, it was not only the "detailed evidence" introduced regarding Officer Fernandez's conduct with respect to the "straw purchases" and sales to prohibited person that prejudiced Officer Arao, but it was also Officer Fernandez's bad conduct with respect to the dealing which

---

[1] Officer Arao maintains his position that these arguments constituted prejudicial prosecutorial misconduct, whether intentional or otherwise. These arguments impermissibly and casually conflated Officer Fernandez's conduct with Officer Arao's and implied – based on sheer speculation *not* reasonable inference – that Officer Arao somehow hid his conduct because he knew that his firearms would end up in the hands of the wrong people. As the Ninth Circuit found in *United States v. Donaway*, 447 F.2d 940, 944 (9th Cir. 1971) the government may not use lawful activity as a basis for proving a violation of a federal statute.

5

impermissibly tainted Officer Arao and created the very real possibility that the jury found him "guilty merely by association." *Satterfield*, 548 F.2d at 1346.

The facts and analysis in *Satterfield* are instructive. At trial in *Satterfield*, the government focused most of the testimony on the conduct committed by just one of the co-defendants, and the evidence against that co-defendant was "exceptionally strong." 548 F.2d at 1346. The Ninth Circuit held that "although the trial court instructed the jury that evidence relating to [the separately charged conduct] concerned [the co-defendant] alone, in our view, the substantial proof of [co-defendant's] involvement [in these separate crimes] prejudiced [the appellant.]" *Id*. at 1347.

The prejudice to Officer Arao here is even more manifest than that suffered by the appellant in *Satterfield*. As briefed at length in the pretrial motions to dismiss or to sever, the duplicitous and confusing nature of the conspiracy count, in conjunction with the extensive evidence against Officer Fernandez for his conduct regarding straw purchases and sales to prohibited persons clearly created the significant risk that the jury found Officer Arao guilty by association despite the fact that there were "markedly different degrees of culpability." *Satterfield*, 548 F.2d at 1346; *see also Zafiro* 506 U.S. at 539. As with the appellant in *Davis*, "prejudice to [Officer Arao] was greatly increased since evidence of crimes neither charged against him nor related to him was introduced at his trial under circumstances that inevitably would lead the jury to consider him in fact a participant." 367 A.2d at 1263.

### a.    Special Agent Hart's Testimony

Some of the most prejudicial evidence admitted against Officer Fernandez, which inevitably spilled over to the jury's consideration of Officer Arao came from Special Agent Tolliver Hart's testimony. Had Officer Arao been tried alone, the jury would never have heard any evidence that Officer Arao transferred firearms which later ended up in the hands of a man convicted of two serious felonies, that Officer Fernandez knew that some of these firearms sold by Officer Arao may end up in Mexico, or that Officer Fernandez made crude and disrespectful comments about the

6

police force and his employment, because none of this evidence was relevant to the

dealing charge against Officer Arao. *Zafiro*, 506 U.S. at 539.

In the first portion of Agent Hart's bifurcated testimony, he testified about

Officer Fernandez's private messages explaining to individuals how "crooks" get

firearms through "a parent, old lady, wife, girlfriend, LOL, or anyone else." (Exhibit B

at 68.) Agent Hart also testified regarding Officer Fernandez's private messages where

he advises someone who cannot personally obtain the firearms to have his wife come

purchase the firearms for him when she turned 21. (Exhibit B at 74-75.) Further, Agent

Hart testified regarding Officer Fernandez's statements explaining to a buyer how, in

order to unlawfully obtain a firearm in Mexico, he would have to purchase the firearm

in the United States and then "what you do with it, I can't control that. LOL." (Exhibit

B at 77.) This is a mere sampling of the extensive testimony Agent Hart provided

regarding Officer Fernandez's private and separate unlawful conduct which the

indictment alleged constituted overt acts in furtherance of the conspiracy in count 1 and

could thus be used against Officer Arao.[2]

This testimony had no relevance to Officer Arao's conduct in dealing, yet it was

alleged as overt acts in furtherance of the count 1 conspiracy with the sole object of

dealing. The jury was told during trial that this conduct was an overt act in furtherance

of the conspiracy in which both Officer Fernandez and Officer Arao were charged.

(*See, e.g.* Exhibit B at 68.) As extensively briefed pretrial, this type of evidence was

highly prejudicial and misleading as it left the mistaken impression that Officer Arao

had knowledge he did not and, worse, that the jury could find Officer Arao guilty of

count 1 so long as it found that (1) Officer Arao had conducted business with Officer

Fernandez and, (2) separately, that Officer Fernandez had engaged in this conduct in

[2] It is for these reasons that Officer Arao maintains his position, articulated in his Motion to Dismiss, that the indictment was fatally defective and risked a jury verdict that was not unanimous or based on conduct for which Officer Arao was not charged.

furtherance of the charged conspiracy – and that it did not matter if Officer Arao knew about this conduct. *See Davis*, 367 A.2d at 1263.

