NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
KATHERINE A. RYKKEN (Cal. Bar No. 267196)
Assistant United States Attorney
Major Frauds Section
VERONICA DRAGALIN (Cal. Bar No. 281370)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0647
    Facsimile: (213) 894-0141
    E-mail:   katherine.rykken@usdoj.gov
              veronica.dragalin@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-121(A)-SJO-2 |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT EDWARD ARAO SUPPLEMENTAL MOTION FOR JUDGMENT OF ACQUITTAL OR ALTERNATIVELY NEW TRIAL |
| v. | |
| EDWARD ARAO, | |
| Defendant. | Hearing Date: Not set<br>Hearing Time: Not set<br>Location:    Courtroom of the<br>          Hon. S. James Otero |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys KATHERINE A. RYKKEN and VERONICA DRAGALIN, hereby files its Opposition to Defendant Edward Arao's Supplemental Motion for Judgment of Acquittal or Alternatively New Trial (CR 310).

1        This Opposition is based upon the attached memorandum of points

2   and authorities, the files and records in this case, and such further

3   evidence and argument as the Court may permit.

4   Dated: February 4, 2020        Respectfully submitted,

5                                  NICOLA T. HANNA
                                   United States Attorney
6
                                   BRANDON D. FOX
7                                  Assistant United States Attorney
                                   Chief, Criminal Division
8

9                                  _____
                                   KATHERINE A. RYKKEN
10                                 VERONICA DRAGALIN
                                   Assistant United States Attorneys
11
                                   Attorneys for Plaintiff
12                                 UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION..................................................1

II.   ARGUMENT......................................................2

      A.   Legal Standard..........................................2

      B.   Arao Was Properly Tried in a Joint Trial with His Co-
           Defendant...............................................3

           1.    Much of the Evidence Would Be Admissible Against
                 Arao in a Separate Trial...........................6

           2.    Different Degrees of Culpability Do Not Require
                 Severance.........................................14

           3.    This Court's Jury Instructions Cured Any Undue
                 Prejudice.........................................17

III.  CONCLUSION...................................................19

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE(S)

**Cases**

Bourjaily v. United States,
  483 U.S. 171 (1987) ................................................ 9

Bryan v. United States,
  524 U.S. 184 (1998) ....................................... 11, 14, 15

Pinkerton v. United States,
  328 U.S. 640 (1946) ............................................... 10

Richardson v. Marsh,
  481 U.S. 200 (1987) ............................................. 2, 3

Sendejas v. United States,
  428 F.2d 1040 (9th Cir. 1970) ..................................... 9

United States v. Alvarez-Valenzuela,
  231 F.3d 1198 (9th Cir. 2000) .................................... 10

United States v. Baker,
  10 F.3d 1374 (9th Cir. 1993) ................................. passim

United States v. Donaway,
  447 F.2d 940 (9th Cir. 1971) ...................................... 8

United States v. Escalante,
  637 F.2d 1197 (9th Cir.) ..................................... passim

United States v. Fernandez,
  388 F.3d 1199 (9th Cir. 2004) ................................. 6, 17

United States v. Hanley,
  190 F.3d 1017 (9th Cir. 1999) .................................... 17

United States v. Hernandez-Orellana,
  539 F.3d 994 (9th Cir. 2008) .................................. 4, 15

