**EDWARD M. ROBINSON (CA Bar 126244)**
Rachael A. Robinson (CA Bar 313991)
Lisa Houlé (CA Bar 207303)
    21515 Hawthorne Blvd, Suite 730
    Torrance, CA 90503
    Office:  (310) 316-9333
    Facsimile: (310) 316-6442
    eroblaw@gmail.com

Attorneys for Defendant
*Edward Yasushiro Arao*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-00121-SJO-2 |
| Plaintiff, | |
| v. | **DEFENDANT EDWARD YASUSHIRO ARAO'S SENTENCING MEMORANDUM; EXHIBITS IN SUPPORT** |
| EDWARD YASUSHIRO ARAO, et al., | |
| Defendant. | |
| | Hearing Date: March 2, 2020 |
| | Hearing Time: 9:00 AM |
| | Location: Courtroom of the Hon. S. James Otero |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

THE PRESENTENCE REPORT ......................................................................... 3

OBJECTIONS TO THE PRESENTENCE REPORT ......................................... 3

    I.    Application of the Advisory Guidelines ................................................ 4

    II.   Acceptance of Responsibility .............................................................. 5

18 U.S.C. §3553 ANALYSIS .............................................................................. 8

    I.    Nature and Circumstances of the Offense .......................................... 9

    II.   Personal History and Characteristics ................................................ 13

    III.  Promote Respect for the Law ............................................................ 14

    IV.  Protecting the Public ......................................................................... 14

    V.   Deterrence ......................................................................................... 15

    VI.  Unwarranted Sentencing Disparity .................................................. 16

        A.   *United States v. Gourdikian* .................................................... 17

        B.   *United States v. McGowan* ..................................................... 17

        C.   *United States v. Xu* .................................................................. 18

CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Bryan v. United States*,
  524 U.S. 184 (1998) ........................................................................... 1, 9

*Gall v. United States*,
  552 U.S. 38 (2007) ....................................................................... 8, 9, 14

*Kimbrough v. United States*,
  522 U.S. 85 (2007) ................................................................................ 8

*Nelson v. United States*,
  555 U.S. 350 (2009) ............................................................................. 5

*Tapia v. United States*,
  564 U.S. 319 (2011) ............................................................................. 8

*United State v. Cole*,
  622 F. Supp. 2d 632 (N.D. Ohio 2008) ............................................. 16

*United States v. Booker*,
  543 U.S. 220 (2005) ................................................................... 4, 8, 16

*United States v. Carty*,
  520 F.3d 984 (9th Cir. 2008) ............................................................... 5

*United States v. Fells*,
  78 F.3d 168 (5th Cir. 1996) ................................................................. 7

*United States v. Gourdikian*,
  18-cr-00104-SVW ................................................................. 1, 17, 18

*United States v. Hanson*,
  561 F. Supp. 2d 1004 (E.D. Wis. 2008) ............................................ 14

*United States v. McGowan*,
  12-cr-00207-TLN ............................................................................... 17

*United States v. Miller*,
  22 F.3d 1075 (11th Cir. 1994) ............................................................. 7

*United States v. Rodriquez*,
  527 F.3d 221 (1st Cir. 2008) ............................................................... 9

*United States v. Schultz*,
  917 F. Supp. 1343 (N.D. Iowa 1996) ............................................... 6, 7

*United States v. Wei Xu*,
  9-cr-00093-RGK ................................................................................ 18

**Statutes**

18 U.S.C. § 1001 ......................................................................................... 18

18 U.S.C. § 3553 ................................................................................... passim

18 U.S.C. § 922 .................................................................................... passim

26 U.S.C. § 7201 ....................................................................................... 18

**Other Authority**

U.S. SENTENCING COMM'N, MEASURING RECIDIVISM: THE CRIMINAL
HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES
(May 2004) .............................................................................................. 15

# INTRODUCTION

Officer Arao has never denied the fact that he was selling off-roster firearms in legitimate, fully documented private party transfers. He has never contested any fact surrounding those sales or his conduct in those sales. As told to the jury, the only issue that was contested was whether or not the government had proven that Officer Arao had acted "willfully" beyond a reasonable doubt as defined in *Bryan v. United States*, 524 U.S. 184 (1998) when he engaged in a substantial number of these sales for profit. Throughout pretrial litigation, the jury trial, the jury instructions and Officer Arao's motion for judgment of acquittal pursuant to Rule 29, this was clear. Officer Arao, through counsel, moved to dismiss the counts of the indictment as unconstitutionally vague on its face within the definition provided in the United States Code and as applied to Officer Arao, as well as on the basis that the conspiracy count was duplicitous.

