NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
KATHERINE A. RYKKEN (Cal. Bar No. 267196)
Assistant United States Attorney
Major Frauds Section
VERONICA DRAGALIN (Cal. Bar No. 281370)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0647
    Facsimile: (213) 894-0141
    E-mail:   katherine.rykken@usdoj.gov
               veronica.dragalin@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>          v.<br><br>EDWARD ARAO,<br><br>       Defendant. | No. CR 18-121(A)-SJO-2<br><br>GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT EDWARD ARAO<br><br>Hearing Date: March 2, 2020<br>Hearing Time: 9:00 a.m.<br>Location:    Courtroom of the Hon. S. James Otero |
|---|---|

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Katherine A. Rykken and Veronica Dragalin hereby files its Sentencing Position with respect to defendant EDWARD ARAO.

//

//

//

//

This Position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 18, 2020   Respectfully submitted,

NICOLA T. HANNA
Acting United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

*/s/ Katherine A. Rykken*
KATHERINE A. RYKKEN
VERONICA DRAGALIN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

On November 20, 2019, defendant Edward Arao ("defendant" or "Arao") was found guilty by jury trial on two counts, in a case that charged defendant with conspiracy to engage in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 371 (count one) and engaging in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1) (count three).  On January 27, 2020, the United States Probation Office ("USPO") disclosed its Presentence Investigation Report ("PSR") but did not disclose a Sentencing Recommendation Letter in this matter. (Dkt. 316.)  The PSR calculated a total offense level of 20 and a Criminal History Category I, resulting in a Guideline Sentence range of 33 to 41 months.  The government concurs with the PSR calculations.

The government recommends that the Court impose the following low-end sentence: (a) 33 months of imprisonment; (b) three years of supervised release; and (c) a special assessment of $200.  The government submits that such a sentence would be sufficient, but not greater than necessary, to meet the sentencing goals set forth in 18 U.S.C. § 3553(a).

**II.  FACTUAL BACKGROUND**

Arao, who was a police officer with the Gardena Police Department, was the CEO of a corporation, Ronin Tactical Group, which had a federal license to deal in firearms.  (PSR ¶¶ 16, 19.)  Neither Arao nor his co-defendant Carlos Fernandez ("Fernandez") had a license to deal firearms in their individual capacity.  (Id. ¶ 19.)  From the summer of 2015 through the summer of 2017, Arao worked in

concert with Fernandez to purchase and sell approximately 87 firearms, using their status as police officers to facilitate the purchase and sale of rare and valuable firearms.  (Id. ¶ 20.)  Fernandez advertised and sold firearms through his own Instagram account, @the38superman, with sales often finalized through Ronin Tactical, the FFL managed by Arao.  (Id. ¶ 21.)  Similarly, Arao purchased firearms for himself through Ronin Tactical and then resold them to private individuals, sometimes advertising them on @the38superman.  (Id. ¶ 19.)  Arao personally resold 41 firearms, sometimes the same day he certified on ATF Form 4473 that he was purchasing the firearms for himself.  (See Trial Ex. 16.)  Moreover, Arao appeared with Fernandez at gun shows, marketing Ronin Tactical and @the38superman as business partners.  (See PSR ¶ 23.)  For this conduct, a jury found Arao guilty of conspiring to engage in and engaging in the business of dealing firearms without a license.

    Of the firearms that Arao sold, four were recovered at crime scenes involving drug trafficking.  (Id. ¶ 28.)  Arao sold three guns to co-defendant Rafael Camacho Maravilla ("Maravilla") who in turn provided those guns to Oscar Camacho Jr. ("Camacho Jr."), the latter of whom is a felon.  (Id.)  Those three firearms were recovered at the Camacho residence, along with seven other firearms, methamphetamine, cocaine, heroin, and other indicia of drug trafficking.  (Id.)  A fourth firearm that Arao sold was later recovered in a drug investigation of co-defendant Mario Ramirez.  (Id. ¶ 29.)

    In addition, when the ATF audited Ronin Tactical, it found that Arao did not operate Ronin Tactical in compliance with federal

///

regulations. (Id. ¶ 26.) For example, Arao failed to properly report multiple sales and failed to properly complete ATF Form 4473. (Id.)

