```
 1                    UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3          HONORABLE PHILIP S. GUTIERREZ, U.S. DISTRICT JUDGE

 4

 5   UNITED STATES OF AMERICA,          )
                                        )
 6                    Plaintiff,        ) CASE NO.
                                        ) CR 18-121-PSG-2
 7          vs.                         )
                                        )
 8   EDWARD YASUSHIRO ARAO,             )
                                        )
 9                    Defendant.        )
     _____)
10

11

12

13

14             REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                  TUESDAY, JULY 13, 2021

16                        9:57 A.M.

17                  LOS ANGELES, CALIFORNIA

18

19

20

21
     _____
22
                    MAREA WOOLRICH, CSR 12698, CCRR
23             FEDERAL OFFICIAL COURT REPORTER
               350 WEST FIRST STREET, SUITE 4311
24              LOS ANGELES, CALIFORNIA 90012
                    mareawoolrich@aol.com
25
```

1          **APPEARANCES OF COUNSEL:**

2

3   **FOR PLAINTIFF:**

4       OFFICE OF THE UNITED STATES ATTORNEY
        BY:  VERONICA DRAGALIN
5       BY:  CASSIE PALMER
        Assistant United States Attorneys
6       312 North Spring Street
        Los Angeles, California 90012
7

8
    **FOR DEFENDANT:**
9
        LAW OFFICE OF EDWARD M. ROBINSON
10      BY:  EDWARD M. ROBINSON
        BY:  RACHAEL ROBINSON
11      BY:  LISA HOULE
        21515 Hawthorne Boulevard, Suite 730
12      Torrance, CA 90503

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

```
 1                LOS ANGELES, CALIFORNIA; TUESDAY, JULY 13, 2021

 2                            9:57 A.M.

 3                             -oOo-

 4

 5           THE COURTROOM DEPUTY:  Calling Criminal 18-121-B,

 6    United States of America versus Edward Arao.

 7           Counsel, please state your appearances.

 8           MS. DRAGALIN:  Good morning, Your Honor.  Veronica

 9    Dragalin on behalf of the United States.

10           MS. PALMER:  Good morning, Your Honor.  Cassie

11    Palmer on behalf of the United States.

12           THE COURT:  Good morning.

13           MR. ROBINSON:  Good morning, Your Honor.  Edward

14    Robinson.  I'm accompanied by Miss Lisa Houle and Miss Rachael

15    Robinson.  Good morning.

16           THE COURT:  Good morning.

17           MR. ROBINSON:  And there's a waiver on file for

18    Mr. Arao.

19           THE COURT:  Thank you.

20           I wanted to deal with first the motion to dismiss

21    Counts 3, 4, and 5.

22           MR. ROBINSON:  Thank you, Your Honor.  Miss Robinson

23    is going to handle those matters.

24           THE COURT:  I want to hear from -- I think, from my

25    perspective, that the defense has raised the -- has presented
```

```
 1    information that there is a presumption of vindictiveness.  So

 2    I'd like to hear from the government first with regard to its

 3    response to the presumption of vindictiveness.

 4              MR. ROBINSON:  Thank you, Your Honor.

 5              MS. DRAGALIN:  Your Honor, should I approach the

 6    podium or do it from --

 7              THE COURT:  The podium.  Thank you.

 8              MS. DRAGALIN:  Thank you.  Thank you, Your Honor.

 9              So for the reasons stated in the government's

10    opposition, the reason why the superseding indictment -- the

11    first superseding indictment was superceded was to adjust based

12    on the Court's rulings during the first trial.  And that

13    included a ruling precluding the government from arguing

14    regarding, quote, uncharged conduct, since there was an

15    objection made on Rule 404(b) grounds during the government's

16    rebuttal argument which the Court sustained.

17              And so what that resulted in is that the government

18    was precluded from arguing at the first trial that the

19    defendant's making false statements in an ATF form was evidence

20    of his knowledge that he was violating the law.  So as a

21    response to that Court ruling, the government at -- and the

22    government informed defense counsel that it would do so --

23    superceded the indictment to add three counts of that

24    substantive crime.

25              And the three counts flow from charged transactions
```

1    that were already charged from the very beginning of this

2    case.

3              THE COURT:  Right.  That's why the presumption is

4    met; right?  It's the same set of facts.  It's one of the

5    factors.  So you concede it's the same set of facts that were

6    present at the trial?

