TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
VERONICA DRAGALIN (Cal. Bar No. 281370)
Assistant United States Attorney
Public Corruption and Civil Rights Section
CASSIE D. PALMER (Cal. Bar No. 268383)
Assistant United States Attorney
Deputy Chief, General Crimes Section
        1500 / 1100 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-0647/0363
        Facsimile: (213) 894-0141
        E-mail:    veronica.dragalin@usdoj.gov
                   cassie.palmer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-121(B)-PSG |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date:  August 5, 2021 |
| EDWARD ARAO, | Trial Time:   9:00 a.m. |
| Defendant. | Location:  Courtroom of the Hon. Philip S. Gutierrez |

     Plaintiff United States of America, by and through its counsel
of record, the Acting United States Attorney for the Central
District of California and Assistant United States Attorneys
Veronica Dragalin and Cassie D. Palmer, hereby files its Trial
Memorandum.

///

///

1

Leave is respectfully requested to file additional memoranda as may become appropriate during the course of trial.

Dated: July 29, 2021                    Respectfully submitted,

                                        TRACY L. WILKISON
                                        Acting United States Attorney

                                        SCOTT M. GARRINGER
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                        _____
                                        VERONICA DRAGALIN
                                        CASSIE D. PALMER
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

## TABLE OF CONTENTS

I.    STATUS OF THE CASE                                                      1

      A.    Charges..........................................................1

      B.    Trial Status.....................................................1

      C.    Pretrial Status of Defendants....................................1

      D.    Government's Case-in-Chief.......................................1

      E.    Motions in Limine................................................2

      F.    Stipulations.....................................................2

            1.    Exhibits...................................................2

            2.    California Law.............................................3

            3.    Testimony of Deceased Witness..............................3

      G.    Forfeiture Allegation............................................3

II.   THE CRIMES AND THEIR ELEMENTS                                           3

      A.    Conspiracy to Engage in the Business of Dealing in
            Firearms.........................................................3

      B.    Dealing in Firearms Without a License............................4

III.  STATEMENT OF FACTS AND EVIDENCE                                         5

IV.   EVIDENTIARY ISSUES                                                      7

      A.    Law of the Case Doctrine.........................................7

      B.    Authentication and Foundation....................................8

      C.    Hearsay and Exceptions to Hearsay................................8

            1.    Defendant's Statements.....................................9

            2.    Co-Conspirator Fernandez Statements........................9

            3.    Business Records..........................................12

            4.    Public Records............................................13

      D.    Summary Charts & Witnesses......................................14

            1.    Summary Charts............................................14

            2.    Summary Witnesses.........................................15

E.   Expert Testimony..................................16

1.   Firearms Requirements.........................16

2.   ATF Industry Operations.......................17

3.   Lay Opinion of Law Enforcement Agents.........17

F.   Audio Recordings..................................18

G.   Transcripts of Recordings.........................19

H.   Photograph Evidence...............................20

I.   Cross-Examination of Defendants...................20

J.   Character Evidence................................23

K.   Reciprocal Discovery..............................25

**V.   CONCLUSION                                                   25**

1

**TABLE OF AUTHORITIES**

2 **Cases**                                                                  **Page(s)**

3 Barsky v. United States,
        339 F.2d 180 (9th Cir. 1964) ............................... 15
4
Bourjaily v. United States,
5       483 U.S. 171 (1987) ....................................... 11

6 Bryan v. United States,
        524 U.S. 184 (1998) ........................................ 4
7
Crawford v. Washington,
8       541 U.S. 36 (2004) ........................................ 11

9 Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co.,
        466 F.2d 722 (7th Cir. 1972) ............................... 15
10
French v. United States,
11      232 F.2d 736 (5th Cir. 1956) ........................... 23-24

12 Michelson v. United States,
        335 U.S. 469 (1948) ................................... 23, 24
13
Sendejas v. United States,
14      428 F.2d 1040 (9th Cir. 1970) .............................. 11

15 United States v. Alexander,
        106 F.3d 874 (9th Cir. 1997) ............................... 7
16
United States v. Allen,
17      425 F.3d 1231 (9th Cir. 2005) .............................. 12

18 United States v. Andersson,
        813 F.2d 1450 (9th Cir. 1987) .............................. 16
19
United States v. Antonakeas,
20      255 F.3d 714 (9th Cir. 2001) .............................. 22

21 United States v. Arteaga,
        117 F.3d 388 (9th Cir. 1997) ............................... 9
22
United States v. Bailleux,
23      685 F.2d 1105 (9th Cir. 1982) .............................. 22

24 United States v. Beltran-Rios,
        878 F.2d 1208 (9th Cir. 1989) .............................. 18
25
United States v. Black,
26      767 F.2d 1334 (9th Cir. 1985) .............................. 20

27 United States v. Boise,
        916 F.2d 497 (9th Cir. 1990) .............................. 22
28

i

United States v. Camejo,
     929 F.2d 610 (9th Cir. 1991) ............................... 23

United States v. Castillo,
     181 F.3d 1129 (9th Cir. 1999) .............................. 22

United States v. Chu Kong Yin,
     935 F.2d 990 (9th Cir. 1991) ................................ 8

United States v. Cuozzo,
     962 F.2d 945 (9th Cir. 1992) ............................... 20

United States v. Dhinsa,
     243 F.3d 635 (2d Cir. 2001) ................................. 8

United States v. Echeverry,
     759 F.2d 1451 (9th Cir. 1985) ............................... 9

United States v. Estrada-Lucas,
     651 F.2d 1261 (9th Cir. 1980) ............................... 7