In the second portion of Agent Hart's testimony, the government extensively questioned Agent Hart about firearm sales to the Camachos. The only portion of this evidence relevant to and admissible against Officer Arao was the fact that he sold the firearms to Camacho Maravilla, who was lawfully permitted to obtain those firearms. However, because Officer Fernandez was charged with straw purchase sales and selling to a prohibited person with respect to the Camachos, an extensive amount of evidence, including private conversations between Camacho Jr. and Officer Fernandez, for which Officer Arao took no part, was introduced. Agent Hart testified that Camacho Jr. had been convicted of conspiracy to commit a crime and possession of controlled substances. (Exhibit D at 56.) Agent Hart also testified that Officer Arao sold a firearm to Rafael Camacho Maravilla, Camacho Jr.'s brother. (Exhibit D at 59.) Camacho Maravilla was not a prohibited person and passed all background checks before Officer Arao transferred the firearm to him, yet the government did not focus on this fact when examining Agent Hart. Thus, the only relevant evidence with respect to the charges against Officer Arao was the sale itself, and this evidence that Camacho Maravilla in fact purchased the firearm to transfer to a prohibited person, Camacho Jr., with the assistance of Officer Fernandez would not have been admissible had Officer Arao been tried alone, hence the prejudicial spillover.

Agent Hart further testified regarding his search of Camacho Jr.'s home, where he stated that agents found 10 firearms, none of which were locked in a gun safe. (Exhibit D at 62.) This testimony regarding the number of firearms that were not locked away should never have been introduced as to either defendant, but particularly against Officer Arao. Such evidence was inflammatory, highly prejudicial and had no relevance as to whether or not Officer Arao had willfully and unlawfully dealt, in violation of 18 U.S.C. § 922(a)(1)(A), the specific firearms he sold to Camacho Maravilla.

8

As the Court noted in the January 13, 2020 hearing, there was also evidence of Officer Fernandez's bad conduct in dealing that should not have been admitted as to either defendant, but particularly prejudiced Officer Arao who had nothing to do with that bad conduct. In particular, the government elicited testimony from Agent Hart regarding Officer Fernandez's private messages to Camacho Jr. that he would "have to call in dead at work[,]" that he would "get sick at work LOL[,]" and later that Officer Fernandez sent a subsequent message to Camacho Jr. again asking him to "give me a time to call in sick." (Exhibit D at 90, 120, 123.) Potentially worse, Agent Hart testified that Officer Fernandez sent a private Instagram message to Camacho Jr. stating, "friend, be careful with the fucking pigs …" (Exhibit D at 121.) And again, Agent Hart testified that Officer Fernandez messaged Camacho Jr. "bro I'm going on vac for 15 days, and I need money. So we can do it. Fuck the feds. LOL." (Exhibit D at 102.) Agent Hart testified that the GPS location tracker of these conversations showed that Officer Fernandez had many of these conversations while at his place of employment, the Gardena Police Department. (Exhibit D at 99.) The government also, through Agent Hart, presented text messages sent by Officer Fernandez to various individuals explaining that a benefit to using "WhatsApp" for private communications is that "it's encrypted[;]" and further, Officer Fernandez informed individuals that "I clear my conversations." (*See, e.g.* Exhibit C at 19, 20; s*ee also* Exhibit B 79-80.) The government presented absolutely no similar evidence with respect to Officer Arao involving any indication of disrespect toward law enforcement or efforts to make light of his serious role as a Police Officer. The sheer volume of this evidence, however, far outweighed any evidence admissible against Officer Arao, and given the fact that Officers were engaged in a commercial endeavor to sell firearms, the jury could easily have found Officer Arao "guilty by association." *Satterfield*, 548 F.2d at 1346.

Finally, the government elicited testimony from Agent Hart about Officer Fernandez's conversations with Camacho Jr. involving the potential transport of firearms to Mexico. (*See* Exhibit D at 92, 93.) Agent Hart then testified that it was

9

illegal for an individual to transport a firearm from the United States to Mexico without a license. (Exhibit D at 93.) No one in this case was charged with transporting firearms outside of the country, therefore this information was purely inflammatory and prejudicial with no probative value as to either defendant. More importantly, for purposes of prejudice to Officer Arao, he had nothing to do with these private conversations.