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

United States v. Marcello,

  731 F.2d 1354 (9th Cir. 1984) .................................... 15

United States v. McDonald,

  576 F.2d 1350 (9th Cir.) ........................................... 3

United States v. Nelson,

  137 F.3d 1094 (9th Cir.) .......................................... 17

United States v. Ramirez,

  710 F.2d 535 (9th Cir. 1983) ..................................... 16

United States v. Satterfield,

  548 F.2d 1341 (9th Cir. 1977) .................................. 7, 8

United States v. Van Cauwenberghe,

  827 F.2d 424 (9th Cir. 1987) ........................... 15, 17, 18

United States v. Vasquez-Velasco,

  15 F.3d 833 (9th Cir. 1994) ....................................... 5

United States v. Zavala-Serra,

  853 F.2d 1512 (9th Cir. 1988) .................................... 10

Zafiro v. United States,

  506 U.S. 534 (1993) ............................................... 2

**Rules**

Fed. R. Evid. 801(d)(2)(E) .......................................... 9

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

As before, defendant Edward Arao's ("Arao" or "defendant") supplemental request for a new trial or judgment of acquittal (the "Supplemental Motion") is meritless. The Court has already denied Arao's pre-trial motion for dismissal and severance on similar grounds. (CR 202.) The evidence presented at trial does not alter the Court's previous assessment that severance was unnecessary. The burden under Rule 14 is high, requiring Arao to prove "clear," "manifest," or "undue" prejudice. Arao's argument for a separate trial appears to be based on the notion that he would simply have a better chance, or at least a second chance, at acquittal – an outcome that is by no means consistent with the evidence presented at trial. The law does not support Arao's position. Rather, Arao must show that a specific, substantive trial right was violated by having a joint trial with his co-defendant. Defendant has made no such showing and instead relies incorrectly on his perceived lesser degree of culpability.

Out of an abundance of caution, the government offered to, and did, bifurcate trial testimony to protect Arao from any potential prejudice related to the separate charges against his co-defendant Carlos Fernandez ("Fernandez"). The government also agreed to an appropriate limiting instruction, which the Court gave multiple times throughout and at the end of trial. That being said, and as the limiting instruction also stated, much of the evidence presented in the second phase of the trial was also admissible against Arao for the conspiracy and dealing charges, and would be admissible in a separate trial against Arao. Arao fails to his high meet burden to

show that he was denied a fair trial in the joint trial with his co-conspirator.

## II.   ARGUMENT[1]

### A.   Legal Standard

As the Supreme Court has recognized, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." <u>Zafiro v. United States</u>, 506 U.S. 534, 537 (1993).  Joint trials "play a vital role in the criminal justice system." <u>Richardson v. Marsh</u>, 481 U.S. 200, 209 (1987).  They promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."  <u>Id.</u> at 210.  "For these reasons, we repeatedly have approved of joint trials."  <u>Zafiro</u>, 506 U.S. at 537.  "Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." <u>Id</u>.  "When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in <u>Richardson v. Marsh</u>, less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."  <u>Id</u>. at 538-539.

The Supreme Court has also recognized that "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials."  <u>Id</u>. at 540. In <u>Richardson v. Marsh</u>, the Supreme Court observed:

> Many joint trials - for example, those involving large
> conspiracies to import and distribute illegal drugs -

---

[1] The government has not included a recitation of the facts in this opposition as the facts have already been described in the government's opposition to Arao's post-trial Motion to Dismiss.  (<u>See</u> CR 301.)

2

1
2
3
4
5
6
7

> involve a dozen or more codefendants.... It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability - advantages which sometimes operate to the defendant's benefit.

481 U.S. at 209-10.

Under Rule 14, defendant has the burden of proving "clear," "manifest," or "undue" prejudice from a court's denial of a severance motion and the resulting joint trial.  United States v. McDonald, 576 F.2d 1350, 1355 (9th Cir.), cert. denied, 439 U.S. 830 (1978). Defendant "must show more than that a separate trial would have given him a better chance for acquittal.  He must also show violation of one of his substantive rights by reason of the joint trial: unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant."  United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir.), cert. denied, 449 U.S. 856 (1980) (internal citations omitted).  "In other words, the prejudice must have been of such magnitude that the defendant was denied a fair trial.  Clearly, this is not an easy burden to meet." Id. (internal citations omitted).  Arao fails to meet that high burden here.

### B.   Arao Was Properly Tried in a Joint Trial with His Co-Defendant

The Ninth Circuit has developed a four-part test to aid the

3

district court's determination regarding severance, including: "(1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether [defendant] could show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." United States v. Hernandez-Orellana, 539 F.3d 994, 1001 (9th Cir. 2008).