Officer Arao also, based on the same legal analysis in the duplicity attack moved pretrial for severance and has, at the Court's request, briefed this issue post-conviction to highlight the prejudicial spillover effect in the motion to set aside the verdict and grant new trial. Critically, while the government in this case has argued – in rebuttal at trial through analogy and in post-conviction litigation – that Officer Arao's conduct in engaging in each private party transfer was somehow in itself illegal, in other cases, the government has taken the exact opposite – and legally correct – position that it "does not contend that the defendant violated the law by reselling an off roster firearm. As defendant was not a licensed FFL, he could purchase off roster firearms and sell them directly to the public as a third-party transfer. Defendant could lawfully purchase and lawfully sell an off roster firearm." (*See United States v. Gourdikian*, case no. 18-cr-00104-SVW, Government's Sentencing Position Paper Doc. 35 at 5-6.)

It is against this backdrop, as well as the facts that were introduced at trial and, maybe more importantly, the excerpts of Officer Arao's interview with Agents Hart

1

and Duncan dated 9/25/17 that were excluded by this Court, that Officer Arao presents this position paper.[1]

Appearing before this Court is a 49-year-old father of three who has dedicated his life to serving the public as a police officer and to serving his family through love and respect for his parents, his wife, and his children. As a result of this prosecution and conviction, Officer Arao has lost the job that he performed selflessly and with great acclaim. His wife has left him as a result of this prosecution, though he remains dedicated to raising, teaching, and loving his young children as their primary caregiver. Officer Arao's prosecution is part of the government's effort to prevent law enforcement officers from abusing their position of trust by "knowingly and willfully" selling firearms without a license. The prosecutions of other defendants such as Gourdikian, Xu, and McGowan are examples of the government's efforts to do so. The government's charging decision, the evidence presented at his trial, as well as the ATF agent's undercover attempt to purchase an off-roster handgun from Officer Arao and their considered decision to question him after this undercover attempted purchase, all point directly to the fact that the nature and circumstances of Officer Arao's conduct are significantly and meaningfully different from those other defendants and call for a downward adjustment for his accepting responsibility and for a sentence of probation. To incarcerate Officer Arao would be unnecessarily punitive and in violation of the Congressional mandate to impose a sentence that is "not greater than necessary", to be just, to reflect the seriousness of the offense, to protect the public from future crimes of Officer Arao, to provide general and specific deterrence, and to avoid an unwarranted disparity between his sentence and that of other similarly situated defendants.

---

[1] Officer Arao objected to the Court's ruling with respect to the excluded excerpts of his interview with Agents Duncan and Hart. (*See, e.g.* Doc. 240.) Nothing in this paper is intended to waive any arguments on appeal.

## THE PRESENTENCE REPORT

The Probation Office in the Presentence Report (PSR), at Document 316, calculates an advisory guideline sentence of 33 to 41 months. As set forth below, Officer Arao objects to an adjustment not applied in that calculation. For reasons set forth in this memorandum, primarily the nature and circumstances of the offense, as well as Officer Arao's personal history and characteristics, Officer Arao asks for a variance from the advisory guideline sentence to a sentence of probation. In doing so, Officer Arao joins in the probation office's recommendation for a downward variance as articulated in paragraph 108 of the PSR.

## OBJECTIONS TO THE PRESENTENCE REPORT

First, Officer Arao objects to paragraph 15 of the PSR, as the probation office represents that the Offense Conduct set forth in this portion of the PSR was based on, among other things, the "Plea Agreement." While other co-defendants have entered plea agreements, Officer Arao has not. Critically, Officer Arao was the only defendant in this indictment charged solely with engaging in the sale of firearms without a license. Thus, to the extent that the probation office relied on the plea agreements of others, the information regarding sales to prohibited persons and straw purchase sales has no relevance to Officer Arao.

Officer Arao objects to the following information in the Offense Conduct section of the PSR, paragraphs 15-29. Specifically, Officer Arao objects to the language in paragraph 26. Paragraph 26 correctly identifies some of the technical problems with the way in which Ronin Tactical was keeping some of its records. The conclusion in the final sentence of the paragraph, "[d]espite these warnings from ATF in February and March 2017, Arao continued to illegally deal in firearms, and he helped Fernandez, who was also unlicensed to engage in this business[,]" improperly assumes that Officer Arao was placed on notice that his limited and discrete conduct in selling the off-roster firearms had been identified by the auditor as a criminal violation of his and that his continuing to sell these firearms was done in some type of willful fashion.