**III. THE PRESENTENCE INVESTIGATION REPORT AND GUIDELINES CALCULATIONS**

On January 27, 2020, the USPO disclosed its PSR.[1] (Dkt. 316.) The PSR calculated a total offense level of 20, starting with a base offense level 12 pursuant to U.S.S.G. § 2K2.1(a)(7), a 6-level enhancement for the number of firearms under U.S.S.G. § 2K2.1(b)(1)(C), and a 2-level enhancement for abuse of trust under U.S.S.G. § 3B1.3. (PSR ¶¶ 38-48.)

The government concurs with this calculation.[2] With respect to the abuse of trust enhancement, U.S.S.G. § 3B1.3 provides a two-level enhancement "[i]f the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense." The Ninth Circuit has recognized that "police officers are accorded public trust to enforce the law. The public, including fellow law enforcement agents, expect

---

[1] Defendant's sentencing position, which was filed on February 18, 2020, included several belated, and consequently waived, objections to the PSR. (See Dkt. 336 at 3-4.) The deadline for filing objections to the PSR was February 9, 2020, which is 14 days after the USPO filed the PSR on January 27, 2020.

[2] Defendant's position, see Dkt. 336 at 5-8, that he is entitled to 3-point reduction based on acceptance of responsibility under U.S.S.G. § 3E1.1(b) is unsupported by the law. Defendant went to trial, contested the evidence, and argued (and continues to argue) that he was not culpable because he lacked the requisite mental state. The Ninth Circuit has rejected any such argument. See, e.g., United States v. Burrows, 36 F.3d 875, 883 (9th Cir. 1994) ("The fact that [defendant] freely admitted committing the actus reus of the crime does not change the fact that he maintained even after trial that he had a complete defense based on his purported lack of mens rea. [Defendant's] position is incompatible with acceptance of responsibility.".)

3

that police officers will not violate the laws they are charged with enforcing." United States v. Foreman, 926 F.2d 792, 796 (9th Cir. 1990) (holding that "district court correctly concluded that Foreman's use of her position as a police officer constituted an abuse of a position of public trust" under 3B1.3); see also United States v. Hale, 685 F.3d 522, 546, (5th Cir. 2012) ("Police officers hold positions of public trust."); United States v. Rehal, 940 F.2d 1, 5 (1st Cir. 1991) ("Needless to say, a police officer occupies a position of public trust, and the commission of a crime by a police officer constitutes an abuse of that trust.").

The Ninth Circuit has repeatedly upheld the abuse of trust enhancement as applied to law enforcement officers committing crimes. United States v. Duran, 15 F.3d 131, 132 (9th Cir. 1994) (upholding 3B1.3 enhancement where defendant was a sheriff's deputy with the LASD accused of stealing money seized in connection with the arrest of suspected drug dealers and money launderers); see also United States v. Pascucci, 943 F.2d 1032, 1037 (9th Cir. 1991) (upholding abuse of trust enhancement for U.S. Marshal convicted of attempted extortion). Courts have also recognized "that 3B1.3 is applicable when an officer uses special knowledge, access, or both, that has been obtained by virtue of his or her status as an officer to facilitate substantially the offenses in question." United States v. Williamson, 53 F.3d 1500, 1525, (10th Cir. 1995) (citations omitted).

Here, as supported by evidence introduced at trial, defendant's status as a law enforcement officer was essential to his illegal gun selling scheme. The reason defendant was able to make money by repeatedly purchasing and then reselling guns at a profit is because of California's restrictions on "off-Roster" firearms. In

4

California, licensed dealers can only sell off-Roster firearms to law enforcement officers to be used in the discharge of their duties. For that reason, these firearms are difficult to get and therefore expensive in California.[3]  For these reasons, the abuse of trust enhancement is appropriate in this case.

With respect to criminal history, the USPO concluded that defendant has zero criminal history points, resulting in a Criminal History Category of I.  (PSR ¶ 57.)  The government concurs with this calculation.

With a total offense level of 20 and a Criminal History Category I, the Guidelines Sentence range is 33 to 41 months.  (PSR ¶ 94.)