7              MS. DRAGALIN:  It is, Your Honor, yes.  For that

8    reason, the defendant's been on notice about that conduct being

9    charged.  It was charged in the original indictment.  And all

10   of the facts underlying the additional counts were already

11   considered as part of the relevant conduct for the defendant

12   during the first trial.

13             And so the sentencing exposure here that we are

14   talking about, the added charges did not actually, practically

15   speaking, realistically speaking --

16             THE COURT:  Let's assume -- I mean, so you say that

17   in your papers.  What authority do you have?  The cases say I

18   look at the maximum sentence.  Do you have any case that says

19   that I should look at the sentencing guidelines?  I don't think

20   there is a case that supports your position.

21             MS. DRAGALIN:  On the point of the presumption,

22   Your Honor, setting that aside, in terms of rebutting the

23   government's basis for actually superseding --

24             THE COURT:  You are saying it's not vindictive

25   because let's wink and nod and say you are going to apply

1  the -- the government is going to ask for a guideline sentence.

2  And even though I have discretion, I'm going to follow that and

3  impose this whatever the range is in the sentencing guidelines.

4  But that's not -- that's not what the cases say to do.  They

5  say to look at the maximum sentence; right?

6          MS. DRAGALIN:  The maximum sentence, yes.  But what

7  the government -- what the --

8          THE COURT:  Why do you make that argument if there's

9  no authority?  I don't understand.  There's no authority -- I

10 mean, when you look at the punishment aspect of the analysis,

11 you make the argument that I should be looking at the

12 sentencing guidelines, but you don't cite a single case.

13         MS. DRAGALIN:  We do site cases, Your Honor, that

14 talk about the fact that it is the sentence to be imposed that

15 matters --

16         THE COURT:  You don't know what the sentence to be

17 imposed that matters.  The sentence to be imposed that matters

18 could be the statutory maximum of 25 years instead of 10.

19         MS. DRAGALIN:  It could be by the application of the

20 statutory maximum, Your Honor.  But in this particular case,

21 the relevant conduct has been the same from the first trial to

22 this trial.  The more culpable codefendant has been sentenced

23 to a term of 36 months imprisonment which is well below the

24 statutory maximum of a single count.  And for all those

25 reasons, the practical effect of the superseding charges is not

1     to actually punish this defendant.

2            And in terms of the standard for vindictive

3     prosecution as the Supreme Court has set forth and as the

4     Ninth Circuit has emphasized as well, the additional charges

5     must have been brought solely to punish the defendant for

6     exercising a Constitutional or statutory right.  And in this

7     particular --

8            THE COURT:  That's not the analysis.  That's in the

9     Seventh Circuit, isn't it, in the DC Circuit?  That's not the

10     Ninth Circuit law.

11            MS. DRAGALIN:  It is the Ninth Circuit, Your Honor.

12            THE COURT:  What case?

13            MS. DRAGALIN:  *Gamez* is the case that --

14            THE COURT:  *Gamez*?

15            MS. DRAGALIN:  Yes.

16            THE COURT:  What was the procedural posture in

17     *Gamez*?

18            MS. DRAGALIN:  Just one moment, Your Honor.

19            THE COURT:  Was it post trial, or was it pretrial?

20            MS. DRAGALIN:  The cites, Your Honor, are

21     *United States v. Goodwin*, the Supreme Court case, and then the

22     *Gamez-Orduño* is the Ninth Circuit case cited on page 9 of the

23     government's opposition which I quote.  "A prosecutor violates

24     due process when he seeks additional charges solely to punish a

25     defendant for exercising a Constitutional or statutory right."

1          THE COURT:  Is that a pretrial case or a post trial?

2          MS. DRAGALIN:  I don't have those facts.

3          THE COURT:  Probably pretrial.

4          MS. DRAGALIN:  The standard for vindictive

5    prosecution, whether the presumption applies or not,

6    Your Honor, and whether the presumption applies in this case or

7    not in terms of the government's burden to rebut that

8    presumption, that standard is the same whether a presumption

9    applies or not because, again, the government has to then

10   explain its reasons for adding the charges.

11         And here, Your Honor, we don't have the evidence of

12   actual vindictive prosecution.  Nothing that the defendant

13   cites to proves that.  So really instead we have to look at

14   whether there are circumstances --

15         THE COURT:  Does -- does your adding the count -- I

16   guess you say your reason to add the counts is to make

17   admissible this argument that somehow the false statements

18   buttress the willfulness argument.  But who's to say I would

19   let you do that?  I don't necessarily have to let you do that.