United States v. Freeman,
     498 F.3d 893 (9th Cir. 2007) ........................... 18, 19

United States v. Gardner,
     611 F.2d 770 (9th Cir. 1980) ............................... 14

United States v. Gay,
     967 F.2d 322 (9th Cir. 1992) ............................... 21

United States v. Gibson,
     690 F.2d 697 (9th Cir. 1982) .............................. 8-9

United States v. Hadley,
     918 F.2d 848 (9th Cir. 1990) ...................... 21-22, 22

United States v. Hedgcorth,
     873 F.2d 1307 (9th Cir. 1989) .............................. 23

United States v. Henry,
     560 F.2d 963 (9th Cir. 1977) ............................... 24

United States v. Johnson,
     594 F.2d 1253 (9th Cir. 1979) ......................... 14, 15

United States v. Johnson,
     730 F.2d 683 (11th Cir. 1984) .............................. 25

United States v. King,
     587 F.2d 956 (9th Cir. 1978) ............................... 19

United States v. King,
     735 F.3d 1098 (9th Cir. 2013) ............................... 4

United States v. Kirk,

844 F.2d 660 (9th Cir.) ................................... 10

United States v. Lloyd,
807 F.3d 1128 (9th Cir. 2015)............................. 12

United States v. May,
622 F.2d 1000 (9th Cir. 1980) ............................ 20

United States v. McCollom,
664 F.2d 56 (5th Cir. 1981) ............................... 24

United States v. McCown,
711 F.2d 1441 (9th Cir. 1983) ............................ 12

United States v. Mehrmanesh,
682 F.2d 1303 (9th Cir. 1982) ............................ 21

United States v. Meyers,
847 F.2d 1408 (9th Cir. 1988) ......................... 14, 15

United States v. Miranda-Uriarte,
649 F.2d 1345 (9th Cir. 1981) ............................ 21

United States v. Moreno,
12 F.3d 1110 (9th Cir. 1993) .............................. 7

United States v. Oaxaca,
569 F.2d 518 (9th Cir. 1978) ............................. 20

United States v. Ortega,
203 F.3d 675 (9th Cir. 2000) .............................. 9

United States v. Pang,
362 F.3d 1187 (9th Cir. 2004) ............................. 8

United States v. Penaflor,
91 F.3d 157 (9th Cir. 1996) .............................. 21

United States v. Radseck,
718 F.2d 233 (7th Cir. 1983) ............................. 15

United States v. Reid,
634 F.2d 469 (9th Cir. 1980) ............................. 21

United States v. Robinson,
389 F.3d 582 (6th Cir. 2004) ............................. 13

United States v. Scholl,
166 F.3d 964 (9th Cir. 1999) ........................... 24-25

United States v. Shirley,
884 F.2d 1130 (9th Cir. 1989) ............................ 16

United States v. Smith,
591 F.3d 974 (8th Cir. 2010) ............................. 19

iii

United States v. Soulard,
    730 F.2d 1292 (9th Cir. 1984) .............................. 15

United States v. Stearns,
    550 F.2d 1167 (9th Cir. 1977) .............................. 20

United States v. Tham,
    960 F.2d 1391 (9th Cir. 1992) .............................. 7

United States v. Turner,
    528 F.2d 143 (9th Cir. 1975) .............................. 19

United States v. Valerio,
    441 F.3d 837 (9th Cir. 2006) .............................. 12

United States v. Webster,
    750 F.2d 307 (5th Cir. 1984) .............................. 25

United States v. Zavala-Serra,
    853 F.2d 1512 (9th Cir. 1988) ...................... 11-12, 12

**Statutes**

18 U.S.C. § 371 ............................................... 1, 3

18 U.S.C. § 922 ............................................... 1, 4

18 U.S.C. § 924 ............................................... 1

**Other**

Fed. R. Evid. 403 ............................................ 22

Fed. R. Evid. 404 ............................................ 21

Fed. R. Evid. 405 ........................................ 23, 24

Fed. R. Evid. 607 ............................................ 22

Fed. R. Evid. 608 ............................................ 21

Fed. R. Evid. 702 ............................................ 16

Fed. R. Evid. 801 .................................. 8, 9, 11, 12

Fed. R. Evid. 803 ........................................ 12, 13

Fed. R. Evid. 901 ............................................ 8, 19

Fed. R. Evid. 902 ........................................ 13, 14

Fed. R. Evid. 1006 ........................................... 14

Rule 16 .................................................. 16, 18

iv

Rule 26.2 ...................................................... 25

1

<u>**GOVERNMENT'S TRIAL MEMORANDUM**</u>

2 **I.    STATUS OF THE CASE**

3        **A.    Charges**

4        On March 12, 2021, a federal grand jury returned a five-count

5 second superseding indictment ("SSI") against defendant Edward Arao

6 ("defendant" or "Arao").  Count One charged defendant with

7 conspiracy to engage in the business of dealing in firearms without

8 a license in violation of 18 U.S.C. § 371.  Count Two charged

9 defendant with engaging in the business of dealing in firearms

10 without a license in violation of 18 U.S.C. § 922(a)(1)(A).  Counts

11 Three through Five charged defendant with making statements in

12 connection with firearms purchases in violation of 18 U.S.C.

13 § 924(a)(1)(A).  On July 14, 2021, the Court granted defendant's

14 motion to dismiss Counts Three through Five.  (CR 471.)  Counts One

15 and Two are the only remaining counts in the SSI.

16        **B.    Trial Status**

17        Trial is set to commence on August 5, 2021.  Trial by jury has

18 not been waived.