With respect to the testimony regarding "the Chinese," Officer Arao maintains his position that this question was improper and prejudicial. Had Officer Arao not been tried with Officer Fernandez, there would have been no opportunity for the government to ask Agent Hart about Fernandez's statement concerning "the Chinese" in the context of a transfer to a prohibited person. The fact that the question was asked when it was, and the Court's vigorous statement of reasons for sustaining Arao's objection, "in light of the bifurcation of the case, in light of the specific instruction the Court had provided the jury… the question should not have been asked. The Court finds it to be improper." (Exhibit E at 55,) it is clear that the joinder of the two defendants caused constitutionally serious prejudicial effect.

Again, these private conversations between Officer Fernandez and others, not including Officer Arao, were highly prejudicial and should never have been introduced, yet because the conduct involved Officer Fernandez, Officer Arao did not have standing to object, and had lodged his objections with respect to prejudice pretrial. The spillover effect of this testimony certainly creates "serious risk that [the] joint trial … compromise[ed] a specific trial right of [Officer Arao.]" *Zafiro*, 506 U.S. at 539.

### b.    Cooperating Witness's Testimony

With respect to the government's first witness, Raul Cervantes Corona, when the government asked him about his decision to purchase a firearm for his friend, a prohibited person, and Officer Arao's counsel objected and asked the Court to instruct the jury that Officer Arao was not charged with this conduct involving the transfer to a prohibited person, the government stated that "this particular gun transaction is actually

10

charged against both defendants Arao and defendant Fernandez." (Exhibit A at 168.)
The testimony, in conjunction with the government's representation, was unduly
prejudicial, as a significant amount of Cervantes Corona's testimony involved his
transfer of one of the firearms to a prohibited person. Cervantes Corona testified that he
intended to purchase two firearms, one for himself and one for his friend who was
prohibited from purchasing a firearm, that he falsely stated on the ATF 4473 forms that
both firearms were for him, and that he had that firearm customized for his friend who
was unable to purchase the firearm himself. (*See* Exhibit A at 168, 176-77, 183.) This
extensive testimony regarding the transfer to a prohibited person and his false
statements on the ATF 4473 had no legal or logical relevance to the charges of dealing
against Officer Arao and would have been inadmissible if Officer Arao had been tried
alone.3 *See Zafiro*, 506 U.S. at 539. Moreover, in cross-examination, counsel for
Officer Fernandez did everything he could to tie Officer Arao and Officer Fernandez's
conduct together with respect to Cervantes Corona. But for the fact that the defendants
were tied together, none of the government's evidence concerning the prohibited person
or straw purchase conduct would have been admitted and Fernandez's counsel's
examination which necessarily included repeated reference to Officer Arao would ever
have occurred. In fact, upon reflection, the Court noted that the alleged "straw
purchase" conduct to which Cervantes Corona testified "is not relevant to the – to the
allegations in the indictment regarding these defendants here[.]" (Exhibit E at 63.) The
government's explanation that the purpose of this extensive testimony was "to make
clear to this jury that this is a cooperator[,]" (Exhibit E at 63,) does not change the
significant prejudicial impact of this testimony, as this purported explanation was not
clear to either defense counsel or the Court, thus it could not have been clear to the

---

3 Because the charges with respect to Cervantes Corona only dealt with dealing,
counsel for Officer Fernandez should have objected to this entire line of testimony
regarding the transfer to a prohibited person because it was inflammatory, prejudicial,
and irrelevant to Officer Fernandez's conduct in this charge as well. However, Officer
Arao had lodged his objection and had no standing to lodge the relevancy objection
with respect to Officer Fernandez.

jury. The government could just as easily have established that Cervantes Corona was a cooperating witness without going into the details surrounding his straw purchase crime. The highly prejudicial spillover effect of the introduction of this testimony is manifest.

Additionally, as the Court noted in the January 13, 2020 hearing, prejudice to Officer Arao flowed from the government's improper invocation of the attorney client privilege with respect to the testimony of Adalberto Pelayo.

Courts "do not permit the government to avoid the requirement of Rule 8(b) merely by adding a conspiracy count in order to link all the defendants." *United States v. Donaway*, 447 F.2d 940, 943 (9th Cir. 1971). Yet including all of Officer Fernandez's conduct with respect to the straw purchases and prohibited persons as overt acts in furtherance of count 1 does just that. Thus, in this case, the failure to sever the trial against Officer Arao from the trial against Officer Fernandez created serious and unconstitutional prejudice. Rules 8 and 14 therefore require that this conviction be set aside.

## CONCLUSION

For the foregoing reasons, Mr. Arao respectfully requests that this Court dismiss the case against him. Alternatively, Mr. Arao respectfully requests that this Court grant his request for new trial.

Respectfully submitted,


DATED:  January 20, 2020          By  */s/ Edward M. Robinson*
                                   Edward M. Robinson
                                   Rachael A. Robinson
                                   Lisa Houlé

                                   Attorneys for Defendant

12