Each of the four factors weighs in favor of a joint trial here. First, this was not a complex trial with many defendants. This was a four-day trial with only two defendants who were both charged in one conspiracy. Arao was charged in two counts with two crimes. A jury could collate and appraise the individual evidence against each defendant. Second, this Court was diligent in instructing the jury on the limited purposes for which certain evidence may be used, both during trial and at the conclusion of evidence. (See, e.g., CR 290, 11/13/19 Tr. at 51:12-52:6; CR 291, 11/14/19 Tr. at 13:2-14:1; id. at 186:24-187:1; CR 292, 11/18/19 Tr. at 53:22-54:16; CR 293, 11/19/19 Tr. at 100:5-22). Third, the nature of the evidence and the legal concepts in this case were within the competence of an ordinary juror, especially when compared to much more complex cases in which courts have affirmed joint trials.

With respect to the fourth factor, i.e., whether Arao can show with particularity that the joint trial compromised a trial right or prevented the jury from making a reliable judgment about guilt or

4

1  innocence, the Ninth Circuit has noted that neither a better chance

2  of acquittal in a separate trial nor the mere fact of a joint trial

3  with a more culpable defendant is sufficient in itself to require

4  severance.  United States v. Baker, 10 F.3d 1374, 1388 (9th Cir.

5  1993) ("It is not enough for [defendant] to show that separate trials

6  would have created a better chance for acquittal.  Nor is the fact

7  that a defendant is to be tried with a more culpable defendant enough

8  to require severance.") (internal citations omitted).  "The most

9  common reason for severing a trial is where co-defendants present

10  mutually exclusive or irreconcilable defenses."  United States v.

11  Vasquez-Velasco, 15 F.3d 833, 846 (9th Cir. 1994). This case did not

12  involve mutually exclusive or irreconcilable defenses.  In fact, the

13  defendants presented much the same defense—neither defendant denied

14  that they engaged in the conduct alleged in the indictment, but

15  merely disputed that they acted willfully.[2]

16      A joint trial in this case did not violate Arao's substantive

17  rights.  The only substantive right Arao identifies is that "[t]here

18  was a significant amount of evidence presented in this trial that was

19  only admissible against Officer Fernandez and would not have been

20  admitted had Officer Arao been tried separately." (CR 310 at 4.)

21  This evidence falls into four categories: (1) co-conspirator

22  statements of co-defendant Fernandez; (2) the testimony of witness

23  Cervantes Corona; (3) the testimony of witness Pelayo; and (4)

24  evidence of Camacho Jr.'s felon status and firearms recovered at his

25  home.  Arao is incorrect in one basic premise; much of this evidence

26

27

28      [2] Defense counsel for Fernandez made the additional argument in
closing that Fernandez was innocent and that the government had
framed Fernandez.  (See CR 293, 11/19/19 Tr. at 172:3-6.)

5

would be admissible if Arao were re-tried separately.  As this Court noted in the order denying the motion to sever, "when a defendant is charged with conspiracy, nearly all of the evidence admissible against the co-conspirators is also admissible against that defendant." (CR 202 at 6).  With respect to the evidence that *was* admissible only against Arao's co-defendant, this Court properly instructed the jury of its limited purpose, thereby curing any potential unfair prejudice to Arao.  Arao therefore fails to meet the high burden for showing that the joint trial violated a specific substantive trial right belonging to Arao.

        1.   <u>Much of the Evidence Would Be Admissible Against Arao in a Separate Trial</u>

The Ninth Circuit has "noted that a joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials." <u>United States v. Fernandez</u>, 388 F.3d 1199, 1241 (9th Cir. 2004); <u>Escalante</u>, 637 F.2d at 1201 (defendants jointly charged in conspiracy cases are presumptively to be jointly tried).

For example, in <u>Baker</u>, the Ninth Circuit held that "the district court did not abuse its broad discretion in denying defendants' motions for severance." 10 F.3d at 1374.  That trial was "one of the lengthiest and costliest trials in this nation's history," involved fifteen co-defendants, a forty-four count indictment, 30,000 pages of transcript, 250 witnesses, evidence of over 2,000 narcotics transactions, and took sixteen months to try.  <u>Id</u>. at 1389.  In affirming the denial of severance, the Ninth Circuit noted that all

1   defendants were charged in the methamphetamine conspiracy: "Although

2   some Appellants may not have been mentioned frequently by name during

3   the trial, the voluminous evidence of this conspiracy and of the

4   overt acts in furtherance of it was relevant to all defendants, and

5   thus would have been admissible even in separate trials."  Id.  This

6   trial was, by any measure, less complex than the one at issue in

7   Baker.  Similar to Baker, however, the evidence of the conspiracy and

8   of the overt acts in furtherance of the conspiracy charged in Count

9   One was relevant to both defendants and would have been admissible

10   even in separate trials.