3

Preliminarily, the government made no effort to introduce the auditor's testimony or the report into evidence at trial. If the auditor's testimony or report in any way supported the improper conclusion set forth in the last sentence to paragraph 26, it is a certainty that the government would have introduced the report or testimony as evidence of Officer Arao's willfulness. As the Court stated in the Rule 29 hearing, evidence of willfulness was "certainly a close case" and "not crystal clear." (Jury Trial Day 5 at 45.) In fact, as evidenced by the report itself as well as the questioning of Officer Arao by Agents Hart and Duncan, the only discussion about any improper sales of off-roster handguns, or any guns for that matter, involved Officer Fernandez. *See e.g.* Exhibit A pp. 3, 12 (reference to audit). Nothing in the audit report indicated to Officer Arao that he may be in violation of 18 U.S.C. 922(a)(1)(A).

Officer Arao further objects to the information set forth in paragraph 28 of the PSR. Both from a conviction standpoint for dealing in firearms without a license, as well as the scope of relevant conduct under U.S.S.G. 1B1.3(a)(1)(B), this information has no relevancy or purpose with respect to convicting or sentencing Officer Arao. Critically, the government in its Opposition to Officer Arao's Supplemental Motion for New Trial concedes that "*this evidence was relevant to certain charges against Fernandez, but not against Arao. If Arao were retried separately, the government would not seek to admit this particular evidence*." (Doc. 323 at 18.)

Concerning paragraph 29 of the PSR, Officer Arao joins the probation office in stating that "[t]here is no evidence that **Arao** had any knowledge of these straw purchases." This conclusion by the probation office, again, is borne out by the government's charging decision, the evidence introduced at trial, as well as Officer Arao's statements to the ATF agents set forth in Exhibit A.

# I.   **Application of the Advisory Guidelines**

Post-*United States v. Booker*, 543 U.S. 220 (2005), the United States Sentencing Guidelines are merely advisory and are not only "*not mandatory*" on this Court but they are not presumed to be reasonable at sentencing. *Nelson v. United States*, 555 U.S. 350,

352 (2009) (*Emphasis* in original). As this Court is aware, "[t]he sentencing court must first calculate the guideline range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson*, 555 U.S. at 351. In fact, the advisory sentencing guidelines are only one factor for this Court to consider in sentencing. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).

The Probation Office, in paragraphs 34-52, recommends the following advisory calculation:

(1) Base Offense Level per U.S.S.G. 2K2.1(a)(7): 12

(2) Specific Offense Characteristics per USSG 2K2.1(b)(1): 6-level upward adjustment for the number of firearms.

(3) Chapter 3 Adjustment per U.S.S.G. 3B1.3: 2-level upward adjustment for Abuse of Position of Trust.

This recommended application results in a total offense level of 20 with zero criminal history points, placing Officer Arao in Criminal History Category I, rendering an advisory guideline sentencing range of 33 to 41 months.

## II.   Acceptance of Responsibility

Officer Arao respectfully objects to the recommendation in the Presentence Report that he not receive the Acceptance of Responsibility downward adjustment per U.S.S.G. § 3E1.1(b). (PSR ¶ 32.)

In fairness to the probation office, Officer Arao's argument is based upon the evidence known to the parties and Officer Arao's position throughout the litigation that the charges against him were unconstitutionally vague as well as unconstitutionally duplicitous. As such, the probation office's position that Officer Arao pled not guilty and "challenged the factual elements of his guilt at trial" is incorrect. This is one of those "rare" cases in that Officer Arao did not in any way contest the facts of the government's case or his conduct but merely went to trial to challenge the

government's ability to prove the essential element of willfulness beyond a reasonable doubt which, in this case, is truly a legal issue.

As set forth in Application Note 2 to U.S.S.G. § 3E1.1, "[c]onviction by trial … does not automatically preclude a defendant from consideration for [a reduction for acceptance of responsibility.] In rare situations, a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.* to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct.)" As set forth above, and as reflected in the Docket in this case, Officer Arao's legal challenges are well-documented and well-preserved. At his first opportunity, when interviewed by Agents Hart and Duncan in September of 2017, Officer Arao described without hesitation why and how he sold the off-roster handguns that are the subject of his conviction for dealing in firearms without a license. Exhibit A pp. 8-9. Importantly, Officer Arao, in accepting his responsibility for the conduct of selling these guns, truthfully described his partner's involvement in the Ronin Tactical business. Officer Arao made no effort to shift blame or to misleadingly implicate his partner in this conduct. Exhibit A p. 22. In recognition of the seriousness of his conduct, Officer Arao –by persuading his partner – immediately surrendered Ronin Tactical's Federal Firearm's License at the direction and request of the interviewing agents.