**IV.   SENTENCING RECOMMENDATION**

The government respectfully requests that the Court adopt the factual findings and criminal history calculation of the PSR in this matter, and the additional information in this sentencing position. In accordance with the factors listed in 18 U.S.C. § 3553(a), the government recommends that the Court impose the following low-end sentence: (a) 33 months of imprisonment; (b) three years of supervised release; and (c) a special assessment of $200.

**A.   Nature and Circumstances of the Offense**

The Gun Control Act requires a person to be a licensed dealer before engaging in the business of dealing in firearms.  18 U.S.C. § 922(a).  A licensed dealer is required to maintain accurate records of all firearms received and sold, 18 U.S.C. § 923(g), and may not

---

[3] Arao's co-defendant Fernandez repeatedly bragged to people that he could use his law enforcement status as a police officer with the Gardena Police Department to buy these types of guns, including from out of state, for a cheaper price and sell them at a higher price to non-law enforcement individuals.

5

sell firearms to prohibited classes of persons such as minors and convicted felons. 18 U.S.C. §§ 922(b) & (d). "It is through such controls that Congress has sought to curtail criminal activities in which firearms are used and to be able to more readily trace firearms which have been used unlawfully." United States v. Jackson, 352 F. Supp. 672, 677 (S.D. Ohio 1972), aff'd, 480 F.2d 927 (6th Cir. 1973). At the same time, "Congress did not intend to place unnecessary restrictions on law-abiding citizens." Id.

Defendant's conduct is behavior that facilitates the use of firearms in criminal activities. Defendant and his co-conspirator put 87 firearms, the great majority of which were off-Roster firearms, in the hands of people who could not lawfully purchase those guns from licensed dealers in California. Defendant ignored the dangerous nature of his conduct, in flagrant disregard of his duties and oath as a law enforcement officer, and did so because he was motivated to make money. Furthermore, four of the firearms that Arao sold were recovered from drug trafficking crime scenes. (PSR ¶ 28.) Although fortunately no violence resulted in this case, these circumstances should be taken into account in fashioning an appropriate sentence. The offense conduct warrants the recommended prison sentence.

**B.   History and Characteristics of Defendant**

By all accounts, defendant was a law-abiding citizen and diligent police officer before this offense. (PSR ¶ 83.) Defendant appears to have been raised in a loving and happy family. His father was a vice president of a bank and his mother an interpreter. (Id. ¶ 64.) Unlike many defendants the Court sees, Arao had a close relationship with his family and siblings and,

6

before this offense, appears to have had a stable marriage, employment, and residence. (Id. ¶ 66.) As a police officer, Arao knew and understood that breaking the law has consequences. Defendant is well-educated, having received a bachelor's degree from Northeastern University. (Id. ¶ 79.) Arao does not suffer from mental health or substance abuse problems. (Id. ¶¶ 73-75.) Before making the decision to sell guns without a license, defendant's life appears to have been quite normal, if not prosperous. Defendant simply has no excuse for his conduct other than greed. Accordingly, defendant's history and characteristics warrant the recommended sentence.

### C. Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Afford Adequate Deterrence to Criminal Conduct

The sentence must satisfy the need for punishment or rehabilitation, as well as society's need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence. There is a strong need for the sentence to deter defendant and others from committing future crimes. 18 U.S.C. §3553(a)(2)(B) (the sentence imposed is required "to afford adequate deterrence to criminal conduct," which encompasses both specific and general deterrence). A sentence that provides for specific and general deterrence is necessary. Despite being a law enforcement officer, defendant was willing to illegally deal in firearms. A 33-month term of imprisonment will provide specific deterrence by reminding him that obeying the law is more important than lining his pockets.

The seriousness of this offense and defendant's conduct evidencing a lack of respect for the law are aggravating factors. A

7

custodial sentence is warranted in light of the need to deter individuals like defendant who unlawfully deal in firearms.  The recommended sentence would provide both specific and general deterrence and just punishment for the offense in this case.

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court impose the following sentence: (a) 33 months of imprisonment; (b) three years of supervised release; and (c) a special assessment of $200.