20   I can prevent from you making that argument as Judge Otero did,

21   can't I?

22         MS. DRAGALIN:  If the substantive charges are

23   charged, Your Honor, the government would have to prove those

24   substantive charges and would have to --

25         THE COURT:  Right.  But then you'd have to argue

1  that those charges indicate willfulness.  And couldn't I make

2  the same analysis as Judge Otero and preclude you from making

3  that argument under 404(b)?  Couldn't I still do the same

4  thing?

5          MS. DRAGALIN:  Not under 404(b), Your Honor, because

6  at that point it is charged conduct in terms of substantive

7  charges which is the reason the government superceded is to

8  make them charged conduct.  In other words, that making a false

9  statement on the form is itself a separate crime.  That was

10  what the government was precluded from arguing at the first

11  trial.

12          THE COURT:  Right.  But then you would argue that

13  that is indicia or evidence of willfulness as to Counts 1 and

14  2; right?

15          MS. DRAGALIN:  Yes, Your Honor.

16          THE COURT:  Why couldn't I, as Judge Otero did, on

17  whatever rule you want to cite to prevent the government from

18  making that argument?

19          MS. DRAGALIN:  With all due respect, Your Honor,

20  under the Rules of Evidence, that -- there is no basis to

21  preclude such an argument.  There is no rule that would make

22  that type of argument improper under the law in the Supreme

23  Court as set forth in *Bryan*, the United States Supreme Court

24  case, as well as other authority regarding --

25          THE COURT:  Can't I do that under 401?

1          MS. DRAGALIN:  Your Honor, the argument would be

2     that it's relevant -- the evidence would come in.  The argument

3     with respect to the defendant committing a separate crime would

4     come in.  And to say that that's not relevant to the issue of

5     willfulness --

6          THE COURT:  As to the subsequent sale.

7          MS. DRAGALIN:  The way the government evaluated the

8     evidence in this case and the potential charges that this

9     defendant committed in terms of the crimes that were committed,

10    the conclusion of the government was to -- because the

11    government -- the trial court in the first trial precluded an

12    argument regarding uncharged conduct, the government exercises

13    discretion to charged conduct that was within the statute of

14    limitations that does not expose -- does not change the

15    relevant conduct that's at issue in terms of the overall

16    offenses that the defendant committed.

17         THE COURT:  Does it try to address -- is the

18    government vindictive because the trial judge said that he

19    would impose a probationary sentence, and then the government

20    decides to add three counts to maybe --

21         MS. DRAGALIN:  No, Your Honor, because the

22    relevant -- as the defense points out, the trial Court had all

23    of this information before the trial Court at -- when it made

24    those statements.  And so the analysis of the culpability of

25    the defendant remains the same.  There's nothing that these

1    charges add in terms of evaluating the defendant's overall

2    relevant conduct and culpability in this case.

3            THE COURT:  I'm the only one that wasn't there.

4    What was Judge Otero talking about when he talks about the

5    government being aggressive?  What is he talking about?

6            MS. DRAGALIN:  That comment, Your Honor -- and the

7    defense can correct me if they have a different memory of it.

8    That conduct came at the end of a trial day in which a

9    witness by the name of Adalberto Pelayo testified.  He

10   testified solely with respect to evidence against Defendant

11   Fernandez, not Defendant Arao.  And there was an instance that

12   happened which was that -- on cross-examination by Defendant

13   Fernandez's counsel, Defendant Fernandez's counsel attempted to

14   elicit potentially attorney-client privileged information

15   and --

16           THE COURT:  That sounds like -- that's your -- you

17   are deflecting his comments against the government.  He wasn't

18   talking about Fernandez's counsel.  He was talking about --

19           MS. DRAGALIN:  Yes, Your Honor.  I apologize I

20   didn't get to the point quickly.  So the when the defense

21   counsel asked a question that called for attorney-client

22   privileged information, government counsel stood up to object,

23   and Judge Otero pointed out that it is not the government's

24   position to assert that privilege.  And we had a sidebar in

25   which Judge Otero expressed his view that the government had

 1   overreached by objecting at that time.

 2           THE COURT:  Just because of that one objection he

 3   made the bald statement that -- that sounds -- I'll let you --

 4   that sounds -- it sounds out of character.  You know, I've

 5   never -- I know Judge Otero, but I've never been in his

 6   courtroom.  But it seems out of character that a federal judge

 7   would say that a prosecutor is being aggressive based on the

 8   assertion of a privilege that they didn't have the right to

 9   assert.  That's just one -- it would seem like maybe there were

10   other things?