19        **C.    Pretrial Status of Defendants**

20        Arao is on bond pending trial.

21        **D.    Government's Case-in-Chief**

22        The estimated time for the presentation of the government's

23 case-in-chief is three days.  This includes the estimated time for

24 defendant's cross-examination of the government's witnesses.  The

25 government expects to call approximately nine witnesses: (1) case

26 agent Tolliver Hart (ATF); (2) federal firearms expert David

27 Hamilton (ATF); (3) firearms industry expert James Palm (ATF);

28

(4) industry operations investigator Albert Colon (ATF); (5) firearm buyer Rafael Ruben Camacho Maravilla (co-defendant); (6) firearm buyer Omar Cruz; (7) firearm buyer Fabricio Ortiz; (8) firearm buyer Martin Ramos; and (9) the trial testimony of deceased firearm buyer Raul Cervantes Corona (co-defendant).  Absent stipulations to the admissibility of certain exhibits, the government reserves the right to call additional witnesses as needed to establish chain of custody and authenticity of government exhibits.

### E.   Motions in Limine

Defendant filed a motion in limine to admit the entirety of defendant's interview with ATF agents.  (CR 450.)  The government filed an opposition (CR 455), and the defendant filed a reply (CR 457).  At a hearing on July 13, 2021, the Court denied defendant's motion without prejudice.

The government filed a motion in limine to admit evidence and permit argument regarding defendant's willfulness.  (CR 473.) Defendant filed an opposition (CR 475), and the government filed a reply (CR 478).  The motion is set for hearing on July 30, 2021.  As of the filing of this pleading, the Court has not yet ruled on the government's motion in limine.

### F.   Stipulations

#### 1.   Exhibits

The parties are currently negotiating stipulations regarding the authenticity and/or admissibility of certain documentary, photographic, and audio evidence, including the authenticity and admissibility of various documents that have been translated from Spanish into English, and documents with 902(11) certifications

and/or that were obtained through public records maintained or required to have been maintained by state or federal laws.

### 2. California Law

The parties are currently negotiating a stipulation regarding the relevant California law that applied to the facts of this case.

### 3. Testimony of Deceased Witness

The parties have met and conferred and agreed on the admissibility of a deceased witness's prior trial testimony. The government will file the proposed redacted testimony in advance of trial.

### G. Forfeiture Allegation

The SSI includes a forfeiture allegation providing notice to defendant that, if convicted, the government will seek forfeiture of any firearms or ammunition used in the offense. At this time, the government does not anticipate a forfeiture proceeding to take place for defendant.

## II. THE CRIMES AND THEIR ELEMENTS

### A. Conspiracy to Engage in the Business of Dealing in Firearms

Defendant Arao is charged in Count One with conspiring with co-conspirator Carlos Fernandez to engage in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 371. In order for a defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning on or about July 10, 2015, and ending on or about July 26, 2017, there was an agreement between two or more

persons to engage in the business of dealing in firearms without a license, as charged in the indictment;

Second, the defendant became a member of the conspiracy knowing of its object and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy. Ninth Circuit Model Criminal Jury Instruction No. 8.20 [Conspiracy - Elements] (modified to reflect indictment).

**B.   Dealing in Firearms Without a License**

Defendant is charged in Count Two with a substantive count of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A).  In order for a defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant was willfully engaged in the business of dealing in firearms within the dates specified in the indictment; and

Second, the defendant did not then have a license as a firearms dealer.

Willfully, as used in this statute, requires proof that the defendant knew that his conduct was unlawful, but does not require proof that the defendant knew of the federal licensing requirement. Ninth Circuit Model Criminal Jury Instruction No. 8.53 [Firearms - Dealing, Importing, or Manufacturing Without License] (modified to reflect indictment); United States v. King, 735 F.3d 1098, 1107 n.8 (9th Cir. 2013); Bryan v. United States, 524 U.S. 184, 198-99 (1998).

III. **STATEMENT OF FACTS AND EVIDENCE**

The government expects that the evidence at trial will establish, among others, the following facts.

Defendant Arao and co-conspirator Fernandez were law enforcement officers with the Gardena Police Department. Arao was the CEO of a corporation, Ronin Tactical Group, which had a federal license to deal in firearms. California law prohibited licensed dealers from selling off-Roster firearms to the general public. Licensed dealers were permitted to sell off-Roster firearms to law enforcement officers. Arao and Fernandez used their law enforcement status to purchase off-Roster firearms from Ronin Tactical Group, and then transferred those firearms in their individual capacity to non-law enforcement individuals through private party transfers. Arao did not have a license to deal in firearms in his individual capacity. Fernandez did not have a federal license to deal in firearms at any time.

From the summer of 2015 through the summer of 2017, Arao and Fernandez worked in concert to purchase and sell approximately 58 firearms, using their status as police officers to facilitate the purchase and resale of rare and valuable firearms through Ronin Tactical. Fernandez advertised and sold firearms through his own Instagram account, @the38superman, with sales often finalized through Ronin Tactical, the FFL managed by Arao. Similarly, Arao purchased firearms for himself through Ronin Tactical and then resold them to private individuals,[1] sometimes advertising them on

---

[1] The indictment charges Arao for his sale of firearms in his individual capacity. Because licensed dealers's were prohibited from selling off-Roster firearms to the general public in

@the38superman.  Arao and Fernandez appeared at gun shows together, marketing Ronin Tactical and @the38superman as business partners.