11          By contrast, in United States v. Satterfield, on which defendant

12   relies heavily in his Supplemental Motion (CR 310 at 4, 6, 9), two

13   defendants were joined in a single indictment charging five bank

14   robberies, where a co-defendant "alone had perpetrated the first,

15   second, and fifth robberies, and [the co-defendant] and appellant

16   Satterfield together had committed the third and the fourth."  548

17   F.2d 1341, 1343 (9th Cir. 1977).  Notably, the Satterfield indictment

18   did not charge the defendants with conspiracy.  Id.  "The evidence

19   adduced at trial relative to the first, second, and fifth robberies

20   pertained solely to acts undertaken by [the co-defendant] alone."

21   Id.  The Ninth Circuit noted that, "[i]n a separate trial of

22   [defendant] for the third and fourth robberies, evidence pertaining

23   to the first, second, and fifth robberies would have been irrelevant.

24   Thus, this is not a situation where substantially the same facts

25   would have been adduced at separate trials."  Id.  In contrast, in

26   this case, substantially the same facts would be adduced in a

27   separate trial against Arao.  As discussed in more detail below, the

28   government recognizes that Camacho Jr.'s felon status, the search of

7

Camacho Jr.'s residence, and some of the communications between
Camacho Jr. and Fernandez would not be admissible against Arao.  Many
of the communications between Camacho Jr. and Fernandez, however, are
admissible against Arao to show how Fernandez advertised,
coordinated, and sold firearms in furtherance of the conspiracy to
illegally deal firearms.  Moreover, a number of the guns sold to
Camacho Jr. were sold through Ronin Tactical with Arao's
participation, a point not emphasized at this trial but nevertheless
relevant and admissible in any separate trial against Arao.

In Baker, the Ninth Circuit recognized a "risk of spillover
prejudice" in joint trials.  Id. at 1391.  "This risk is particularly
acute for comparatively peripheral defendants such as Robert Cole,
who was charged only in the methamphetamine conspiracy count and
whose separate trial could have been concluded in a matter of days or
weeks, but who was required to sit in the courtroom, shackled to his
chair, during months of proof involving entirely unrelated
conspiracies and substantive offenses." Id.  Even under those
circumstances, the Ninth Circuit affirmed the district court's
decision not to sever the trial.  Id. at 1389.  In United States v.
Donaway, on which Arao also relies, the Ninth Circuit considered
whether the district court should have granted the renewed motion to
sever under Rule 14 after the conspiracy count was dismissed.  447
F.2d 940, 943 (9th Cir. 1971).  In that case, "the government's case
in chief covered more than 2,300 pages of transcript.  Less than 50
pages were relevant to [the defendant]." Id.  Here, despite being
"seated in a position less visible to the jury" (CR 210 at 2)--likely
a strategic choice on Arao's part--Arao was not "peripheral" during
the trial.  The conspiracy charged only two people, both of whom had

1   a central role in committing the charged offense.  Indeed, Arao was
2   mentioned repeatedly by witnesses, the exhibits introduced at trial
3   related both to Arao individually and to defendants together, and
4   Arao's theory of the case had everything to do with his state of mind
5   and nothing to do with his perceived lesser degree of culpability.
6   Without Arao, the gun dealing scheme would not have operated because
7   Fernandez had no ability to get the merchandise through a federal
8   firearms licensee with the regularity required to run a business.
9   Arao played a key and necessary role in the charged conspiracy.