In the case of *United States v. Schultz*, 917 F. Supp. 1343 (N.D. Iowa 1996), a district court for the Northern District of Iowa held that the defendant's case presented one of the rare circumstances where the Sentencing Guidelines reduction for acceptance of responsibility was warranted despite the fact that the defendant exercised his right to jury trial. As with *Schultz,* Officer Arao's sentencing "demonstrates the painful and Hobsonian tension created by the United States Sentencing Guidelines between a criminal defendant's most precious constitutional right, the Sixth

6

Amendment right to trial by jury, and his or her efforts to obtain a reduction in sentence for 'acceptance of responsibility.'" *Id*.

Relying on *United States v. Miller*, 22 F.3d 1075 (11th Cir. 1994) and other similar cases, the *Schultz* court found that when a defendant truthfully admits the conduct comprising the offense, but acknowledges that he did not understand the legal consequences of that conduct, an acceptance reduction is appropriate. 917 F. Supp. at 1352-1354. Critically, in distinguishing other cases from *Schultz*, the district court noted the importance of admitting the "*conduct* that was the *factual* basis for the offense." *Id*. (*Emphasis* in original.) The *Schultz* court also noted that the defendant was forthcoming with investigators prior to trial. *Id*. at 1346. Moreover, the *Schultz* court addresses how acceptance of responsibility can apply even when the factual aspects of the requirement are inextricably intertwined with the legal question. *Id*. at 1355. Similarly, here, Officer Arao admitted all of the conduct that was the factual basis for the offense, was forthcoming with investigators, and his defense relied solely on the fact that he did not understand the legal consequences of that conduct.

The Fifth Circuit in *United States v. Fells*, 78 F.3d 168 (5th Cir. 1996) vacated a sentence and remanded the matter to the district court for resentencing. The Fifth Circuit found that defendant's venue challenge, where the defendant did not challenge the government's position that he was a felon in possession of a firearm, was precisely the type of "challenge to the applicability of a statute to his conduct" that Application Note 2 to U.S.S.G. § 3E1.1 contemplated. Like the appellant in *Fells*, Officer Arao has – from the start of this litigation – never challenged his sales of the relevant off-roster firearms through private party transfers and has only challenged the applicability of 18 U.S.C. § 922(a)(1)(A) to his conduct and the manner in which he was indicted. The Fifth Circuit in *Fells* directed the sentencing court on remand to consider as much as a three-level reduction for acceptance of responsibility "given due consideration to Comment 2 of the guidelines." 78 F.3d at 172.

As such, Officer Arao requests that this Court recognize his acceptance of responsibility, taking note of his constitutional challenges to the statutes in the indictment and the charges and the nature of the indictment as applied to him, and grant him a 3-level downward adjustment per U.S.S.G. § 3E1.1(b). With this, Officer Arao's total offense level is 17, which in Criminal History Category I recommends an advisory sentencing range of 24-30 months.

## 18 U.S.C. §3553 ANALYSIS

Probation Officer Cassulo, in paragraph 108 of the PSR identifies factors in mitigation from Officer Arao's history and characteristics that support a downward variance. Respectfully, the Probation Office indicates that these factors in mitigation "are not considered or may not be adequately considered by the guidelines." (PSR ¶ 108.)

To be safe and clear, counsel for Officer Arao asserts definitively that these arguments are in support of a downward variance, not a downward departure. The standard governing a variance under 18 U.S.C. § 3553(a) is legally and practically different from the heightened standard for departure under the mandatory guidelines pre-*Booker*, 543 U.S. 220. As set forth in *Gall v. United States*, 552 U.S. 38, 47 (2007), a court does not need to find "extraordinary circumstances" to find that a variance is warranted under one of the § 3553(a) factors.

18 U.S.C. § 3553(a) requires that a sentencing court impose a sentence that is "sufficient but not greater than necessary" to achieve the goals of sentencing. *Kimbrough v. United States*, 522 U.S. 85, 90 (2007). The sentencing factors in 18 U.S.C. § 3553(a)(2) must be viewed against the backdrop of the nature and circumstances of the offense as well as Officer Arao's personal history and characteristics. The sentencing factors, which must be analyzed against the parsimony clause of 18 U.S.C. § 3553(a) represent the major sentencing considerations of "retribution, deterrence, incapacitation, and rehabilitation." *Tapia v. United States*, 564 U.S. 319, 325 (2011). While the Guideline sentencing Range is a "starting point and

8

initial benchmark," the Guidelines are not the sole, nor even the first among the factors that Congress has commanded the court to apply pursuant to Section 3553(a). *Gall*, 552 U.S. at 49. Instead, in reaching a decision on what constitutes an appropriate sentence, the district court should "consider all relevant factors" and "construct a sentence that is *minimally sufficient* to achieve the broad goals of sentencing." *United States v. Rodriquez*, 527 F.3d 221, 228 (1st Cir. 2008) (*emphasis* supplied.)