11           MS. DRAGALIN:  Your Honor, that comment, I believe,

12   was made at the end of that day and that's --

13           THE COURT:  You don't think it relates to any other

14   behavior?

15           MS. DRAGALIN:  I -- as I stand here today, there's

16   nothing that comes to --

17           THE COURT:  How about as you stood there that day?

18           MS. DRAGALIN:  I don't believe there was anything

19   else on that -- before that comment was made.

20           THE COURT:  So that one thing is what caused him to

21   say that?

22           MS. DRAGALIN:  I don't know what caused the Court to

23   make that comment, Your Honor.  I -- from the perspective of

24   the government's conduct --

25           THE COURT:  Your takeaway when a federal judge says

1  that you are being aggressive, your introspection is that it

2  was based on an assertion of a privilege that you didn't have a

3  right to assert?  That's the basis?  So that's the extent of

4  the government attorneys' introspection?

5          MS. DRAGALIN:  Your Honor, the government also made

6  objections during the trial that the defense did not agree

7  with.  And so the trial itself did -- it was contentious at

8  times in terms of the parties disagreeing --

9          THE COURT:  It's one thing for the case to be

10  contentious.  It's another thing for a federal judge to say

11  after a trial that the government was aggressive.

12          MS. DRAGALIN:  That comment was made in the middle

13  of trial.  It was not at the conclusion of all of the comments,

14  I believe, Your Honor.  I don't have the transcript in front of

15  me at this time.

16          But in terms of the types of allegations that the

17  defense has pointed out to in the motion itself in terms of

18  allegations that the government asked improper questions of

19  witnesses, allegations that the government made improper

20  arguments during the rebuttal argument, Judge Otero concluded

21  that those types of allegations did not rise to the level of

22  government misconduct in any way.  That was his conclusion at

23  the end of the entire trial.

24          THE COURT:  What about the -- what's interesting to

25  me -- and again, I wasn't there -- Judge Otero said a couple of

1  times that the willfulness argument was, in his words, a

2  close call.  He said it a couple of times; right?

3          MS. DRAGALIN:  Yes, Your Honor.

4          THE COURT:  I don't know, but it seems to me that if

5  something is a close call, the government hasn't met its burden

6  of proof beyond a reasonable doubt.  If something is a close

7  call, I'm not sure why a judgment of acquittal wasn't granted

8  if something is a close call.

9          MS. DRAGALIN:  Your Honor, the same judge who made

10 that comment was asked to grant a judgment of acquittal.  And

11 his conclusion after the trial was that the government had met

12 its burden beyond a reasonable doubt and that the jury's

13 verdict should not be overturned on that basis.

14         THE COURT:  Does that go toward vindictiveness

15 when a judge says it's a -- it seems to me, if a judge says

16 it's a close call -- from my perspective, after sitting on a

17 case and I said the issue of willfulness was a close call, I

18 would grant a judgment of acquittal because a close call means

19 the government hasn't met its burden of proof beyond a

20 reasonable doubt.

21             And then in terms of evaluating that comment to

22 decide whether or not the government would retry, they double

23 down and bring three additional counts after a federal judge

24 said it's a close call.

25             MS. DRAGALIN:  And the three additional counts here,

1  again, Your Honor, are not going to change the evidence that

2  comes in at trial.  It's the same evidence as last time.  It's

3  not going to change the overall conduct and culpability of this

4  defendant in any way.

5        And so it does not -- these added charges do not

6  demonstrate any form of vindictiveness on the part of the

7  prosecution --

8        THE COURT:  When a federal judge says it's a close

9  call on a couple of occasions, did that at all bear on the

10  government's analysis whether they should retry the case?

11       MS. DRAGALIN:  No, Your Honor, it did not and --

12       THE COURT:  Why not?

13       MS. DRAGALIN:  We -- the government evaluates

14  whether to retry the case based --

15       THE COURT:  Based on whether you can prove it beyond

16  a reasonable doubt; right?

17       MS. DRAGALIN:  Which the government did to a jury,

18  Your Honor.  A jury had no trouble returning an indictment -- a

19  guilty verdict.

20       THE COURT:  Wait.  Wait.  It had no trouble after

21  you fought bifurcation and sullied him with another defendant.