To prove this conduct, the government expects to introduce at least the following evidence:

• Evidence that the charged transactions took place, including testimony from approximately five buyers who purchased guns from defendant and Fernandez, as well as firearms records of the transactions, i.e., Automated Firearms System ("AFS") and ATF 4473 Form records for the 58 guns sold that are charged in the conspiracy.  Similarly, these records support the 41 firearms that are charged against defendant in Count Two.  The firearms records will also include various summary charts.

• Evidence of the federal firearms licensee status of the defendant, Ronin Tactical, and Fernandez during the course of the conspiracy.

• Evidence of the cost and pricing of the firearms sold, to demonstrate that defendant and Fernandez made a profit from their repeated sales of firearms.

• Evidence that is probative of the business nature of the gun sales including Instagram, e-mail records, and witness testimony.

• Evidence of Arao's and Fernandez's knowledge of the law, including acknowledgement forms Arao signed when he received his FFL license and following an ATF audit of Ronin Tactical, Instagram and

California, Arao could not sell these firearms directly from his licensed business to customers.  Instead, Arao transferred firearms from his business to himself, as a law enforcement officer exempt from the California restriction.  He then resold the firearms in private transfers.

e-mail records, excerpts of interviews with law enforcement, and personnel records from the Gardena Police Department.  The government also seeks to admit additional evidence to prove defendant's willfulness as briefed in its motion in limine on this topic.

## IV.  EVIDENTIARY ISSUES

### A.    Law of the Case Doctrine

The trial court's rulings from defendant's first trial should ordinarily remain intact under the "law of the case doctrine." United States v. Alexander, 106 F.3d 874, 877 (9th Cir. 1997).  This doctrine applies to evidentiary rulings, barring clear error or a change in circumstances.  United States v. Moreno, 12 F.3d 1110 (9th Cir. 1993) ("it is error for a court upon retrial to reverse an identical evidentiary ruling made during the first trial, barring clear error or a change in circumstances") (citation omitted); United States v. Tham, 960 F.2d 1391, 1397 (9th Cir. 1992) (law of the case doctrine applied to admission of tape recording).  "A district court may change its own ruling if differences between the first and second trials of a case justify the change."  United States v. Estrada-Lucas, 651 F.2d 1261, 1264 (9th Cir. 1980).

There has been a change in circumstances from the first trial in that defendant's re-trial is not a joint trial with co-conspirator Fernandez.  While this may impact certain evidentiary rulings during the re-trial, the trial court's rulings on the admissibility of the majority of exhibits in the original trial should stand under the law of the case doctrine.

## B.   Authentication and Foundation

Rule 901(a) simply requires that a proponent of evidence make a prima facie showing of authenticity so that a reasonable juror could find "that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  This requirement "does not erect a particularly high hurdle, and the proponent of the evidence is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." United States v. Dhinsa, 243 F.3d 635, 658-59 (2d Cir. 2001) (citations omitted).  The proponent of evidence need not establish a proper foundation through personal knowledge; a proper foundation "can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902."  See United States v. Pang, 362 F.3d 1187, 1193 (9th Cir. 2004).  The government need make only a prima facie showing of authenticity.  See United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991).

The government anticipates that the parties will enter into a stipulation regarding the foundation and authenticity of many of the firearms records, summaries thereof, translations, and at least some of the Instagram and email records in this case.

## C.   Hearsay and Exceptions to Hearsay

Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Testimony that is not offered for the truth of the matter asserted, but for another purpose, is not hearsay.  See e.g., United States v. Gibson, 690 F.2d 697, 700 (9th Cir. 1982)

(statements admissible because offered to establish fact they were made and not for truth of matter asserted); United States v. Arteaga, 117 F.3d 388, 396 (9th Cir. 1997) (statements offered for "effect on hearer" are offered for a non-truth-related purpose and are admissible non-hearsay statements); United States v. Echeverry, 759 F.2d 1451, 1456 (9th Cir. 1985) (statements offered not for truth of matter asserted but as necessary background information admissible as non-hearsay).

### 1.   Defendant's Statements

The government seeks to introduce various types of statements by defendant, including: (1) Arao's statements in Instagram records; (2) Arao's statements to firearms buyers, both in person and during telephone calls; (4) Arao's recorded statements to agents during a voluntary interview; (5) Arao's recorded phone calls with an undercover agent in furtherance of a firearm purchase; (6) Arao's statements during the ATF audit.  Statements by a party opponent when offered against that party are excluded from the hearsay definition.  Fed. R. Evid. 801(d)(2)(A).  Thus, statements by the defendant, when offered by the government, are admissions by a party-opponent and are therefore not hearsay under Federal Rule of Evidence 801(d)(2).  United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000).

### 2.   Co-Conspirator Fernandez Statements

The government also seeks to introduce various types of statements made by defendant's co-conspirator, Fernandez, during the course and in furtherance of the conspiracy charged in the indictment, including: (1) Fernandez's statements in Instagram

1  records, including in posts and private direct messages; (2)

2  Fernandez's statements in his own e-mail records; (3) Fernandez's

3  statements to potential buyers during firearms transactions.