10       Arao argues that there was a "spillover effect and prejudice" by
11   pointing to the government's reference in the opening and the
12   introduction of defendants' "own words in emails, Instagram posts,
13   Instagram messages, text messaging." (CR 310 at 4.) Arao notes that
14   the government's evidence of private Instagram posts and text
15   messages involved only defendant Fernandez.  This argument ignores
16   the fact that Fernandez's statements made during the course of the
17   conspiracy and in furtherance of the conspiracy are admissible
18   against Arao as co-conspirator statements.  Arao was charged in Count
19   One along with his co-defendant with conspiracy to deal in firearms.

20       The admission of co-conspirator statements pursuant to Fed. R.
21   Evid. 801(d)(2)(E) requires only a foundation that: (1) the
22   declaration was made during the life of the conspiracy; (2) it was
23   made in furtherance of the conspiracy; and (3) there is, including
24   the co-conspirator's declaration itself, sufficient proof of the
25   existence of the conspiracy and of the defendant's connection to it.
26   See Bourjaily v. United States, 483 U.S. 171, 173, 181 (1987).  The
27   defendant need not be present at the time the co-conspirator made the
28   statement.  Sendejas v. United States, 428 F.2d 1040, 1045 (9th Cir.

1970) ("It is well settled that a conversation between two co-conspirators which takes place out of the presence of a third co-conspirator is admissible into evidence against the third co-conspirator."). Moreover, co-conspirator statements need not be made to another member of the conspiracy in order to be admissible under Federal Rule 801(d)(2)(E). See United States v. Zavala-Serra, 853 F.2d 1512, 1516 (9th Cir. 1988).[3]

In a separate trial against Arao, evidence involving Fernandez alone would be admissible against Arao as well. Under Pinkerton v. United States, 328 U.S. 640 (1946), a defendant can be liable for a substantive offense committed by a co-conspirator as long as the offense occurred within the course of the conspiracy, was within the scope of the agreement, and could reasonably have been foreseen as a necessary or natural consequence of the unlawful agreement. United States v. Alvarez-Valenzuela, 231 F.3d 1198, 1202 (9th Cir. 2000). Therefore, Arao is liable for Fernandez's foreseeable actions within the course of the conspiracy, including his statements to prospective buyers in private messages. Thus, even in a separate trial, the statements of which Arao now complains would be admissible against Arao either as co-conspirator statements under Rule 801 or Pinkerton.

For example, Arao points to Fernandez's statements in private messages with Camacho Jr. that he would have to call in "dead" at work or call in sick at work on numerous occasions. (CR 310 at 9.) Fernandez made these statements to Camacho Jr., a prospective gun

---

[3] The government briefed this issue at length in multiple pleadings (CR 179, 185), and this Court granted the government's motion in limine to admit statements by defendant Fernandez in e-mails, private Instagram messages, and text messages against defendant as co-conspirator statements.

buyer.  He made those statements in furtherance of the conspiracy to deal in firearms, because he was negotiating the terms of the sales and the logistics of the transactions.  The firearms sales to Camacho Jr. were charged against Fernandez and Arao in Count One.  Three of the firearms sales coordinated by Fernandez to Camacho Jr. were sold by Arao, and were charged against Arao in both Count One and substantively in Count Three.  (See FSI, Count One Overt Acts 95, 96, 97; Count Three.)  To prove defendants guilty of illegal dealing, the government was required to show that "the defendants devoted time, attention and labor to selling firearms as a trade or business." Ninth Circuit Model Criminal Jury Instruction No. 8.53.  Showing that Fernandez called in sick from his regular day job to tend to his gun selling business was relevant because it showed that Fernandez needed to devote time, attention, and labor to the gun selling business by calling out sick from his regular day job.  For the same reason, the fact that Fernandez took photographs or engaged in the gun selling business from the Gardena Police Department was relevant to show that he devoted time, attention, and labor to the gun selling business during regular business hours.

Arao also points to private statements made by Fernandez during the course of and in furtherance of the conspiracy to deal in firearms that show a disrespect for the law.  To prove defendants guilty of illegal dealing, the government was required to show that defendants acted willfully; that is knowing that their conduct was unlawful.  Bryan v. United States, 524 U.S. 184, 198-99 (1998). Statements by Fernandez in furtherance of the conspiracy are admissible against Arao as co-conspirator statements.  These statements were intended to encourage the prospective gun buyer to

1    trust Fernandez and to continue buying guns.  In addition, the

2    statements were probative of Fernandez's state of mind, i.e. whether

3    he acted willfully.  Because Arao is liable under Pinkerton for

4    Fernandez's actions, this evidence would be admissible against Arao

5    even in a separate trial.