## I. Nature and Circumstances of the Offense

Officer Arao engaged in the sale of off-roster handguns in a manner dictated by California and federal law, that, in his opinion, was in full compliance with those laws. As the Court heard at trial, and as set forth in Exhibit A, Officer Arao made sure that each one of the transfers and sales conducted by and through Ronin Tactical and Officer Arao properly identified the recipient of the off-roster handgun. Officer Arao never made any effort whatsoever to hide his identify, to circumvent the mandated waiting period designed to give the California and federal authorities the time necessary to verify the background of the purchaser, and always made certain before the transfer took place that the purchaser had properly obtained his firearm safety card. These actions by Officer Arao support the government's decision not to charge him with the straw purchase crimes or the sales to prohibited persons crimes that were brought against the co-defendants in this indictment. It must be noted that in California, a private party transfer requires as much or more vetting of the purchasers and documentation of that sale as any sale made by a federally licensed firearm dealer. There is nothing nefarious about the private party sales in which Officer Arao engaged. It is merely the number of off-roster firearms that were otherwise lawfully sold and documented that triggers the application of 18 U.S.C. § 922(a)(1)(A). The only way that Officer Arao can be criminally responsible for the sales that he made for profit is if the government proves beyond a reasonable doubt that he acted willfully, as defined in *Bryan*.

9

Attached to this memorandum as Exhibit A is the transcript of Officer Arao's interview in September 2017 with Agents Hart and Duncan. This interview of Officer Arao took place approximately two months after Agent Duncan, in an undercover capacity, attempted to purchase an off-roster handgun from Officer Arao. As the interview makes clear, the reason for the Agent's follow up with Officer Arao was that post-undercover attempt, the Agents did not believe that Officer Arao knew that his conduct was unlawful. *See* Exhibit A pp. 41-42. As presented to this Court, the sale was not completed because Officer Arao insisted, as he did with every single sale and transfer conducted by Ronin Tactical, that he could not consummate the sale until the purchaser, Agent Duncan, pass the background check and return with the required proof of residency and successful completion of the firearm safety test – all mandated by California law.

Unlike other defendants who are referenced in this memorandum in the 18 U.S.C. § 3553(a)(6) analysis, there was no evidence presented to these agents either from the audit or this undercover attempted purchase that Officer Arao was knowingly and intentionally violating any firearms law, particularly selling to prohibited persons or making efforts to sell an unregistered handgun or a gun sale to a purchaser who had not been properly vetted by both California and federal authorities.

Both Agents told Officer Arao that the reason for their meeting in September 2017 was to get further information on how Officer Arao and Ronin Tactical were conducting business. The transcript sets forth a conversation where it appears that all three participants labored under a misunderstanding of both federal and California gun laws. For instance, the Agents repeatedly informed Officer Arao that, despite the fact that Ronin Tactical, where Officer Arao was president, had an FFL, he needed a license as an individual to properly sell the relevant off-roster handguns. Officer Arao told the Agents that he had a license, mistakenly believing that Ronin Tactical's license covered him as an individual. Exhibit A p. 9. The Agents also informed Officer Arao that the private party transfers between Officer Arao and the buyers likely were misdemeanors

but the Agents also indicated that they were unfamiliar with California law. Importantly, as argued throughout this entire litigation, the ATF, in Trial Exhibit 185, misstates the law concerning these transfers of off-roster handguns, and there was nothing illegal at all with Officer Arao's individual private party transfers. Again, the only illegality is the number of sales and transfers by Officer Arao done for profit.

Given the above, the evidence set forth in Exhibit A sheds light on the nature and circumstances of this offense, particularly with respect to examining factors such as respect for the law, future dangerousness, and unwarranted disparity. At page 41 of the transcript, when Agent Duncan is discussing his unsuccessful undercover purchase, the following back and forth occurred:

Agent Duncan: "[a]fter I came in here, when I went back, I said, 'you know what? My opinion on this is that I don't think he thinks it's that big of a deal. I don't think he even realizes …'"

Officer Arao: "I didn't even know. I, I thought it was … 'cause I was, I guess I was so focused on the freakin' California part -"

Agent Duncan: "and that's why I'm – yeah."

Officer Arao: "where the roster didn't matter, and then I was just able to purchase them and do that shit. Otherwise I would've never done this shit."

Agent Duncan: "No, yeah –"

Officer Arao: "and I didn't even know"

Agent Duncan: "And that's why I went, and you know, I just, I told them that. And, uh, that I didn't, I didn't think you were, you know, uh like I said, didn't think it was that big of a deal. Or just didn't even know, so."

Officer Arao: "yeah."