22  So, I mean, the fact that a jury did under those circumstances

23  is not a response to whether the government should make an

24  honest appraisal, an ethical appraisal whether they should

25  retry a case.  A judge has told you twice it's a close call.

1   It seems to me I would -- if I was prosecuting the case, I

2   would be wondering whether or not I should be continuing to

3   prosecute the case because a federal judge on two occasions has

4   told me it's a close call.

5           It's not an argument in response to say, well, a

6   tainted jury already convicted him once so we can do it again.

7   I don't know.  That's just my perspective.

8           MS. DRAGALIN:  That's fair, Your Honor.  And I can

9   tell you that that comment in terms of a close call did not

10  give rise to some type of punitive motive on the part of the

11  prosecution in terms of this particular defendant.

12          In fact, after the judge made those comments, the

13  government still recommended a low-end sentence for this

14  particular defendant.  If, indeed, the government was angered

15  or had some type of animus towards this defendant, that would

16  be displayed in its aggressive prosecution towards this

17  defendant including asking for a higher sentence or

18  highlighting negative facts --

19          THE COURT:  Those two comments that the judge made

20  *it's a close call* on two occasions had no impact on the

21  government's decision whether to retry the case?

22          MS. DRAGALIN:  Your Honor, I can't speak to

23  all the facts that our office takes into account in terms of

24  retrying --

25          THE COURT:  Who is the supervisor on this case?

1          MS. DRAGALIN:  My direct supervisor is chief of the

2     Public Corruption and Civil Rights Section, Mack Jenkins, and

3     the --

4          THE COURT:  Was he made aware of the judge's

5     comments?

6          MS. DRAGALIN:  Yes, Your Honor.  He was in court, in

7     fact, on several occasions during the trial.

8          THE COURT:  Okay.

9          All right.  Let me hear from the defense.

10         MS. ROBINSON:  Good morning, Your Honor.

11         THE COURT:  Good morning.

12         MS. ROBINSON:  I just briefly do want to correct one

13     thing for the record.  The comment regarding the aggressive

14     prosecution occurred after the close in response to the Rule 29

15     motion or in the context of that.  So it was at the end of the

16     trial after everything had occurred.

17         THE COURT:  After the government's case.

18         MS. ROBINSON:  Yes.

19         THE COURT:  Where he said, quote, concerned about,

20     quote, aggressive prosecution during the course of this trial.

21         MS. ROBINSON:  That's correct.

22         THE COURT:  So it's -- he said -- aggressive

23     prosecution during the course of this trial doesn't seem to

24     imply one event.

25         MS. ROBINSON:  Your Honor, we would take the

1  position that it was a pattern of events that we've laid out in

2  our vindictive prosecution motion here as well as our previous

3  preserved motions and renewed motions for this Court.

4         The only other thing I would like to point out is

5  that there -- the government claims that their burden remains

6  the same to disprove vindictive prosecution pretrial --

7         THE COURT:  It doesn't.

8         MS. ROBINSON:  Right.  Okay.  So unless you have any

9  other questions for me, I think we'd submit at this time.

10        THE COURT:  All right.  Thank you.

11        Anything else from the government?

12        MS. DRAGALIN:  I apologize, Your Honor, for not --

13  for misremembering the context of that statement.  It was not

14  intentional.  I don't have the transcript in front of me.

15        THE COURT:  You were there.  I wasn't there.

16        The Court will issue an order dismissing Counts 3,

17  4, and 5.  I'll issue that written ordered today or tomorrow.

18        Let's move on to the motion to introduce the

19  defendant's interview, and I'll hear from whoever wants to

20  present that argument.

21        Here's my position, and persuade me either way.  But

22  I think at this point I would deny without prejudice.  I think

23  it's improper to introduce the whole statement, but you do -- a

24  couple times you make reference to basically introducing parts

25  of the statement, but you don't really help me out by telling

1  me what parts you would be prepared and maybe because you don't

2  know yet because you haven't seen the examination of the agent.

3      So I think I would deny without prejudice and then

4  after the examinations, time out, present to me what portions

5  you want to introduce on cross.  And then I think I'd have a

6  better picture of, you know, grant, deny, some of it, none of

7  it.

8      And then also there's -- it's mentioned in other

9  places that you would like to introduce portions.  But, again,

10  I haven't had the benefit of what's being there for what's

11  introduced.  I see in the transcript what's introduced, but I

12  wasn't there for the direct examination.