4      Out of court statements do not qualify as hearsay when they

5  "are not offered for the truth of the matter asserted, but were

6  admitted to establish that the statement was made or to demonstrate

7  the effect the statement had on the hearer." <u>United States v. Kirk</u>,

8  844 F.2d 660, 663 (9th Cir.), <u>cert. denied</u>, 488 U.S. 890 (1988).  In

9  <u>Kirk</u>, "statements of salespersons misrepresenting the program were

10  admissible to prove that the misrepresentations were made, not to

11  prove the truth of what the salespersons stated." <u>Id.</u>  Here too,

12  the government will offer statements made by Fernandez to prove that

13  Fernandez made certain representations to potential firearms

14  purchasers, not to prove the truth of what Fernandez stated.  For

15  example, Overt Act No. 5 in Count One quotes an Instagram

16  conversation in which Fernandez stated: "These guns are about that

17  price 6k out of state this one I'm keeping at that price and it will

18  be legal sell ppt."  The government does not seek to establish that

19  these prices were accurate or truthful but only that Fernandez made

20  the statement to a potential buyer.  Fernandez's statements in other

21  Instagram posts, e-mails, and conversations are not hearsay because

22  they are not offered to prove the truth of the matter asserted, but

23  simply to prove that the statements were made.

24      Fernandez's statements in e-mails, Instagram posts and messages

25  are not hearsay for the additional reason that they are co-

26  conspirator statements.  Declarations by one co-conspirator during

27  the course of, and in furtherance of, a conspiracy may be used

28

against another conspirator because such declarations are not
hearsay.  Fed. R. Evid. 801(d)(2)(E).  Statements made in
furtherance of a conspiracy are not "testimonial" and, consequently,
do not violate the Confrontation Clause.  Crawford v. Washington,
541 U.S. 36, 56 (2004).  Accordingly, the admission of co-
conspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E)
requires only a foundation that: (1) the declaration was made during
the life of the conspiracy; (2) it was made in furtherance of the
conspiracy; and (3) there is, including the co-conspirator's
declaration itself, sufficient proof of the existence of the
conspiracy and of the defendant's connection to it.  See Bourjaily
v. United States, 483 U.S. 171, 173, 181 (1987).  Here, Fernandez's
statements were made to further the conspiracy to illegally deal in
firearms because the statements demonstrate that Fernandez
advertised and negotiated the repeated sale of firearms through his
Instagram account and e-mail account.

    That Arao did not create posts for @the38superman account or
personally participate in the direct message conversations or e-
mails is of no consequence.  The defendant need not be present at
the time the co-conspirator made the statement.  Sendejas v. United
States, 428 F.2d 1040, 1045 (9th Cir. 1970) ("It is well settled
that a conversation between two co-conspirators which takes place
out of the presence of a third co-conspirator is admissible into
evidence against the third co-conspirator.").  Moreover, co-
conspirator statements need not be made to another member of the
conspiracy in order to be admissible under Federal Rule
801(d)(2)(E).  See United States v. Zavala-Serra, 853 F.2d 1512,

1516 (9th Cir. 1988).  Co-conspirator statements are admissible when made to third parties, such as government informants and undercover agents.  Id.; United States v. Lloyd, 807 F.3d 1128, 1160-61 (9th Cir. 2015) ("It is not necessary that the statement be made to another member of the conspiracy for it to come under [R]ule 801(d)(2)(E).").

The government can admit statements that provide context to these statements, including the responses to Fernandez's Instagram messages, as such statements are not being admitted for the truth of the matter asserted but rather to provide context for the statements.  Fed. R. Evid. 801(c); see also United States v. Valerio, 441 F.3d 837, 844 (9th Cir. 2006) (informant's statements on a recording are admissible to give context to defendant's statements).

The admission of Fernandez's statements against defendant Arao does not present any Bruton issues at trial.  While "Bruton precludes the admission of a defendant's confession implicating a co-defendant during a joint trial . . . a statement made by a co-conspirator during and in furtherance of the conspiracy [is] not barred by Bruton."  United States v. Allen, 425 F.3d 1231, 1235 n.5 (9th Cir. 2005) (internal citation omitted); see also United States v. McCown, 711 F.2d 1441, 1448 (9th Cir. 1983) (finding Bruton inapplicable to statements made by a co-conspirator in furtherance of a conspiracy).

### 3.  Business Records

The government intends to introduce various business records under Federal Rule of Evidence 803(6) and 902(11), pursuant to the

1   declarations of the custodian of records produced in discovery.

2   These include receipts showing the price of guns defendant purchased

3   from other licensed dealers and distributors, business records from

4   Instagram showing subscriber records and contents of Instagram posts

5   and messages, business records from Hotmail showing subscriber

6   records and contents of Fernandez's e-mail, Gardena Police

7   Department personnel records, and AT&T toll records.

8          4.   Public Records

9        The government intends to introduce public records, such as ATF

10  4473 Forms, ATF Multiple Sales Forms, ATF e-Trace reports, Ronin

11  Tactical's Acquisition and Disposition book, Dealer Record of Sales

12  ("DROS") forms, results from queries in California's Automated

13  Firearms System ("AFS"), and other ATF forms related to licensing

14  applications and audits.  Public records, reports, statements, or

15  data compilations of public offices or agencies setting forth the

16  activities of the office or agency, or matters observed pursuant to

17  a duty imposed by law as to which matters there was a duty to report

18  are admissible as an exception to the hearsay rule.  Fed. R. Evid.

19  803(8).  Domestic public documents bearing a seal of the United

20  States or a political subdivision, department, officer, or agency

21  thereof, and a signature purporting to be an attestation or

22  execution, are self-authenticating and do not require extrinsic

23  evidence of authentication as a condition precedent to

24  admissibility.  Fed. R. Evid. 902(1).  See United States v.

25  Robinson, 389 F.3d 582, 593 (6th Cir. 2004).  The same is true of

26  certified copies of public records.  Fed. R. Evid. 902(4).