6         Similarly, Fernandez's statements to other prospective buyers

7    that he clears his conversations and uses WhatsApp were admissible

8    co-conspirator statements against Arao.  The statements were intended

9    to build trust with prospective gun buyers, encouraging prospective

10   buyers to rely on and believe Fernandez and to continue buying guns

11   from Fernandez and Arao in furtherance of the conspiracy to deal in

12   firearms.

13        Arao also argues that he was prejudiced by the testimony of Raul

14   Cervantes Corona, without explaining how a joint trial caused this

15   prejudice.  (CR 310 at 10-11.)  This witness testified about the

16   purchase of two firearms, which he coordinated with Fernandez, but

17   which Arao actually sold to Cervantes Corona.  The witness provided

18   evidence of the way defendants operated their illegal gun dealing

19   business, with Fernandez primarily responsible for finding customers,

20   and with Arao responsible for securing the merchandise.  Records

21   introduced at trial showed that Arao purchased one of the guns sold

22   to Cervantes Corona just weeks before the transaction, and for only

23   half the price.  Without the witness's testimony, the government

24   would not have been able to prove the purchase price charged by

25   Fernandez and Arao, and the 100% profit that they were able to make

26   on the sale.  In addition, the witness provided testimony about the

27   way defendants conducted themselves at the sale, wearing their police

28   uniforms and parking their police vehicles outside the location to

1   encourage prospective buyers to trust defendants and feel comfortable

2   buying guns from defendants.  This evidence would be admissible in a

3   separate re-trial because it is relevant to both Count One (the

4   conspiracy) and Count Three (the substantive dealing count against

5   Arao that includes these two specific firearms).[4]

6        Arao's prejudice argument has nothing to do with joinder. Arao,

7   in effect, argues that Cervantes Corona should not have testified

8   that he bought a gun for his friend who was prohibited from buying

9   guns.  Before trial, the government produced numerous proffer reports

10  that summarized this witness's anticipated testimony in great detail.

11  The witness agreed to testify pursuant to a cooperation plea

12  agreement, after pleading guilty to making false statements.  The

13  government was entitled to front these facts, without belaboring the

14  point, that colored this witness's motive for testifying and

15  potentially called into question his credibility.  If Arao had

16  concerns about keeping out the fact that Cervantes Corona obtained a

17  gun for a friend who was prohibited, Arao could have raised that

18  issue with the government pre-trial, in a motion in limine to exclude

19  that fact, or by objecting during trial.[5]

20

21        [4] Defendant incorrectly argues that Fernandez should have
    objected to the entire line of testimony, and that defendant "had no
22  standing to lodge the relevancy objection with respect to Officer
    Fernandez."  (CR 310 at 11.)  The two guns sold to Cervantes Corona
23  were part of Count One, the conspiracy, with which both defendants
    were charged.  Consequently, Arao had standing to object to the
24  testimony.  At trial, defense counsel for Arao did not request a
    limiting instruction prior to Cervantes Corona's testimony suggesting
25  that he too believed that Cervantes Corona's testimony was relevant
    to the offenses charged against Arao.
26
          [5] Defense counsel for Fernandez objected during Cervantes
27  Corona's testimony that he bought the gun for a friend on the grounds
    that government counsel's question was leading. (11/13/19 Tr. at
28  171:12-18.)

1    Arao was charged in Count One, together with Fernandez, in the

2   same conspiracy.  Arao is therefore liable for foreseeable actions

3   taken by Fernandez during the course of the conspiracy.  That he did

4   not participate in Fernandez's private conversations with prospective

5   gun buyers does not make those statements inadmissible.[6] In light of

6   the charges and the admissibility of these co-conspirator statements

7   and evidence, Arao fails to demonstrate any prejudicial "spillover."

8   This same evidence would be admissible against Arao even if he were

9   re-tried separately.