Agent Duncan: "And that's why we wanted to keep it like this. Um, I can tell you there's – it – there's probably a bunch of – I'm not – you know, I don't keep up to date with all the different CAL DOJ things but I'm sure there's a bunch of CAL DOJ things too. I, I know that there's some – it, it looks like, uh, there's probably some misdemeanors involved every time you do the whole, these private party transfer things."

Officer Arao: "Really?"

Agent Duncan: "Um. So, it's just things that you have to really careful with. And, uh, I just think that's – that, I think that it would be the beast route for you, is just to surrender your license."

11

Exhibit A p. 41-42.

In that same transcript, where Officer Arao and Agents Duncan and Hart were discussing the private party transfers of the off-roster handguns, Agents Duncan and Hart discuss Officer Arao's belief that because he was compliant with California law his conduct was legal. In that same discussion, the following occurred:

> Agent Hart: "so that's where, that's where the trouble is at. Do you understand? Or do you want me to …"
>
> Officer Arao: "Yeah. Kind of …"
>
> Agent Hart: "It's kind of hard. I, I – our general council is the one that – this, this is well above us. Law enforcement agencies all the way –"
>
> Officer Arao: "Yeah. All right."
>
> Agent Hart: "Our, our division, our general council in DC …"
>
> Officer Arao: "Okay."
>
> Agent Hart: "Have gone through this. And that's the, that's the"
>
> Officer Arao: "That's – okay. So that's what the federal laws are saying?"
>
> Agent Hart: "Yes."

Exhibit A p. 20.[2]

Moreover, in corroboration of the government's decision to not charge Officer Arao with engaging in straw purchases or selling to prohibited persons, when asked about whether or not Officer Arao had any suspicious about any of his purchasers, he said the following: "generally, I, I want to get a feel for the person who owns, is getting a gun … 'cause you know, I'm, I'm working lawfully. I'm not trying to get, hand over some to somebody that I don't really trust." Exhibit A at p. 13.

Finally, it was never established why these handguns were off-roster. The government agreed at trial that this issue was irrelevant, but the reason why a weapon is off-roster in California is either because it does not pass California safety and

---

[2] At trial, Agent Hart testified that he did not lie to Officer Arao in that September 2017 interview. *See* Jury Trial Day 3 at pp.183-184.

functionality tests or the costs of those tests, given the small volume of sales of these handguns, is too prohibitive.

## II.    Personal History and Characteristics

In PSR paragraphs 61 through 84, the probation office details Officer Arao's commendable personal history and characteristics. Attached hereto as Exhibit B are heartfelt letters from fellow police officer and friend Raul A. Alarcon and Officer Arao's parents Yuji and Miyako Arao. Officer Alarcon and Officer Arao's parents describe what a decent, hard-working police officer and father Officer Arao is. His parents detail the pain that Officer Arao has suffered from this prosecution and conviction, which caused him to lose his wife and career.

Officer Arao, in Exhibit A, tells the ATF agents how he would never have sold these firearms had he known that it would jeopardize his career. Exhibit A, p. 42, 44. Officer Arao was an extraordinary police officer for Gardena Police. In paragraph 83 of the PSR, his awards and commendations are outlined. These award and commendations come from a variety and sources, such as the FBI, the California Senate, the Los Angeles County Sheriff's Department, the Los Angeles County District Attorney's Office, and the United States Congress, among others. (PSR ¶ 83.) They accurately reflect a man who dedicated his life to protecting and serving all of us. It is a terrible shame that as a result of this conviction all of that is gone.

It is these characteristics of Officer Arao as well as his family's circumstance and community support that the probation office relies upon in recommending a downward variance. The probation office also identifies the fact that he has suffered deeply by losing his cherished position in law enforcement as further reason for a downward variance. These history and characteristics, in combination with the nature and circumstances of the offense, when applied to the parsimony clause of 18 U.S.C. § 3553(a), when sought to promote the factors of sentencing, call for a probationary non-custodial sentence.

13

### III.     Promote Respect for the Law

The requirement that a sentence promote respect for the law and provide just punishment is tied directly to who Officer Arao is per the mandate of 18 U.S.C. § 3553(A)(1). Clearly, an offense is less serious and therefore deserving of a reduced punishment if the defendant's motives were not reprehensible. Where, like in this case, given Officer Arao's commitment to abide by the federal and California laws dedicated to keeping firearms out of the hands of the wrong people, as well as his, and the Agents' misunderstanding, due to the complexity, of the interplay between state and federal laws regarding private party transfers, credence must be given to Officer Arao's statement that, had he known there was any illegality, he never would have engaged in these sales and never would have jeopardized his family or his beloved law enforcement career. Because of this, it is not necessary to incarcerate him to promote respect for the law or to provide just punishment. As the United States Supreme Court said in *Gall*, approving the district court's conclusion, "a sentence of imprisonment may work to promote not respect but derision of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." 552 U.S. at 54. To sentence Office Arao to prison would, as the Supreme Court noted, show disrespect for the law and would be unjustifiably and unreasonably harsh.