13      MS. ROBINSON:  Your Honor, I understand, and with

14  that then I think we will submit on the papers, and we can

15  readdress the issue in cross-examination.

16      THE COURT:  I would deny without prejudice, and

17  then, you know, we'll see what the examination of the agent is,

18  and then call the time out and present to me what portions you

19  would like to introduce, and then I'll make a ruling based on

20  what the examination was.

21      MS. ROBINSON:  Okay.  Thank you, Your Honor.

22      THE COURT:  What's the government's time estimate on

23  the retrial with regard to Counts 1 and 2?

24      MS. DRAGALIN:  Approximately two days, Your Honor.

25      THE COURT:  All right.

1          Agree?  Disagree with that estimate?

2          MR. ROBINSON:  Your Honor, we agree with that.  I

3    think this is going to be a streamlined presentation on both

4    sides.

5          There is one other thing that I'd like to address

6    with the Court if I may at this time.

7          THE COURT:  Sure.

8          MR. ROBINSON:  The government gave us notice

9    yesterday about their intent to introduce some percipient

10   testimony, which we thank them for giving us that notice, and

11   they've given us some parameters by which they've agreed

12   not to introduce certain evidence that could be prejudicial to

13   Mr. Arao.  We will abide by those guidelines that the

14   government has suggested.  We'll put that in writing for the

15   Court.

16         Secondly, the government has also given us notice of

17   intent to introduce some testimony concerning an audit report.

18   That audit report was not introduced at trial the first time.

19   It was referenced, I believe, in one of the agent's testimony.

20         THE COURT:  That was one of the things that

21   Judge Otero was I think upset about that it -- was it raised in

22   rebuttal but it wasn't admitted in evidence?

23         MR. ROBINSON:  The report was not admitted in

24   evidence.  There was reference to the report.  The government

25   wishes to get into that report in a more detailed fashion, and

1    we are looking at our response.

2         The government has proposed a briefing schedule

3    that, I'll say right now, we think is a fair briefing schedule

4    whereby we would have our motion in limine to exclude that

5    evidence, and we'll try to have that to you by July 16th.  And

6    then the government would oppose or respond by the 23rd of

7    July.  And it would be set for hearing on our status

8    conference/pretrial date of July 30th.

9         THE COURT:  Okay.

10        MR. ROBINSON:  I will indicate to the Court one

11   concern that we have.  And we appreciate the government's

12   thoroughness in giving us the notice of what they intend to

13   introduce with respect to that report.  Depending on the

14   Court's rulings -- and I don't seek to prejudice the Court in

15   any way on those rulings -- we may need to get an expert to

16   answer some of the questions that are raised by the

17   introduction of that evidence.

18        We are in the process of getting that expert, and we

19   will give notice if and when it's appropriate.  And I

20   appreciate that it's long past the Rule 16 date, but this

21   evidence is just coming up, and I don't imagine the government

22   would have any objection to us working on a quick schedule to

23   get that expert noticed and in front of the Court and the

24   government.

25        THE COURT:  Okay.  And then does that -- I guess

what I'm asking is does that implicate the -- I really want the

August 5th trial date, and I'm sure you do too to be firm just

because there's others, other cases that are trying to get that

August 5th date.

MR. ROBINSON:  We want that date as well, and we

will be working as quickly and as hard as possible.  I don't

foresee a problem.  We've been able to move these cases pretty

quickly.  So I'm just giving the Court some notice.  It may

require some comprehensive briefing, but that shouldn't be a

problem.

THE COURT:  Okay.  Thank you.

Anything else from the government before we adjourn

today?

MS. DRAGALIN:  No, Your Honor.

THE COURT:  Okay.  Thank you.

(At 10:24 a.m. the proceedings adjourned.)

1     **CERTIFICATE OF OFFICIAL REPORTER**

2

3

4

5     I, MAREA WOOLRICH, FEDERAL OFFICIAL REALTIME

6 COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT

7 FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY

8 THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE

9 THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10 STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11 ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT

12 IS IN CONFORMANCE WITH THE REGULATION OF THE JUDICIAL

13 CONFERENCE OF THE UNITED STATES.

14

15

16     DATED THIS  14TH  DAY OF JULY, 2021.

17

18

19    /S/ MAREA WOOLRICH

20    _____
    MAREA WOOLRICH, CSR NO. 12698, CCRR

21    FEDERAL OFFICIAL COURT REPORTER

22

23

24

25

**UNITED STATES DISTRICT COURT**