27

28

**D.   Summary Charts & Witnesses**

　　　1.   Summary Charts

The government intends to introduce summaries of various firearms records that reflect the transactions at issue in this case.  The underlying records are admissible as public records or business records with a custodian declaration of authenticity.  In addition, the government intends to admit as summary charts toll records and Instagram direct message conversations from Fernandez's @the38superman account.  The underlying records are admissible as business records and can be authenticated with the Rule 902(11) custodian declaration from AT&T and Instagram.  Because those records are thousands of pages, the government will not seek to admit the full toll records, phone records, or Instagram business records, but summary charts thereof.

Under Federal Rules of Evidence 1006 and 611(a), courts routinely admit into evidence summary charts that organize voluminous evidence and aid the jury's understanding as long as their underlying evidence is admissible, made available to the adverse party, and a witness with knowledge of their preparation is available for cross-examination.  See United States v. Gardner, 611 F.2d 770, 776 (9th Cir. 1980).

A chart or summary may be admitted as evidence where the proponent establishes that the underlying documents are voluminous, admissible and available for inspection.  See United States v. Meyers, 847 F.2d 1408, 1411-12 (9th Cir. 1988); United States v. Johnson, 594 F.2d 1253, 1255-57 (9th Cir. 1979).  While the underlying documents must be admissible, they need not be admitted.

See Meyers, 847 F.2d at 1412; Johnson, 594 F.2d at 1257 n.6.

Summary charts need not contain the defendant's version of the

evidence and may be given to the jury while a government witness

testifies about them.  See United States v. Radseck, 718 F.2d 233,

239 (7th Cir. 1983); Barsky v. United States, 339 F.2d 180, 181 (9th

Cir. 1964).

2.   Summary Witnesses

Special Agent Hart will testify regarding the charts that

summarize the voluminous firearms records and the direct message

conversations from Fernandez's @the38superman Instagram account.

Special Agent Hart's analysis and summary charts rely on his own

analysis and preparation of the summary charts, as well as summary

charts prepared by Special Agent Kyle Duncan and translations

completed by an analytical linguist.  A summary witness may rely on

the analysis of others where the summary witness has sufficient

experience to judge another person's work and incorporate as his own

the fact of its expertise.  The use of other persons in the

preparation of summary evidence goes to its weight, not its

admissibility.  See United States v. Soulard, 730 F.2d 1292, 1299

(9th Cir. 1984); Diamond Shamrock Corp. v. Lumbermens Mutual

Casualty Co., 466 F.2d 722, 727 (7th Cir. 1972) ("It is not

necessary . . . that every person who assisted in the preparation of

the original records or the summaries be brought to the witness

stand.").

Moreover, a summary witness may properly testify about, and use

a chart to summarize, evidence that has already been admitted.  The

Court and jury are entitled to have a witness "organize and evaluate

evidence which is factually complex and fragmentally revealed."
United States v. Shirley, 884 F.2d 1130, 1133-34 (9th Cir. 1989)
(DEA agent's testimony regarding her review of various telephone
records, rental receipts, and other previously offered testimony
held to be proper summary evidence, as it helped jury organize and
evaluate evidence; summary charts properly admitted).

### E.    Expert Testimony

The government has provided expert disclosures concerning
various areas of expert testimony under Rule 16(a)(1)(E), including
the licensing requirements for dealing in firearms and the records
kept by federal and state authorities concerning the sale and
registration of the firearms involved in this investigation.  If
specialized knowledge will assist the trier of fact in understanding
the evidence or determining a fact in issue, a qualified expert
witness may provide opinion testimony on the issue in question.
Fed. R. Evid. 702.  The Court has broad discretion to determine
whether to admit expert testimony.  United States v. Andersson, 813
F.2d 1450, 1458 (9th Cir. 1987).

### 1.    Firearms Requirements

The government intends to elicit expert testimony from ATF
Senior Special Agent Hamilton regarding the licensing requirements
for dealing in firearms and the records kept by federal and state
authorities concerning the sale and registration of the firearms
involved in this investigation.  Special Agent Hamilton will also
testify about the nature and characteristics of the firearms and
ammunition that were involved in this case.  He will testify about
the market prices of the firearms involved in this investigation,

including in secondary markets and in California compared to other states. He will testify about the on- or off-Roster nature of the firearms charged in the indictment and the fact that FFL's may not sell off-Roster firearms to the general public, and will provide a general description and explanation of the makes and models of the charged firearms. Special Agent Hamilton will not opine about what constitutes dealing in firearms or engaging in the business of dealing in firearms.

### 2. ATF Industry Operations

The government intends to elicit expert testimony from ATF Industry Operations Investigator ("IOI") James Palm regarding the process of reviewing and approving a federal firearm license application, as well as the audit of licensed dealers. IOI Palm will testify about the procedure investigators follow when meeting with a potential licensee during the application process, including the laws and regulations discussed with the licensee. IOI Palm will also testify about the procedures investigators follow during an industry audit of a licensee, including the verification of paperwork, the instructions and warnings investigators provide to licensees, the types of violations investigators encounter during audits, and the types of violations that may give rise to further investigation or a criminal investigation.

### 3. Lay Opinion of Law Enforcement Agents

The government may elicit lay opinion testimony by law enforcement agents, primarily through the case agent Special Agent Hart. For example, Special Agent Hart will testify about Instagram and e-mail records, many of which contain shorthand related to

firearms sales.  For example, "PPT" means "private party transfer,"
"DROS" means "dealer record of sale," and "nib" means "new in box."
Some of these may be covered by expert Special Agent Hamilton but
will also be relevant during the testimony of Special Agent Hart.