10                    2.   Different Degrees of Culpability Do Not Require
                           Severance
11

12   Arao argues that Fernandez is more culpable than Arao and that

13   this resulted in the jury finding Arao "guilty by association."  As

14   an initial matter, Arao mischaracterizes the evidence introduced at

15   trial.  The mere fact that his co-defendant was convicted of

16   additional charges does not somehow make Arao any less guilty of the

17   crimes for which the jury found him guilty.  The evidence at trial

18   proved that, like his co-defendant, Arao also demonstrated a

19   "flagrant disregard for the law," in that he knowingly violated the

20   law, including those laws he was entrusted to enforce as a police

21   officer and which he certified he understood as the operator of Ronin

22   Tactical, a federal firearms licensee.  (CR 310 at 2.)  Contrary to

23   Arao's assertion that he "always followed the law [and] documented

24   his sales" (id.), the ATF found numerous violations in an audit of

25

26   ─────────────

27        [6] Defendant again incorrectly argues that he "did not have
     standing to object" to the specific statements he now alleges were
     unduly prejudicial.  (CR 310 at 10).  The statements were admissible
28   against defendant as co-conspirator statements, and defendant
     therefore had standing to object to those statements at trial.

Ronin Tactical.  Arao's conduct, like his co-defendant's, also demonstrated an "indifference to the very real safety concerns surrounding selling firearms."  (Id.)  Arao repeatedly sold guns to non-law enforcement individuals who could not legally buy off-Roster firearms directly from licensed gun dealers.  In addition, the reality is that, on at least two occasions, guns Arao sold ended up in the hands of prohibited persons, including in connection with two unrelated instances of drug trafficking (which evidence the jury did not hear).  As a police officer, Arao knows that prohibited persons acquire firearms through straw purchasers.  Arao sold three firearms to Camacho Maravilla in the presence of Camacho Jr., and did nothing to investigate Camacho Jr.'s status or the circumstances surrounding the fact that Camacho Jr. was present for the purchase of ten total firearms coordinated by his business partner.  Arao did not sell a handful of guns in private party transfers to acquaintances or persons he knew.  He sold 41 off-Roster guns in two years and conspired with Fernandez to sell 45 more.  He was admittedly motivated to make money with his business partner.

Nevertheless, even if Fernandez's conduct made him more culpable, this does not entitle Arao to a separate trial.  "The fact that there may be more incriminating evidence against one defendant than there is against another, is insufficient to justify a separate trial for the latter." United States v. Marcello, 731 F.2d 1354, 1360 (9th Cir. 1984).  See also United States v. Van Cauwenberghe, 827 F.2d 424, 432 (9th Cir. 1987) ("the mere fact that a criminal defendant is jointly tried with a more culpable codefendant is not alone sufficient to constitute an abuse of the district court's discretion"); United States v. Hernandez-Orellana, 539 F.3d 994, 1002

1  (rejecting "catchall guilt-by-association argument" and noting that

2  defendant's "burden [is] a heavy one, and the district court's

3  decision not to sever trials seldom will be disturbed").

4      In United States v. Ramirez, the Ninth Circuit explained why

5  different degrees of culpability does not necessarily lead to undue

6  spillover prejudice.  710 F.2d 535, 547 (9th Cir. 1983).  "Although

7  appellant is correct when he states that the evidence of [the co-

8  defendant's] participation in the events charged was overwhelming,

9  there is little chance that the evidence against [the co-defendant]

10  'spilled over.'"  Id.  "The guilt or innocence of Ramirez depends on

11  the government's success in convincing the jury that it was Ramirez

12  who was financing and directing the criminal enterprise from behind

13  the scene.  Proof on that issue is entirely separate from proof that

14  [the co-defendant] committed the specific acts in the indictment.  We

15  find no indication that the jury was unable to compartmentalize the

16  evidence and reach their verdict as to Ramirez on a fair evaluation

17  of the evidence against him."  Id.

18      Here, too, jury was instructed repeatedly that Arao was charged

19  with only two crimes and that the government had the burden to prove

20  each element with respect to each defendant.  The government

21  reiterated this in closing arguments.  Proof on those issues was

22  entirely separate from proof that Fernandez committed specific

23  additional acts charged in the indictment.  There is no indication

24  that the jury was unable to compartmentalize the evidence,

25  particularly in light of the jury instructions provided throughout

26  the trial and the intentionally bifurcated nature of the trial

27  testimony.