### IV.     Protecting the Public

18 U.S.C. § 3553(a)(2)(C) requires this Court to consider the need for the sentence imposed to protect the public from further crimes of Officer Arao. The need to protect the public from further crimes of Officer Arao is easily measured. Where it is obvious that no incarceration is needed for public protection, sentencing judges should impose probation or below guideline sentences in light of this purpose. *See United States v. Hanson*, 561 F. Supp. 2d 1004, 1010 (E.D. Wis. 2008).

The Sentencing Commission has engaged in empirical studies concerning what factors affect recidivism generally. These factors include age, employment, education,

family support, the nonviolent nature of the offence, and whether this offence represents the first conviction. *See* U.S. SENTENCING COMM'N, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES (May 2004). The Commission in its study found that "recidivism rates decline relatively consistently as age increases [and defendants] over the age of 40 … exhibit markedly lower rates of recidivism in comparison to younger defendants." Officer Arao is 49 years-old with absolutely no criminal history.

It is hard to imagine the need to punish Officer Arao in any way to protect the public from further crimes of his. The nature of this offense, his immediate surrender of Ronin Tactical's FFL, his distinguished and spotless career as a law enforcement officer, the technical "non-nefarious" nature and circumstances of the crime, and his spontaneous exclamation that, had he known that there was anything illegal about this conduct, he never would have done it, rings absolutely true when viewed against who he is. Any incarceration, would be "greater than necessary" to protect the public from the nonexistent possibility that Officer Arao would commit any further crimes.

## V.   **Deterrence**

18 U.S.C. § 3553(a)(2)(B) requires that the Court consider the need for the sentence imposed to afford adequate deterrence to criminal conduct. While this Court must consider both general and individual deterrence, two very important examinations of the concepts must be considered. First, the anecdotal notion that longer sentences have a greater general deterrent effect is belied by empirical and academic findings. The United States Sentencing Commission has found that "[t]here is no correlation between recidivism and Guidelines' offense level. Whether an offender has a low or high Guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected. The Guidelines' offense level is not intended or designed to predict recidivism." *See* U.S. SENTENCING COMM'N, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL

15

SENTENCING GUIDELINES, at 15 (2004). To sentence Officer Arao to a term of imprisonment to deter the community is unnecessary and wrong.

The second, and more relevant consideration deals with the tension between general and individual deterrence. In a case like this, where Officer Arao poses no risk of reoffending, it is not right, given the individualized nature of sentencing, to imprison him to set an example for others. As the district court stated in *United State v. Cole*, 622 F. Supp. 2d 632 (N.D. Ohio 2008), "[g]eneral deterrence uses a utilitarian calculation, subjecting defendants to longer periods of incarceration than retribution requires to 'send a message' to other potential offenders. Inherent in this general deterrence calculation is a tension between individual dignity and societal good, begging the question: Is it ethical to impose a greater-than necessary punishment upon an individual criminal defendant to protect society at large?" Officer Arao does not need to be incarcerated. As set forth in the nature and circumstances of the offense, and particularly when compared to other defendants as detailed in the section of this memorandum concerning unwarranted disparity, his repeated private party transfer sales appear to be the product of his, and many others', lack of understanding of the complex firearm laws surrounding private party transfers and federal licensing requirements. To make an example out of him, based upon a misguided notion that others would not commit firearm crimes is contrary to the individualized sentencing requirements resurrected post-*Booker* and calls into question the ethics of this type of sentencing as identified by the district court in *Cole*.

## VI.   **Unwarranted Sentencing Disparity**

18 U.S.C. § 3553(a)(6) states that one of the factors in sentencing to which the parsimony clause applies is Officer Arao's sentence must be one that will "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Three law enforcement officers have been recently sentenced for, among other things, violations of 18 U.S.C. § 922(a)(1)(A), selling firearms without a license. Despite the fact that each one of these defendants engaged

16

in behavior that is qualitatively different in its criminality, each one received a sentence that is significantly lower than the advisory guideline range set forth in Officer Arao's Presentence Report.