Under Ninth Circuit law, opinion testimony by law enforcement
officers is not necessarily expert testimony within the meaning of
Rule 16(a)(1)(G).  An officer's interpretation of intercepted calls
or code words, for example, is admissible lay opinion because it is
based on the officer's "direct knowledge of the investigation."  See
United States v. Freeman, 498 F.3d 893, 904-05 (9th Cir. 2007).
Once the government has established a foundation for the evidence,
"opinion testimony regarding the meaning of statements" is
admissible.  Id.  Moreover, an experienced agent's opinion testimony
may be based in part on information from other agents familiar with
the issue.  United States v. Beltran-Rios, 878 F.2d 1208, 1213 n.3
(9th Cir. 1989).  Here, the evidence merely contains the acronyms
and shorthand used by those buying and selling firearms in
California.  Special Agent Hart is familiar with those acronyms and
shorthand based on his experience with this investigation.
Therefore, law enforcement opinion testimony should be admitted
here.

**F.   Audio Recordings**

The government will introduce audio recordings of an ATF
interview of defendant Arao and several recorded phone calls between
defendant Arao and an undercover agent.  Special Agent Hart will
provide the foundation to admit these recordings.  A recording is
admissible upon a showing that it is "accurate, authentic, and

generally trustworthy." United States v. King, 587 F.2d 956, 961 (9th Cir. 1978).  For example, testimony that a recording depicts evidence that the witness observed is sufficient to authenticate the recording.  Fed. R. Evid. 901(b); United States v. Smith, 591 F.3d 974, 979-80 (8th Cir. 2010).  The government anticipates that defendant will stipulate to foundation and authenticity as to the recordings.  But even if not, here, Special Agent Hart has knowledge of how the recordings were made.  In addition, Special Agent Hart has familiarity with the individuals recorded in the clips and their voices.  He is therefore qualified to testify about who can be seen and heard in the recordings.  A lay witness, including a participant in a recorded conversation, may give opinion testimony on the meaning of otherwise vague or ambiguous statements made in the recordings.  See United States v. Freeman, 498 F.3d 893, 902 (9th Cir. 2007) ("A lay witness may provide opinion testimony regarding the meaning of vague or ambiguous statements [in recorded conversations]").

## G.  Transcripts of Recordings

The government has prepared written transcripts of audio recordings as an aid to the jury in listening to recordings.  See United States v. Turner, 528 F.2d 143, 167 (9th Cir. 1975) (permitting the transcripts of sound recordings to be used contemporaneously with the introduction of the recordings into evidence).  Copies of the government's transcripts have been provided to the defense and are available, should the Court desire them in advance of trial.  The transcripts will be displayed on a screen simultaneous to the playing of the audio files, and will be

1    provided to the jury in binders, but the transcripts will not be

2    admitted into evidence.

3        **H.   Photograph Evidence**

4        The government intends to introduce a number of photographs,

5    including photographs of various firearms.  Photographs are

6    generally admissible as evidence.  See United States v. Stearns, 550

7    F.2d 1167, 1171 (9th Cir. 1977) (photographs of crime scene

8    admissible).  Photographs should be admitted so long as they fairly

9    and accurately represent the event or object in question.  United

10   States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978).  The Ninth

11   Circuit has held that "[p]hotographs are admissible as substantive

12   as well as illustrative evidence."  United States v. May, 622 F.2d

13   1000, 1007 (9th Cir. 1980).

14       **I.   Cross-Examination of Defendant**

15           1.   Scope of Cross-Examination

16       A defendant who testifies at trial waives his right against

17   self-incrimination and subjects himself to cross-examination

18   concerning all matters reasonably related to the subject matter of

19   his testimony.  The scope of defendant's waiver is coextensive with

20   the scope of relevant cross-examination.  United States v. Cuozzo,

21   962 F.2d 945, 948 (9th Cir. 1992); United States v. Black, 767 F.2d

22   1334, 1341 (9th Cir. 1985) ("What the defendant actually discusses

23   on direct does not determine the extent of permissible cross-

24   examination or his waiver.  Rather, the inquiry is whether 'the

25   government's questions are reasonably related' to the subjects

26   covered by the defendant's testimony.") (internal quotations and

27   citation omitted).  Defendant has no right to avoid cross-

28

1   examination on matters that call into question his claim of

2   innocence.  United States v. Mehrmanesh, 682 F.2d 1303, 1310 (9th

3   Cir. 1982), overruled on other grounds by United States v. Palafox,

4   764 F.2d 558, 563 (9th Cir. 1985); United States v. Miranda-Uriarte,

5   649 F.2d 1345, 1353-54 (9th Cir. 1981).

6           2.   Other Act Evidence

7        Defendant's credibility will be crucial if he chooses to

8   testify.  Rule 404(b) does not proscribe the use of other act

9   evidence as an impeachment tool during cross-examination.  United

10  States v. Gay, 967 F.2d 322 (9th Cir. 1992).  Accordingly, cross-

11  examination about other possible untruthful conduct in which

12  defendant may have engaged is necessary for the jury to weigh

13  whether his testimony is credible.  As the Ninth Circuit has held,

14  Rule 608(b) "specifically contemplates inquiries into prior behavior

15  in order to challenge a witness's credibility.  Evidence of prior

16  frauds is considered probative of the witness's character for

17  truthfulness or untruthfulness."  Id. at 328; see also United States

18  v. Reid, 634 F.2d 469, 474 (9th Cir. 1980) ("The fact that appellant

19  made the false statements [in a letter] eight years prior to trial

20  did not destroy the relevance of the statements for impeachment

21  purposes."); United States v. Penaflor, 91 F.3d 157 (9th Cir. 1996)

22  ("As Penaflor's credibility was at issue, proof that she had

23  previously made false statements (including on her tax returns,

24  under the penalty of perjury) was relevant and not unduly

25  prejudicial.").