28

3. <u>This Court's Jury Instructions Cured Any Undue Prejudice</u>

A defendant "seeking severance based on the 'spillover' effect of evidence admitted against a co-defendant must also demonstrate the insufficiency of limiting instructions given by the judge." <u>United States v. Hanley</u>, 190 F.3d 1017, 1027 (9th Cir. 1999) (quoting <u>United States v. Nelson</u>, 137 F.3d 1094, 1108 (9th Cir.), cert. denied, 525 U.S. 901 (1998)).

The Ninth Circuit has noted that "[t]he prejudicial effect of evidence relating to the guilt of codefendants is generally held to be neutralized by careful instruction by the trial judge." <u>Escalante</u>, 637 F.2d 1197, 1201. "Generally, when evidence is heard by the jury that ... is applicable only to limited defendants or in a limited manner, a cautionary instruction from the judge is sufficient to cure any prejudice to the defendant." <u>Id</u>. The Ninth Circuit has "repeatedly held that a district court's careful and frequent limiting instructions to the jury, explaining how and against whom certain evidence may be considered, can reduce or eliminate any possibility of prejudice arising from a joint trial." <u>Fernandez</u>, 388 F.3d 1199, 1243; <u>see also</u> <u>Baker</u>, 10 F.3d 1374, 1388 ("The district court's careful and frequent limiting instructions militate against finding an abuse of discretion."). In <u>Van Cauwenberghe</u>, the defendant argued "that he suffered from aspersions of guilt by association with the more culpable [co-defendant]." 827 F.2d 424, 432. The Ninth Circuit rejected that argument, noting that "[w]hen, as here, the district court instructed the jury to consider the guilt or innocence of each co-defendant separately, in light of the

17

evidence against that defendant, the jury is presumed to have obeyed." Id. (citations omitted).

Without explanation, Arao asserts that "prejudice to Officer Arao flowed from the government's improper invocation of the attorney client privilege with respect to the testimony of Adalberto Pelayo." (CR 310 at 12). As defense counsel noted at trial, none of this witness's testimony implicated Arao at all. (CR 291, 11/14/19 Tr. At 186:18-20 [Counsel for Arao: "this testimony does not apply to Officer Arao."].) The Court provided a modified limiting instruction before this witness's testimony. (Id. at 186:24-187:1 ["Okay, the testimony by this witness is offered as to officer or defendant Fernandez only, and cannot be considered in reference to officer or defendant Arao."].) As the Ninth Circuit has held, when evidence is applicable only to limited defendants, "a cautionary instruction from the judge is sufficient to cure any prejudice to the defendant." Escalante, 637 F.2d 1197, 1201.

Arao notes that the government introduced evidence at trial that Camacho Jr. was a convicted felon and that agents recovered 10 firearms at the home of Camacho Jr. during the execution of a search warrant. (CR 310 at 8.) This evidence was relevant to certain charges against Fernandez, but not against Arao. If Arao were re-tried separately, the government would not seek to admit this particular evidence. During trial, the jury was instructed before the second portion of Agent Hart's testimony that the evidence was to be admitted for a limited purpose. (See CR 292, 11/18/19 Tr. at 53:22-54:16; see also, e.g., CR 290, 11/13/19 Tr. at 51:12-52:6; CR 291, 11/14/19 Tr. at 13:2-14:1; id. at 186:24-187:1; CR 292, 11/18/19 Tr. at 53:22-54:16.) At the end of the trial, the jury was again

provided with the same limited purpose instruction.  (CR 293,
11/19/19 Tr. at 100:5-22.)  The Ninth Circuit "assumes that the jury
listened to and followed the trial judge's instructions."  <u>Escalante</u>,
637 F.2d 1197, 1201.  Given these repeated instructions, any risk of
a spillover prejudicial effect was neutralized and mitigated.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests
that this Court deny Arao's motion for judgment of acquittal or
alternatively new trial.