### A. *United States v. Gourdikian*

In the case of *United States v. Vasken Gourdikian*, 18-cr-104-SVW, Judge Wilson sentenced Officer Gourdikian to a term of 12 months and 1 day in custody. Importantly, Officer Gourdikian was charged with and held accountable for violations of 18 U.S.C. § 922(a)(1)(A), dealing without a license, and making a false statement during the purchase of a firearm in violation of 18 U.S.C. § 922(a)(6). Notably, Gourdikian received an 8-level upward adjustment for having sold more than 100 firearms and, unlike Officer Arao, Gourdikian made it clear through a series of messages with a Calguns.net user that he was fully aware of the federal laws that he violated. (Doc. 35 at 5-6.) Interestingly, the government correctly uses Gourdikian's statements as evidence of his willfulness and draws the critical distinction between his willfulness and the mere reselling of off-roster firearms. The government concedes this critical distinction, stating that "the government does not content that the defendant violated the law by reselling an off roster firearm. As defendant was not a licensed FFL, he could purchase off roster firearms and sell them directly to the public as a third-party transfer. Defendant could lawfully purchase and lawfully sell an off roster firearm." (Doc. 35 at p. 6-7.) To sentence Officer Arao to a term greater than Gourdikian's, given the above, would be an unjustified and unwarranted disparity in sentence rendering Officer Arao's sentence unreasonable.

### B. *United States v. McGowan*

In the case of *United States v. McGowan*, 12-cr-00207-TLN, the district court sentenced to Sheriff McGowan to a term of 18-months imprisonment. Again, like Gourdikian, McGowan had engaged in criminal conduct far more egregious than that of Officer Arao. McGowan, in addition to selling firearms without a license, assembled a high-capacity 25-round magazine which he then sold to an undercover agent where he

17

told the undercover agent that he sale was unlawful, which it was, and he instructed that undercover agent to "stick [the magazine] in [his] car right now" to avoid detection. (*Gourdikian* Doc. 39 at 12-13.) McGowan additionally sold a .50 caliber firearm, and during the transaction to the undercover agent, McGowan clearly and accurately explained to the undercover agent that it is a violation of federal law to engage in the business of selling firearms. *Id*. McGowan also lied to the police and was not cooperative during the investigation. Again, Officer Arao's conduct was entirely different from McGowan's. On top of the fact that Officer Arao made every effort to comply with the federal and California laws to protect the public, he was immediately cooperative with the ATF agents – he immediately surrendered Ronin Tactical's FFL. For obvious reasons, any sentence that is close to McGowan's would violate both 18 U.S.C. § 3553(a)(6) and, most importantly, the sentencing mandate.

        C. *United States v. Xu*

        Lastly, in the case of *United States v. Wei Xu*, 19-cr-00093-RGK, Judge Klausner imposed an 18-month sentence. Watch Commander Xu was charged with false statements in violation of 18 U.S.C. § 1001(a), dealing firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A), possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d), and willfully attempting to evade tax in violation of 26 U.S.C. § 7201. As with Gourdikian and McGowan, Xu's conduct was significantly different and more egregious than Officer Arao's. As a Watch Commander for Customs and Border Patrol, Xu was required to file statements with the government that were directly related to obvious security concerns about his foreign financial interests and contacts. Xu lied about that. He also possessed a firearm that should have been, but was not, registered pursuant to the National Firearm Act and he evaded $197,000 in taxes by lying on his federal returns. Xu's base offense level for possessing the unregistered firearms under U.S.S.G. § 2K2.1(a)(5) was 18. This base offense level, which is 50% higher than Officer Arao's, represents at a minimum, the Sentencing Commission's belief that his conduct was that much more serious than Officer Arao's. It goes without

18

saying that lying to superiors in a security questionnaire about foreign contacts and finances is dangerous conduct when you are a Watch Commander for Customs and Border Patrol. To restate the obvious, Officer Arao did absolutely nothing like this. In fact, every sale that he facilitated through Ronin Tactical complied with the federal and California laws designed to identify the purchaser, vet them for security concerns, and ensure that possession of a handgun is traceable. His conduct was the exact opposite of Xu's.

It is understandable that Xu and McGowan needed to be punished for their efforts to knowingly and willfully break the law and jeopardize the safety of the public. Gourdikian's conduct is different in that he knowingly violated the law as well, and proceeded to lie about it. Officer Arao does not need to be incarcerated to address the concerns expressed in the factors of sentencing. He is different from these defendants. Any incarceration would amount to an unwarranted disparity and would be unreasonable.

**CONCLUSION**

For the reasons set forth above, as well as those set forth in the record of this case, counsel for Officer Arao respectfully requests that this Court impose one year of probation with an appropriate amount of community service.

Respectfully submitted,

DATED:  February 18, 2020          By  */s/ Edward M. Robinson*
                                   Edward M. Robinson
                                   Rachael A. Robinson
                                   Lisa Houlé

                                   Attorneys for Defendant

19