26       Moreover, the prejudicial effect of such evidence, if any, can

27  be addressed by a limiting instruction.  United States v. Hadley,

28

918 F.2d 848, 852 (9th Cir. 1990).  It is well-settled that the fact that the admission of such evidence might harm the defendant's case does not constitute unfair prejudice.  United States v. Bailleux, 685 F.2d 1105, 1111 (9th Cir. 1982).  Unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  Fed. R. Evid. 403, Advisory Comm. nn.  Thus, admission of evidence regarding the defendant's other bad acts might constitute unfair prejudice if the jury in this case considered the evidence to establish defendant's propensity to commit the charged crime.  However, this potential unfair prejudice can be cured by a limiting instruction that the jury should consider the evidence only for the purpose for which it is introduced.  Hadley, 918 F.2d at 852; United States v. Boise, 916 F.2d 497, 501 (9th Cir. 1990).

### 3.   Impeachment by Contradiction

Under Federal Rule of Evidence 607, the government may offer extrinsic evidence to prove that specific testimony is false: "[D]irect-examination testimony containing a broad disclaimer of misconduct sometimes can open the door for extrinsic evidence to contradict even though the contradictory evidence is otherwise inadmissible under Rules 404 and 608(b)."  United States v. Castillo, 181 F.3d 1129, 1131-32 (9th Cir. 1999); see also United States v. Antonakeas, 255 F.3d 714, 724 (9th Cir. 2001) ("Federal Rule of Evidence 607 allows the admission of extrinsic evidence to impeach specific errors or falsehoods in a witness's testimony on direct examination.").

### J.   Character Evidence

The Supreme Court has recognized that character evidence – particularly cumulative character evidence – has weak probative value and great potential to confuse the issues and prejudice the complaining party.  See Michelson v. United States, 335 U.S. 469, 480, 486 (1948).  The Supreme Court has thus given trial courts wide discretion to limit the presentation of character evidence.  Id.

In addition, the form of the proffered evidence must be proper. Federal Rule of Evidence 405(a) sets forth the sole methods for which character evidence may be introduced.  It specifically states that where evidence of a character trait is admissible, proof may be made in two ways: (1) by testimony as to reputation and (2) by testimony as to opinion.  Thus, defendant may not introduce specific instances of his good conduct through the testimony of others.  See id. at 477 ("The witness may not testify about defendant's specific acts or courses of conduct or his possession of a particular disposition or of benign mental or moral traits."); see also United States v. Camejo, 929 F.2d 610, 613 (9th Cir. 1991) (evidence of specific instances is not admissible to prove the defendant's good character); United States v. Hedgcorth, 873 F.2d 1307, 1313 (9th Cir. 1989) (testimony of defendant regarding his role as government intelligence operative, offered to show that he was "patriotic," "pro-government" individual unlikely to engage in acts of terrorism and to prove his lawful character was properly excluded as an attempt to prove character by specific instances of conduct); French v. United States, 232 F.2d 736 (5th Cir. 1956) (it is not

1    permissible to show good character of the defendant by evidence of

2    particular and specific facts as, for example, battle citations).

3         On cross-examination of a defendant's character witness,

4    however, the government may inquire into specific instances of a

5    defendant's past conduct relevant to the character trait at issue.

6    See Fed. R. Evid. 405(a).  In particular, a defendant's character

7    witnesses may be cross-examined about their knowledge of the

8    defendant's wrongful acts.  See Michelson, 335 U.S. at 481.  The

9    only prerequisite is that there must be a good faith basis that the

10   incidents inquired about are relevant to the character trait at

11   issue.  See United States v. McCollom, 664 F.2d 56, 58 (5th Cir.

12   1981).

13        Here, Arao can sufficiently establish the opinion that his

14   family members or friends may hold of his pertinent character traits

15   through one or two witnesses.  The Court should not, however, permit

16   defendant to turn this trial into a parade of character witnesses,

17   who will appear before the jury to present the same, cumulative

18   testimony.  To the extent defendant's character witnesses become

19   cumulative, the government will request that the Court limit such

20   testimony and witnesses, so as to avoid barraging the jury with any

21   cumulative or repetitive testimony that ultimately has limited

22   probative value.  United States v. Henry, 560 F.2d 963, 966 (9th

23   Cir. 1977) (no abuse of discretion where trial court limited

24   defendant to two character witnesses, rather than the four defendant

25   requested); United States v. Scholl, 166 F.3d 964, 972 (9th Cir.

26   1999) (trial court did not abuse its discretion in limiting the

27   defendant "to three character witnesses in his case-in-chief on the

28

footing that more would be cumulative"); <u>United States v. Webster</u>, 750 F.2d 307, 330 (5th Cir. 1984) (finding no abuse of discretion where trial court limited number of cumulative character witnesses by the defense); <u>United States v. Johnson</u>, 730 F.2d 683, 688 (11th Cir. 1984) (same).

### K.   Reciprocal Discovery

The government has requested reciprocal discovery, Jencks material, and expert disclosures from defendant.  In spite of these requests, defendant has not produced any reciprocal discovery to which the government is entitled under Rules 16 and 26.2 of the Federal Rules of Criminal Procedure or the Jencks Act.  Thus, to the extent defendant may attempt to introduce or use any documents at trial that have not previously been produced, the government reserves the right to object and to seek to have such documents precluded.

## V.   CONCLUSION

The government respectfully requests leave to file such supplemental memoranda as may become necessary before or during trial.